1
2
3

Brian A. Knutsen, WSBA No. 38806
Kampmeier & Knutsen PLLC
P.O. Box 15099, Portland, Oregon 97293
Tel: (503) 841-6515

4
5
6

Paul A. Kampmeier, WSBA No. 31560
Kampmeier & Knutsen, PLLC
615 Second Ave., Suite 360, Seattle WA 98104
Tel: (206) 223-4088 x 4

7
8
9
10
11
12
13

Doug DeRoy (Oregon State Bar #170934)
   ***Pro hac vice* application forthcoming**
Kevin Cassidy (Oregon State Bar #025296)
   ***Pro hac vice* application forthcoming**
Earthrise Law Center
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, OR 97219
Tel: (503) 768-6825
Tel: (781) 659-1696

14

*Attorneys for Plaintiff*

15
16
17

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

18
19
20
21
22
23
24

WILD FISH CONSERVANCY,

         Plaintiff,

v.

COOKE AQUACULTURE PACIFIC, LLC,

         Defendant.

Case No. 2:17-cv-01708

COMPLAINT

25
26
27
28
29

COMPLAINT - 1
No. 2:17-cv-01708

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

## I.   INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, by plaintiff Wild Fish Conservancy (the "Conservancy") against Defendant Cooke Aquaculture Pacific, LLC ("Cooke") for repeated and ongoing violations of Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, and the terms and conditions of Cooke's National Pollutant Discharge Elimination System ("NPDES") permits authorizing discharges of pollutants from Cooke's commercial Atlantic salmon farms located in Puget Sound, Washington, into navigable waters.

2.      The Conservancy seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witness fees.

## II.   JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over the Conservancy's claims under section 505(a) of the CWA, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331 (federal question). Cooke is in violation of an "effluent limitation or standard" as defined by Section 505(f) of the CWA, 33 U.S.C. § 1365(f). Sections 505(a), 505(d), and 309(d) of the CWA, 33 U.S.C. § 1365(a) and (d) and 1319(d), authorize the requested relief.

4.      In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2, the Conservancy notified Cooke of its violations and of the Conservancy's intent to sue by letters dated and postmarked August 24, 2017 ("Notice Letter"), and September 6, 2017 ("Supplemental Notice Letter"). Copies of the Notice Letter and Supplemental Notice Letter are attached to this Complaint as Exhibit 1 and Exhibit 2, respectively. The allegations in the Notice Letter and Supplemental Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2(a)(1), the Conservancy notified Cooke's Registered Agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of Region 10 of the EPA, and the Director of the Washington Department of Ecology ("Ecology"), of its intent to sue Cooke by mailing copies of the Notice Letter and Supplemental Notice Letter to these officials on August 24, 2017, and September 6, 2017, respectively.

5.      At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and Supplemental Notice Letter and the copies thereof were issued as described in the preceding paragraph.

6.      No agency, including EPA and Ecology, has commenced any action constituting diligent prosecution to redress these violations.

7.      The violations complained of in the Notice Letter and the Supplemental Notice Letter are continuing or are reasonably likely to continue to reoccur. Cooke is in violation of the CWA.

8.      The sources of the violations complained of are located within the Western District of Washington and venue is therefore appropriate in this district under section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1). Cooke operates eight commercial salmon farms within the Western District of Washington that are the subject of this complaint; four are located in Skagit County, one is located in Clallam County, and three are located in Kitsap County.

### III.    PARTIES

9.      Plaintiff Wild Fish Conservancy is a membership-based 501(c)(3) nonprofit organization incorporated in the State of Washington with its principal place of business in Duvall, Washington. Wild Fish Conservancy is dedicated to the preservation and recovery of

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

Washington's native fish species and the ecosystems upon which those species depend. Wild Fish Conservancy brings this action on behalf of itself and its approximately 2,400 members. Wild Fish Conservancy changed its name from "Washington Trout" in 2007. As an environmental watchdog, Wild Fish Conservancy actively informs the public on matters affecting water quality, fish, and fish habitat in the State of Washington through publications, commentary to the press, and sponsorship of educational programs. Wild Fish Conservancy also conducts field research on wild fish populations and has designed and implemented habitat restoration projects. Wild Fish Conservancy lobbies, advocates, and publicly comments on federal and state actions that affect the region's native fish and ecosystems. Wild Fish Conservancy routinely seeks to compel government agencies to follow the laws designed to protect native fish species, particularly threatened and endangered species.

10.     The Conservancy has representational standing to bring this action. The Conservancy's members regularly spend time in estuarine, nearshore, and marine areas throughout Puget Sound, including in waters near Cooke's net pen facilities. The Conservancy's members intend to continue to visit these areas on a regular basis, including in the coming months and beyond. These members observe, study, photograph, and appreciate wildlife and wildlife habitat in and around these waters and their tributaries. These members also fish, hike, camp, and swim in and around these waters and their tributaries.

11.     The Conservancy's members derive scientific, educational, recreational, health, conservation, spiritual, and aesthetic benefits from Puget Sound and its tributaries, the surrounding areas, and from wild native fish species in those waters and from the existence of natural, wild and healthy ecosystems.

COMPLAINT - 4
No. 2:17-cv-01708

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

12.     The past, present, and future enjoyment of the Conservancy's interests and those of its members, including their recreational, aesthetic, spiritual, and scientific interests, have been, are being, and will continue to be harmed by Cooke's violations of the CWA and NPDES permits addressed herein, including Cooke's illegal discharges of pollutants from its Atlantic salmon net pen facilities, and by the members' reasonable concerns related to violations. These injuries include reduced enjoyment of time spent in and around Puget Sound and its tributaries, including waters near the commercial salmon farms, and refraining from engaging in certain activities while visiting these areas. These injuries are fairly traceable to the violations and redressable by the Court.

13.     The Conservancy has organizational standing to bring this action. The Conservancy has been actively engaged in a variety of educational and advocacy efforts to improve habitat, including water quality, in Puget Sound and its tributaries. The Conservancy has been particularly active in efforts to educate the public and government officials throughout the Puget Sound region on the impacts of commercial aquaculture, and specifically the impacts of Cooke's eight commercial salmon farms in Puget Sound. Cooke's failure to comply with its NPDES permits' Fish Release Prevention and Monitoring Plan requirements—including, but not limited to, failing to submit annual Fish Release Reports that include all of the required information—has deprived the Conservancy of information that otherwise would be available and used to the Conservancy in its educational and advocacy efforts. This information could assist the Conservancy in its ongoing efforts to educate and advocate for greater wild fish and environmental protection. Finally, the Conservancy and the public are deprived of information that influences members of the public to become members of the Conservancy. Thus, the

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

Conservancy's organizational interests have been and are being adversely affected by Cooke's violations. These injuries are fairly traceable to the violations and redressable by the Court.

14.     Cooke Aquaculture Pacific, LLC acquired, or changed its name from, Icicle Acquisition Subsidiary LLC d/b/a American Gold Seafoods on or about June 11, 2016. Cooke is a corporation authorized to conduct business under the laws of the State of Washington.

15.     Cooke owns and operates eight commercial Atlantic salmon net pen facilities in Puget Sound.

## IV.     LEGAL BACKGROUND

16.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), makes unlawful the discharge of any pollutant by any person unless authorized by, *inter alia*, a NPDES permit issued pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

17.     Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

18.     Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable waters" as "the waters of the United States, including the territorial seas."

19.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

20.     EPA has issued a regulation that defines the term "point source" to include "concentrated aquatic animal production facilities," which EPA defines to include marine salmon net pens that discharge at least 30 days per year, produce more than 20,000 pounds of

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

salmon per year, or feed more than 5,000 pounds of food in the month of maximum feeding. 40 C.F.R. § 122.24 and 40 C.F.R. § 122 Appendix C.

21.     Section 402 of the CWA provides that the EPA may issue NPDES permits authorizing discharges. 33 U.S.C. § 1342. The CWA implements a technology-forcing approach under which increasingly stringent NPDES permit requirements are imposed over time in an effort to fulfill the CWA's goal of eliminating pollution. NPDES permits therefore are valid for a period not to exceed five years, after which new permits are required that incorporate any new and more stringent standards. *See* 33 U.S.C. §§ 1342(a)(3), (b)(1)(B).

22.     Expiring NPDES permits continue and remain effective and enforceable if the permittee timely submits a complete application for a new permit and EPA, through no fault of the permittee, does not issue a new permit prior to expiration. 40 C.F.R. § 122.6; 5 U.S.C. § 558(c). Applications to renew an expiring NPDES permit are timely if submitted at least 180 days before the expiration date. 40 C.F.R. § 122.21(d)(2).

23.     The State of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of EPA under Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

## V.     FACTUAL BACKGROUND

24.     Puget Sound and its tributaries contain natural, wild populations of fish, including various species of rockfish, steelhead trout, bull trout, searun cutthroat trout, coho salmon, sockeye salmon, pink salmon, chum salmon, Chinook salmon, and other fish species, and provide important habitat for these species.

COMPLAINT - 7
No. 2:17-cv-01708

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

25.     Cooke owns and/or operates eight of the commercial salmon net pen facilities located in Puget Sound, Washington, where Cooke produces Atlantic salmon. Three of the net pen facilities are located in Cypress Island's Deepwater Bay, in Skagit County. One net pet facility is located in Skagit Bay north of Hope Island, also within Skagit County. Three of the net pen facilities are located south of Bainbridge Island in Rich Passage, within Kitsap County. One net pen facility is located near Port Angeles, in Clallam County.

26.     Commercial salmon farms house fish in net pens, which are floating facilities that contain young and mature salmon in permeable enclosures, such as netting, in open water. The fish are hatched at freshwater hatcheries and the smolts are transferred to the marine net pens where they are cultivated to a marketable size. Due to characteristics conducive to commercial success, Atlantic salmon are the primary species raised.

27.     Each of Cooke's eight commercial salmon farms in Puget Sound qualifies as a concentrated aquatic animal production facility and is considered a "point source" of pollution under 40 C.F.R. § 122.24 and 40 C.F.R. § 122 Appendix C. Specifically, each facility discharges pollutants in excess of 30 days per year and produces more than 20,000 pounds of salmon per year or feeds more than 5,000 pounds of food in the month of maximum feeding.

28.     Cooke is authorized to discharge waste materials associated with its Atlantic salmon net pen operations under eight NPDES permits issued by Ecology on October 26, 2007, which expired but have been administratively continued since October 26, 2012, under NPDES permit numbers WA-003153-4, WA-003154-2, WA-003152-6, WA-003156-9, WA-003157-7, WA-003158-5, WA-003159-3, and WA-004089-4 (collectively, the "Permits").

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

29.     The Permits impose terms and conditions intended to protect water quality, including restrictions on discharges, pollution prevention requirements, fish release prevention and monitoring requirements, and recordkeeping and reporting requirements.

30.     One of Cooke's net pen facilities located in Deepwater Bay of Cypress Island is referred to as "Cypress Site 2" (also known as "Site 2 – Deepwater Bay") and is subject to NPDES permit number WA-003157-7. The Cypress Site 2 facility is a floating steel raft, containing ten individual cages (2 rows of 5 cages), and has been in operation since 1985. The net pen structure has a surface area of approximately 80,154 square feet.

31.     In 2009 and/or 2011, Cooke repositioned its Cypress Site 2 facility into deeper waters with higher current velocities in an effort to increase water circulation and sediment flushing due to benthic impacts from the facility that exceeded limits in the Permits, without making any changes to facility's operational or physical structures.

32.     On or about July 24, 2017, moorings at Cypress Site 2 began to fail. At least ten anchor points on the net pens broke and numerous others dragged, which shifted the positioning of the site considerably. While Cooke made some effort to re-secure Cypress Site 2, the moorage anchors that had been replaced broke free again on July 25, 2017. Cooke again worked to reset and replace the mooring system from July 25 through July 29, 2017.

33.     Starting on or about Saturday, August 19, 2017, Cypress Site 2 suffered additional mooring and other structural failures, resulting is a near-complete collapse on or about Sunday, August 20, 2017. The images below show Cypress Site 2 before and after this incident.

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825



34.     The Cypress Site 2 facility's failure was the result of Cooke's negligence and its failure to inspect and maintain the facility as required under the Permits.

35.     Upon information and belief, Cooke was aware at least six months before the Cypress Site 2 facility collapsed that the facility was nearing the end of its serviceable life and was due for complete replacement, that corrosion on the metal walkway grating and substructures was accelerating, and that the metal hinge joints were showing signs of excessive wear.

36.     Cooke was also aware that the Cypress Site 2 facility was misaligned to the prevailing tidal currents, and that repositioning the net pens with the narrow ends facing the prevailing currents at the site was necessary to reduce the drag loads exerted on the nets, mooring points, net pen structure, and to improve the overall safety of the facility.

COMPLAINT - 10
No. 2:17-cv-01708

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

37. Non-native Atlantic salmon released from net pen facilities are pollutants under the CWA.

38. The failure of Cooke's Cypress Site 2 facility resulted in massive discharges of various pollutants into Puget Sound, including but not limited to, non-native Atlantic salmon, debris, solid and liquid wastes, nets, feed, machinery, equipment, walkways, moorings and other structures, fuels, greases, oils, and other petroleum products. These discharges are not authorized by Cooke's Permits. *See* Permits, Condition S1 (Cooke is authorized to "discharge waste materials associated with marine salmon net pen operations."). The discharges are therefore prohibited by Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

39. Cooke's Permits prohibit the intentional or negligent release of Atlantic salmon from the net pen facilities. Permits, Condition S1. Cooke began releasing fish from its Cypress Site 2 facility on or about August 19, 2017. These releases are intentional or negligent and therefore violate Condition S1 of the Permits. Currently available information indicates that Cooke released at least approximately 165,000 and up to 305,000 Atlantic salmon into Puget Sound, many of which remain in Puget Sound today and each of which constitutes a violation of the Permits.

40. Ecology issued Agreed Order, Docket No. 15422, dated September 15, 2017. Cooke consented to the Agreed Order and agreed not to contest it. The Agreed Order includes a finding by Ecology that Cooke's release of Atlantic salmon from the Cypress Site 2 that began on or about August 19, 2017, is a violation of the Permit.

41. The Permits require that Cooke "collect and store fish carcasses in leakproof containers" and prohibit Cooke from disposing of carcasses in surface waters. Permits, Condition S5.A.7. Further, Cooke "must store and dispose of fish mortalities, harvest blood, and leachate

COMPLAINT - 11
No. 2:17-cv-01708

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

from these materials in a manner which prevents such materials from entering waters of the state." Permits, Condition S5.A.8. Cooke has violated these requirements with respect to the Cypress Site 2 facility because Cooke has failed to collect and store all fish carcasses in leakproof containers and failed to store and dispose of fish mortalities and blood in a manner that prevents such materials from entering waters of the state.

42.     The Permits provide that Cooke "must dispose of accumulated solids and attached marine growth contained within or on the net pens in a manner which prevents to the maximum extent practicable these materials from entering or reentering waters of the state." Permits, Condition S5.A.9. Cooke is further prohibited from discharging "accumulated solids and marine growth removed from the finfish rearing units into waters of the state without prior treatment." Permits, Condition S5.A.10. Cooke is violating these requirements by failing to dispose of solids and growth in a manner that prevents to the maximum extent practicable the materials from entering or reentering waters of the state and by discharging solids and growth without prior treatment from its net pen facilities located in Deepwater Bay of Cypress Island.

43.     The Permits prohibit Cooke from "discharging sanitary wastes, floating solids, visible foam other than in trace amounts, or oily wastes which produce sheen on the surface of the receiving water." Permits, Condition S5.A.12. Cooke is in violation of these requirements for discharging prohibited materials from its Cypress Site 2 facility.

44.     Upon information and belief, Cooke is violating the Permits' predator net pen requirements at its net pen facilities in Deepwater Bay of Cypress Island by failing to maintain predator nets above the sea floor; storing nets on the sea floor; failing to immediately tag with floats nets dropped or lost, position the nets using differential GPS, and report the dropped or lost nets to Ecology with 24 hours.

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

45.     Condition S6 of the Permits requires that Cooke prepare a Pollution Prevention Plan for each net pen facility that addresses "operations, spill prevention, spill response, solid waste, and stormwater discharge practices which will prevent or minimize the release of pollutants from the facility to waters of the state." Cooke is required to "assure that the operations staff for the facility is familiar with the plan and have been adequately trained in the specific procedures which it required." Permits, Condition S6. Cooke "must operate the facility in accordance with this plan along with any subsequent amendments or revisions." *Id.*

46.     For each facility, the Pollution Prevention Plan must require Cooke to "routinely, at least weekly, conduct visual inspections of exposed surface lines, shackles, and mooring points;" repair or replace defective components promptly; conduct an inspection of the main cage structure and anchoring components above and below the water line at least once per year; "[d]ocument any problems and maintain all components to prevent failure that could lead to fish escapements;" and "conduct inspections after any major storm event or physical accident involving the pen structures or moorings, and make any repairs necessary." Permits, Condition S6.F.

47.     Cooke has violated and continued to violate the requirements of Condition S6 of the Permits at each of its eight commercial salmon farms in Puget Sound. Cooke has failed and continues to fail to prepare and/or implement a Pollution Prevention Plan that meets all of the requirements of Condition S6 of the Permits for each of its net pen facilities. Additionally, Cooke has failed and continues to fail to conduct required inspections, repairs and replacements, failed to document problems, and failed to maintain components to prevent failures that could lead to fish escapements. For example, Cooke's latest 2017 Pollution Prevention Plan does not require Cooke to conduct inspection of exposed surface lines, shackles, and mooring points at

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

least weekly. It also does not require Cooke to inspect anchoring components above and below

the waterline at least annually, nor does it require any inspection of the main cage structures.

Cooke's prior 2012 Pollution Prevention Plan contains the same or substantially similar

deficiencies.

48.     Failure to develop and implement an adequate Pollution Prevention Plan is a

violation of Cooke's Permits. Every day that Cooke fails to develop and/or implement a

Pollution Prevention Plan for a facility is a separate and distinct violation of the Permits. These

violations have occurred on each and every day during the last five years and sixty days and

continue to occur every day.

49.     The Permits require Cooke to maintain a Fish Release Prevention and Monitoring

Plan that includes the identification and implementation of technology that will minimize fish

escapements and procedures for routinely tracking the number of fish within the pens, the

number of fish lost to predation and mortality, and the number lost due to escapement. Permits,

Condition S7.1, 6. This plan also must include routine procedures and best management

practices used to minimize the risk of escapement from the pens during normal operations.

Condition S7.2.

50.     Cooke must submit an Annual Fish Release Report to Ecology by January 30th of

each year that summarizes release data for the prior year. Permits, Condition S7. The reports

must summarize, to the extent possible, "by month and pen site, the number, age class, disease

and medication history, and cause of all fish released to waters of the state, … including all

Significant Fish Releases." *Id.*

51.     Cooke has violated and continues to violate the requirements of Condition S7 of

the Permits at all eight of its Puget Sound net pen facilities. For example, Cooke fails to identify

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

and implement technology that will minimize fish escapements, fails to implement procedures to track the number of fish in the net pen and those lost to predation, mortality and escapement, and fails to submit annual Fish Release Reports that include all of the required information, including all of the fish released and the cause thereof.

52.     Failure to develop and implement an adequate Fish Release Prevention and Monitoring Plan is a violation of Cooke's Permits. Every day that Cooke fails to develop and/or implement an adequate Fish Release Prevention and Monitoring Plan at a net pen facility is a separate and distinct violation of the Permits. These violations have occurred on each and every day during the last five years and sixty days and continue to occur every day.

53.     The Permits establish a Sediment Impact Zone ("SIZ") for each net pen facility that consists of the area within a 100-foot perimeter of each net pen facility. Permits, Appendix A. When net pens are "moved or removed," the Permits require that Cooke "conduct Closure Monitoring in areas where the previous SIZ was established but is no longer in effect." Permits, Condition S2.B.4. "The goal of closure monitoring is to monitor the return of sediment quality to baseline conditions." Permits, Condition S4. Closure monitoring must include the parameters listed in Condition S2.A.4 of the Permits and include benthic infaunal abundance as described in Condition S2.D. Permits, Condition S4.

54.     The Permits also require that Cooke submit a Sediment Sampling and Analysis Plan ("SAP") to Ecology for review and approval "at least thirty (30) days[1] prior to [the] anticipated site closure or significant move." Permits, Condition S2.B.4.

_____

[1] The Permits also require, inconsistently, that Cooke submit a SAP "at least 60 days" before any planned move or removal. Permits, Condition S4.

COMPLAINT - 15
No. 2:17-cv-01708

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

55.     Cooke has violated the Permits' sediment sampling and analysis plan requirements by moving, closing, and/or removing its Cypress Site 2 facility from its SIZ without complying with the provisions described above—including the requirements to submit a SAP to Ecology for approval at least 30 days prior to moving or removing/closing the facility. Every day that Cooke fails to submit a SAP is a separate and distinct violation of the Permits and the CWA. These violations began on or about August 19, 2017, have occurred on each and every day since that date, and continue to occur every day.

56.     Upon information and belief, the violations of the CWA and the NPDES Permits addressed herein are ongoing and/or are reasonably likely to reoccur. Any and all additional violations of the CWA or Permits that occur after those described in the Notice Letter and Supplemental Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

57.     Cooke's commercial salmon farms have suffered sporadic and significant fish releases in the past, including a reported escape of approximately 24,550 Atlantic salmon in 2005, and similar events are reasonably likely to reoccur.

58.     Upon information and belief, Cooke is likely to negligently release Atlantic salmon from any of its eight net pen facilities in Puget Sound in the future. The Conservancy is unaware of any change in Cooke's Puget Sound net pen operations that will eliminate future negligent releases of Atlantic salmon.

59.     Upon information and belief, Cooke has and will continue to operate and maintain each of its Puget Sound net pen facilities in the same manner as it did with its Cypress Site 2 facility.

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

60.     The State of Washington Department of Natural Resources ("DNR") recently inspected Cooke's Rich Passage Clam Bay facility, after the collapse of Cypress Site 2, and reported widespread moderate corrosion damage and severe corrosion damage in localized areas. DNR also reported that one of the facilities drag anchors was completely on the surface on the sea floor, not buried, and that Cooke's inspections of the facility did not follow the manufacturer's recommendations or industry standards.

61.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Cooke is likely to continue to violate its Permits and the CWA to the further injury of the Conservancy, its members, and others.

62.     Cooke's violations of the CWA and its Permits were avoidable had Cooke been diligent in overseeing operations and maintenance at its commercial salmon farms.

63.     Cooke has benefited economically as a consequence of its violations of the CWA and Permits, including through its failure maintain, repair, and replace its net pens and their components.

64.     In accordance with Sections 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4, the Conservancy will mail either a filed, date-stamped copy of this Complaint or a conformed copy of this Complaint after it is filed to the Administrator of the EPA, the Regional Administrator for Region 10 of EPA, and the Attorney General of the United States.

## VI.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### Cooke's Violations of Section 301(a) of the CWA

65.     The Conservancy hereby alleges and incorporates by reference all of the preceding paragraphs.

COMPLAINT - 17
No. 2:17-cv-01708

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

66. The failure of Cooke's Cypress Site 2 facility that began on or about August 19, 2017, resulted in massive discharges of various pollutants into Puget Sound. These discharges are not authorized by Cooke's Permits. These discharges constitute discharges of pollutants from a point source to waters of the United States that violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

67. These violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), are violations of an "effluent limitation or standard," as defined by Section 505(f) of the CWA, 33 U.S.C. § 1365(f), that are enforceable in this citizen suit under section 505 of the CWA, 33 U.S.C. § 1365.

## SECOND CLAIM FOR RELIEF

### Cooke's Violations of the Permits

68. The Conservancy hereby alleges and incorporates by reference all of the preceding paragraphs.

69. Cooke has violated its Permits as described herein and in the Notice Letter and Supplemental Notice Letter.

70. Cooke's violations of its Permits constitute violations of an "effluent limitation or standard," as defined by Section 505(f) of the CWA, 33 U.S.C. § 1365(f), that are enforceable in this citizen suit under section 505 of the CWA, 33 U.S.C. § 1365.

## VII.   RELIEF REQUESTED

WHEREFORE, the Conservancy respectfully requests that this Court:

A. Issue a declaratory judgment that Cooke has violated and continues to be in violation of the Permits and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342;

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

B.      Issue an injunction enjoining Cooke from operating its Atlantic salmon net pen facilities in a manner that results in further violations of the Permits or the CWA;

C.      Issue an injunction requiring Cooke to take specific actions to evaluate and remediate the environmental harm caused by its violations;

D.      Grant such other preliminary and/or permanent injunctive relief as the Conservancy may from time to time request during the pendency of this case;

E.      Order Cooke to pay appropriate civil penalties up to the maximum authorized by the CWA of $37,500.00 per day of violation for each violation committed by Cooke on or before November 2, 2015, and $52,414.00 per day of violation for each violation committed by Cooke thereafter, pursuant to sections 309(d) and 505(d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 (see also 81 Fed. Reg. 43091, 43095 (July 1, 2016));

F.      Award the Conservancy its litigation expenses, including reasonable attorneys' fees and expert witness fees, as authorized by section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

G.      Grant the Conservancy such additional relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 13th day of November, 2017.

KAMPMEIER & KNUTSEN, PLLC

By:  s/ Brian A. Knutsen
       Brian Knutsen, WSBA No. 38806
U.S. Postal Service Address:
P.O. Box 15099; Portland, Oregon 97293
Location (No U.S. Postal Service Delivery; couriers okay):
221 S.E. 11th Ave., Ste. 217; Portland, Oregon 97214
Tel: (503) 841-6515
Email: brian@kampmeierknutsen.com

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

By: s/ Paul A. Kampmeier
    Paul A. Kampmeier, WSBA No. 31560
615 Second Ave., Suite 360
Seattle Washington 98104
Tel: (206) 223-4088 x 4
Email: paul@kampmeierknutsen.com


EARTHRISE LAW CENTER

By: s/ Doug DeRoy
    Doug DeRoy (OSB #170934),
       ***Pro hac vice* application forthcoming**
By: s/ Kevin Cassidy
    Kevin Cassidy (OSB #025296),
       ***Pro hac vice* application forthcoming**
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, Oregon 97219
Tel, Email: (503) 768-6825, dougderoy@lclark.edu
Tel, Email: (781) 659-1696, cassidy@lclark.edu


*Attorneys for Plaintiff Wild Fish Conservancy*

COMPLAINT - 20
No. 2:17-cv-01708

KAMPMEIER & KNUTSEN PLLC
P.O. Box 15099
Portland, Oregon 97293
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

# EXHIBIT 1

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

BRIAN A. KNUTSEN
Licensed in Oregon & Washington
503.841.6515
brian@kampmeierknutsen.com

August 24, 2017

**Certified U.S. Mail – Return Receipt Requested**
Managing Agent
Cooke Aquaculture Pacific, LLC
P.O. Box 669
Anacortes, Washington 98221

**Re:** **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT**

Dear Managing Agent:

This letter is submitted on behalf of the Wild Fish Conservancy (the "Conservancy"). This letter provides sixty days' notice of the Conservancy's intent to file a citizen suit against Cooke Aquaculture Pacific, LLC ("Cooke[1]") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described herein.

## I.      Background.

Cooke owns and/or operates eight commercial salmon net pen facilities located in Puget Sound, Washington, where Cooke produces Atlantic salmon. Three of these net pen facilities are located in Deepwater Bay of Cypress Island, three are located south of Bainbridge Island in Rich Passage, one is near Port Angeles, and one is north of Hope Island in Skagit Bay.

Cooke's commercial salmon farms discharge pollutants to waters of the United States in a manner that is prohibited by section 301(a) of the CWA, 33 U.S.C. § 1311(a), unless, *inter alia*, authorized by National Pollutant Discharge Elimination System ("NPDES") permits issued under section 402 of the CWA, 33 U.S.C. § 1342. Cooke is authorized to discharge waste materials associated with salmon net pen operations under eight NPDES permits issued by the Washington Department of Ecology ("Ecology") on October 26, 2007, with expiration dates of October 26, 2012, but which have been administratively extended pending issuance of new permits, under NPDES permit numbers WA-003153-4, WA-003154-2, WA-003152-6, WA-003156-9, WA-003157-7, WA-003158-5, WA-003159-3, and WA-004089-4 (collectively, the "Permits").

---

[1] Cooke Aquaculture Pacific LLC acquired, or changed its name from, Icicle Acquisition Subsidiary LLC d/b/a American Gold Seafoods on or about June 11, 2016. "Cooke," as used herein, refers collectively to Cooke Aquaculture Pacific LLC and Icicle Acquisition Subsidiary LLC d/b/a American Gold Seafoods.

Starting on or about Saturday, August 19, 2017, one of Cooke's net pen facilities located in Deepwater Bay of Cypress Island began suffering structural failures. This net pen facility suffered a near-complete structural failure and collapsed on or about Sunday, August 20, 2017. The failure of these facilities has resulted in illegal discharges into Puget Sound of farmed Atlantic salmon, carcasses of dead fish, and massive amounts of debris and other pollutants. Currently available information suggests that these illegal releases are associated with Cooke's net pen facility known as "Cypress Site 2" (also known as "Site 2 – Deepwater Bay"), which is subject to NPDES permit number WA-003157-7.

## II.     Cooke's Unauthorized Discharges of Pollutants.

The structural failure of Cooke's net pen facilities in Deepwater Bay of Cypress Island has resulted in massive discharges of various pollutants to Puget Sound, including, without limitation, non-native Atlantic salmon, debris, solid and liquid wastes, nets, feed, medications, pharmaceuticals, machinery, equipment, walkways, moorings, structures, ropes, cables, buoys, fuels, greases, oils, and other petroleum products. These discharges are not authorized by Cooke's Permits. *See* Permits, Condition S1 (Cooke is authorized to "discharge waste materials associated with marine salmon net pen operations."). Accordingly, Cooke is in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), for discharging pollutants to Puget Sound without the authorization of an NPDES permit. These violations began on or about August 19, 2017, have occurred every day since that date, and are continuing to occur.

## III.    Cooke's Violations of the Permits.

### A.     Violations of the Prohibition on Negligent Releases of Atlantic Salmon.

The Permits provide:

The intentional or negligent release of Atlantic salmon to the receiving waters beyond the confines of the net pens is prohibited.

Permits, p. 5. Cooke is in violation of this provision by negligently (and/or intentionally) releasing Atlantic salmon from one or more of its commercial salmon net pen facilities in Puget Sound. Cooke began releasing the fish from its net pen facilities located in Deepwater Bay of Cypress Island on or about August 19, 2017. These illegal releases have occurred each and every day since August 19, 2017, and are continuing to occur. Currently available information indicates that Cooke has released up to 305,000 Atlantic salmon into Puget Sound, each of which constitutes a violation of the Permits.

### B.     Violations Related to the Disposal and Storage of Fish Mortalities.

The Permits require that Cooke "collect and store fish carcasses in leakproof containers" and it prohibits Cooke from disposing of carcasses in surface waters. Permits, Condition S5.A.7. Further, Cooke "must store and dispose of fish mortalities, harvest blood, and leachate from these materials in a manner which prevents such materials from entering waters of the state." Permits, Condition S5.A.8. Cooke has violated these requirements with respect to the net pen

facilities located in Deepwater Bay of Cypress Island because Cooke has failed to collect and store all fish carcasses in leakproof containers and failed to store and dispose of fish mortalities and blood in a manner that prevents such materials from entering waters of the state. These violations began on or about August 19, 2017, have continued every day since that date, and are continuing to occur.

### C.    Violations of the Prohibition on Discharging Solids and Marine Growth.

The Permits provide that Cooke "must dispose of accumulated solids and attached marine growth contained within or on the net pens in a manner which prevents to the maximum extent practicable these materials from entering or reentering waters of the state." Permits, Condition S5.A.9. Cooke is further prohibited from discharging "accumulated solids and marine growth removed from the finfish rearing units into waters of the state without prior treatment." Permits, Condition S5.A.10. Cooke is violating these requirements by failing to dispose of solids and growth in a manner that prevents to the maximum extent practicable the materials from entering or reentering waters of the state and by discharging solids and growth without prior treatment from its net pen facilities located in Deepwater Bay of Cypress Island. These violations began on or about August 19, 2017, have continued every day since that date, and are continuing to occur.

### D.    Violations of the Prohibition on Discharging Floating Solids, Visible Foam, and/or Oily Wastes.

The Permits prohibit Cooke from "discharging sanitary wastes, floating solids, visible foam other than in trace amounts, or oily wastes which produce sheen on the surface of the receiving water." Permits, Condition S5.A.12. Cooke is in violation of these requirements for discharging prohibited materials from its net pen facilities located in Deepwater Bay of Cypress Island. These illegal discharges began on or about August 19, 2017, have occurred each and every day since that date, and are continuing to occur.

### E.    Violations of the Predator Net Requirements.

The Permits provide:

When in use, predator nets shall be maintained above the sea floor at all times. Nets may not impede the current flow or tidal exchange so as to contribute to the deposition of solids that would impair water quality standards. The storage of predator control or containment nets on the sea floor is prohibited. Any net accidentally dropped or lost during a storm event that is not recovered immediately shall be tagged with a float, positioned using differential GPS, and reported to Ecology within 24 hours. The net shall be recovered within 30 days from the date lost, unless Ecology allows a longer time in an individual case. Ecology shall be notified on the date the net is recovered.

Permits, Condition S5.A.17. Upon information and belief, Cooke is violating these requirements at its net pen facilities in Deepwater Bay of Cypress Island by failing to maintain predator nets above the sea floor; impeding current flow with its nets in a

manner that contributes to impairment of water quality standards; storing nets on the sea floor; failing to immediately tag with floats nets dropped or lost, position the nets using differential GPS, and report the dropped or lost nets to Ecology with 24 hours. These violations began on or about August 19, 2017, have occurred each and every day since that date, and are continuing to occur. To the extent Cooke does not recover all of the dropped or lost nets within 30 days of the date lost, Cooke will also be in violation of that requirement.

## F.   Violations of the Pollution Prevention Plan Requirements.

The Permits require that Cooke prepare a Pollution Prevention Plan for each net pen facility that addresses "operations, spill prevention, spill response, solid waste, and stormwater discharge practices which will prevent or minimize the release of pollutants from the facility to waters of the state." Condition S6. Cooke is required to "assure that the operations staff for the facility is familiar with the plan and have been adequately trained in the specific procedures which it required." *Id.* Cooke "must operate the facility in accordance with this plan along with any subsequent amendments or revisions." *Id.* Cooke has violated these requirements by failing to prepare and/or implement a plan that meets the requirements of the Permits for all eight of its net pen facilities located in Puget Sound. These violations have occurred on each and every day during the last five years and continue to occur every day.

For each facility, the plan's provisions must ensure that Cooke "routinely, at least weekly, conduct visual inspections of exposed surface lines, shackles, and mooring points;" repair or replace defective components promptly; conduct an inspection of the main cage structure and anchoring components above and below the water line at least once per year; "[d]ocument any problems and maintain all components to prevent failure that could lead to fish escapements;" and "conduct inspections after any major storm event or physical accident involving the pen structures or moorings, and make any repairs necessary." Permits, Condition S6.F. Upon information and belief, Cooke has violated these requirements at all eight of its net pen facilities located in Puget Sound by failing to conduct the required inspections, repairs and replacements, failing to document problems, and failing to maintain components to prevent failures that could lead to fish escapements. These violations have occurred on each and every day during the last five years and continue to occur every day.

## G.   Violations of the Fish Release Prevention & Monitoring Plan Requirements.

The Permits require Cooke maintain a Fish Release Prevention and Monitoring Plan that includes the identification and implementation of technology that will minimize fish escapements and procedures for routinely tracking the number of which within the pens, the number of fish lost to predation and mortality, and the number lost due to escapement. Permits, Condition S7.1, 6. Cooke must submit an Annual Fish Release Report to Ecology by January 30th of each year that summarizes release data for the prior year, including, to the extent possible, all fish released to waters of the state, including all

4

Significant Fish Releases, and the cause of all releases. Permits, Condition S7. Cooke has violated these requirements at all eight of its Puget Sound net pen facilities by failing to identify and implement technology that will minimize fish escapements, failing to implement procedures to track the number of fish in the net pen and those lost to predation, mortality and escapement, and by failing to submit annual Fish Release Reports that include all of the required information, including all of the fish released and the cause thereof.

**IV.    Party Giving Notice of Intent to Sue.**

The full name, address, and telephone number of the party giving notice is:

Wild Fish Conservancy
15629 Main Street N.E.
Duvall, WA 98019
Tel: (425) 788-1167

**V.    Attorneys Representing the Conservancy.**

The attorneys representing the Wild Fish Conservancy in this matter are:

Brian A. Knutsen                          Paul Kampmeier
Kampmeier & Knutsen, PLLC                 Kampmeier & Knutsen, PLLC
833 S.E. Main Street, No. 318            615 Second Avenue, Suite 360
Portland, Oregon 97214                    Seattle, Washington 98104
Tel: (503) 841-6515                       Tel: (206) 223-4088 extension 4
Email: brian@kampmeierknutsen.com         Email: paul@kampmeierknutsen.com

**VI.    Conclusion.**

The above-described violations reflect those indicated by the information currently available to the Conservancy. These violations are ongoing. The Conservancy intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the Clean Water Act, 33 USC § 1319(d), Cooke is subject to a separate daily penalty assessment for each violation (the current maximum daily penalty assessment is $52,414 for each violation). In addition to civil penalties, the Conservancy will seek injunctive relief to prevent further violations under sections 505(a) and (d) of the CWA, 33 USC § 1365(a) and (d), and such other relief as is permitted by law. Also, section 505(d) of the CWA, 33 USC § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

The Conservancy believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. The Conservancy intends, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Cooke Aquaculture Pacific, LLC under section 505(a) of the CWA.

The Conservancy is willing to discuss effective remedies for the violations described in this letter and settlement terms during the 60-day notice period.

Very truly yours,

Kampmeier & Knutsen, PLLC

By: _____

Brian A. Knutsen

c.     Doug Steding, litigation counsel for Cooke (via email only)
       Trent S.W. Crable, litigation counsel for USEPA and NMFS (via email only)

6

## CERTIFICATE OF SERVICE

I, Brian A. Knutsen, declare under penalty of perjury of the laws of the United States that
I am counsel for Wild Fish Conservancy and that on August 24, 2017, I caused copies of the
foregoing Notice of Intent to Sue Under the Clean Water Act to be served on the following by
depositing them with the U.S. Postal Service, postage prepaid, via certified mail, return receipt
requested:

Managing Agent
Cooke Aquaculture Pacific, LLC
P.O. Box 669
Anacortes, Washington 98221

Administrator Scott Pruitt
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N. W.
Mail Code: 1101A
Washington, DC 20460

Acting Regional Administrator Michelle Pirzadeh
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue, Mail Code: RA-210
Seattle, WA 98101

Director Maia D. Bellon
Washington Department of Ecology
P.O. Box 47600
Olympia, WA 98504-7600

Pat Hardina
Registered Agent for Cooke Aquaculture Pacific LLC
4019 21st Ave. W.
Seattle, Washington 98199

Brian A. Knutsen

7

# EXHIBIT 2

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

BRIAN A. KNUTSEN
Licensed in Oregon & Washington
503.841.6515
brian@kampmeierknutsen.com

September 6, 2017

**Certified U.S. Mail – Return Receipt Requested**
Managing Agent
Cooke Aquaculture Pacific, LLC
P.O. Box 669
Anacortes, Washington 98221

Re:     **SUPPLEMENTAL NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT**

Dear Managing Agent:

This letter is submitted on behalf of the Wild Fish Conservancy (the "Conservancy"). This letter provides sixty days' notice of the Conservancy's intent to file a citizen suit or to amend and/or supplement a the Conservancy's pleadings in a pending citizen suit against Cooke Aquaculture Pacific, LLC ("Cooke") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described herein.

## I.     Background.

Cooke owns and/or operates eight commercial salmon net pen facilities located in Puget Sound, Washington, where Cooke produces Atlantic salmon. Three of these net pen facilities are located in Deepwater Bay of Cypress Island, three are located south of Bainbridge Island in Rich Passage, one is near Port Angeles, and one is north of Hope Island in Skagit Bay.

Cooke's commercial salmon farms discharge pollutants to waters of the United States in a manner that is prohibited by section 301(a) of the CWA, 33 U.S.C. § 1311(a), unless, *inter alia*, authorized by National Pollutant Discharge Elimination System ("NPDES") permits issued under section 402 of the CWA, 33 U.S.C. § 1342. Cooke is authorized to discharge waste materials associated with salmon net pen operations under eight NPDES permits issued by the Washington Department of Ecology ("Ecology") on October 26, 2007, with expiration dates of October 26, 2012, but which have been administratively extended pending issuance of new permits, under NPDES permit numbers WA-003153-4, WA-003154-2, WA-003152-6, WA-003156-9, WA-003157-7, WA-003158-5, WA-003159-3, and WA-004089-4 (collectively, the "Permits").

Starting on or about Saturday, August 19, 2017, one of Cooke's net pen facilities located in Deepwater Bay of Cypress Island began suffering structural failures. This net pen facility suffered a near-complete structural failure and collapsed on or about Sunday, August 20, 2017.

The failure of these facilities has resulted in illegal discharges into Puget Sound of farmed Atlantic salmon, carcasses of dead fish, and massive amounts of debris and other pollutants. Currently available information suggests that these illegal releases are associated with Cooke's net pen facility known as "Cypress Site 2" (also known as "Site 2 – Deepwater Bay"), which is subject to NPDES permit number WA-003157-7.

The Conservancy issued a letter on August 24, 2017, providing notice of its intent to file a citizen suit against Cooke for certain CWA violations related to its commercial salmon farms in Puget Sound. This letter provides notice of the Conservancy's intent to sue Cooke for additional CWA violations.

## II.      Violations of the Sediment Sampling and Analysis Plan Requirements.

The Permits establish a Sediment Impact Zone ("SIZ") for each net pen facility that consists of the area within a one hundred (100) foot perimeter of each net pen facility. Permits, Appendix A. When net pens are "moved or removed," the Permits require that Cooke "conduct Closure Monitoring in areas where the previous SIZ was established but is no longer in effect." Permits, Condition S2.B.4. "The goal of closure monitoring is to monitor the return of sediment quality to baseline conditions." Permits, Condition S4. Additionally, the Permits require that Cooke submit a Sediment Sampling and Analysis Plan ("SAP") to Ecology for review and approval "at least thirty (30) days[1] prior to [the] anticipated site closure or significant move." Permits, Condition S2.B.4. Closure monitoring must include the parameters listed in Condition S2.A.4 of the Permits and include benthic infaunal abundance as described in Condition S2.D. Permits, Condition S4.

Upon information and belief, Cooke has violated these requirements by moving and/or closing/removing one of its net pen facilities located in Deepwater Bay of Cypress Island (believed to be the Cypress Site 2) from the SIZ without complying with the provisions described above—including the requirements to conduct Closure Monitoring and to submit a SAP to Ecology for approval at least thirty (30) days prior to moving or removing/closing the facility. These violations began on or about August 19, 2017, have occurred on each and every day since that date, and continue to occur every day.

## III.     Party Giving Notice of Intent to Sue.

The full name, address, and telephone number of the party giving notice is:

Wild Fish Conservancy
P.O. Box 402
15629 Main Street N.E.
Duvall, WA 98019
Tel: (425) 788-1167

---

[1] The Permits also require, inconsistently, that Cooke submit a SAP "at least 60 days" before any planned move or removal. Permits, Condition S4.

IV.    **Attorneys Representing the Conservancy.**

The attorneys representing the Wild Fish Conservancy in this matter are:

Brian A. Knutsen                                    Doug DeRoy
Kampmeier & Knutsen, PLLC                          Earthrise Law Center
833 S.E. Main Street, No. 318                      Lewis & Clark Law School
Portland, OR 97214                                 10015 S.W. Terwilliger Blvd., MSC 51
Tel: (503) 841-6515                                Portland, OR 97219
Email: brian@kampmeierknutsen.com                  Tel: (503) 768-6825
                                                   Email: dougderoy@lclark.edu

V.    **Conclusion.**

The above-described violations reflect those indicated by the information currently available to the Conservancy. These violations are ongoing. The Conservancy intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the Clean Water Act, 33 USC § 1319(d), Cooke is subject to a separate daily penalty assessment for each violation (the current maximum daily penalty assessment is $52,414 for each violation). In addition to civil penalties, the Conservancy will seek injunctive relief to prevent further violations under sections 505(a) and (d) of the CWA, 33 USC § 1365(a) and (d), and such other relief as is permitted by law. Also, section 505(d) of the CWA, 33 USC § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

The Conservancy believes that this SUPPLEMENTAL NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT sufficiently states grounds for filing suit. The Conservancy intends, at the close of the 60-day notice period, or shortly thereafter, to file a complaint or to supplement and/or amend an existing complaint against Cooke Aquaculture Pacific, LLC under section 505(a) of the CWA.

The Conservancy is willing to discuss effective remedies for the violations described in this letter and settlement terms during the 60-day notice period.

Very truly yours,

Kampmeier & Knutsen, PLLC

By: _____
    Brian A. Knutsen

c.    Doug Steding, litigation counsel for Cooke (via email only)
      Trent S.W. Crable, litigation counsel for USEPA and NMFS (via email only)

3

## CERTIFICATE OF SERVICE

I, Brian A. Knutsen, declare under penalty of perjury of the laws of the United States that

I am counsel for Wild Fish Conservancy and that on September 6, 2017, I caused copies of the

foregoing Supplemental Notice of Intent to Sue Under the Clean Water Act to be served on the

following by depositing them with the U.S. Postal Service, postage prepaid, via certified mail,

return receipt requested:

Managing Agent
Cooke Aquaculture Pacific, LLC
P.O. Box 669
Anacortes, Washington 98221

Administrator Scott Pruitt
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N. W.
Mail Code: 1101A
Washington, DC 20460

Acting Regional Administrator Michelle Pirzadeh
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue, Mail Code: RA-210
Seattle, WA 98101

Director Maia D. Bellon
Washington Department of Ecology
P.O. Box 47600
Olympia, WA 98504-7600

Pat Hardina
Registered Agent for Cooke Aquaculture Pacific LLC
4019 21st Ave. W.
Seattle, Washington 98199

Brian A. Knutsen