HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILD FISH CONSERVANCY, | Case No. 2:17-cv-01708-JCC |
| Plaintiff, | PLAINTIFF'S FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | NOTE ON MOTION CALENDAR: March 15, 2019 |
| COOKE AQUACULTURE PACIFIC, LLC, | |
| Defendant. | |

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

1

**TABLE OF CONTENTS**

2    I.    MOTION.................................................................................................5

3    II.   INTRODUCTION .................................................................................5

4    III.  REGULATORY FRAMEWORK .........................................................6

5
     A.    The Clean Water Act ...............................................................6
6
     B.    Cooke's NPDES Permits .........................................................8
7

8    IV.   STATEMENT OF FACTS .....................................................................9

9    V.    ARGUMENT ........................................................................................12
10
     A.    Standard of Review ...............................................................13
11
     B.    Cooke's Pollution Prevention Plans Violate Condition S6 of the Permits ...........13
12

13         1.    The Pollution Prevention Plans violate the Permits by omitting
                 provisions for annual inspections of the main cage structures .................13
14

15         2.    The Pollution Prevention Plans violate the Permits by failing to
                 adequately address the storage and disposal of disease control
16               chemicals.................................................................................15

17
           3.    The Pollution Prevention Plans violate the Permits by failing to
18               address how blood from harvest operations is collected, stored,
19               and disposed.............................................................................16

20   C.    Cooke's Release Prevention Plans Violate Condition S7 of the Permits .............17

21         1.    The Release Prevention Plans violate the Permits by omitting
                 procedures for the routine tracking of fish lost to predation
22               and escapement ........................................................................17

23
           2.    The Release Prevention Plans call for inspections to occur at
24               frequencies that violate the Permits .........................................19

25
     D.    The Conservancy has standing to pursue these violations....................20
26

27   VI.   CONCLUSION......................................................................................21

28

29

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 2
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Am Canoe Ass'n v. City of Louis Water & Sewer Comm'n,*
   389 F.3d 536 (6th Cir. 2004) ..................................................20

*Arkansas v. Oklahoma*, 503 U.S. 91 (1992) ................................................6

*Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.,*
   299 F.3d 1007 (9th Cir. 2002) ..................................................6

*Borden Ranch P'ship v. U.S. Army Corps of Engineers*, 261 F.3d 810 (9th Cir. 2001) .................7

*Covington v. Jefferson Cty.*, 358 F.3d 626 (9th Cir. 2004) ..................................21

*Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) ...........20, 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)...........20, 21

*Gill v. LDI*, 19 F. Supp. 2d 1188 (W.D. Wash. 1998) ....................................7

*Lahoti v. Vericheck, Inc.*, 586 F.3d 1190 (9th Cir. 2009) ...................................13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .........................13

*Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985 (9th Cir. 2000) ...................7, 13, 17, 21

*Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 822 F.2d 104 (D.C. Cir. 1987)..............6

*Nw. Envtl. Advocates v. City of Portland*, 56 F.3d 979 (9th Cir. 1995) .............................. *passim*

*Puget Soundkeeper All. v. Cruise Terminals of Am., LLC,*
   216 F. Supp. 3d 1198 (W.D. Wash. 2015)................................................. *passim*

*Save Our Bays & Beaches v. City & Cnty. of Honolulu*, 904 F. Supp. 1098
   (D. Haw. 1994) ..................................................7

*Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517 (9th Cir. 1987)......................................7, 10

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) .................13

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 3
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

1

**Statutes**                                                        **Page(s)**

2

33 U.S.C. § 1251(a) ........................................................................6

3

33 U.S.C. § 1311(a) ........................................................................6

4

33 U.S.C. § 1319(d) ........................................................................7

5

6

33 U.S.C. § 1362(7) ........................................................................6

7

33 U.S.C. § 1365(a) ...............................................................6, 7, 13

8

33 U.S.C. § 1365(b)(1)(A) .............................................................7, 12

9

33 U.S.C. § 1365(d) ........................................................................7

10

33 U.S.C. § 1365(f) ........................................................................6

11

12

**Regulations**                                                    **Page(s)**

13

40 C.F.R. § 19.4 ........................................................................7

14

15

**Other**                                                          **Page(s)**

16

Wash. Admin. Code § 173-221A-110 ..............................................8

17

18

Wash. Rev. Code § 90.48.010 ........................................................8

19

Wash. Rev. Code § 90.48.260 ........................................................6

20

21

22

23

24

25

26

27

28

29

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

## I.   MOTION.

Plaintiff Wild Fish Conservancy hereby moves for partial summary judgment and respectfully requests that the Court enter an order finding that Defendant Cooke Aquaculture Pacific, LLC ("Cooke") has violated the terms of its Clean Water Act ("CWA") permits by failing to prepare adequate Pollution Prevention Plans and Fish Release Prevention and Monitoring Plans ("Release Prevention Plan") (collectively, "Permit Plans").

## II.   INTRODUCTION.

The Conservancy brings this CWA citizen suit for extensive and longstanding violations of Cooke's CWA permits at the company's eight Atlantic salmon farms in Puget Sound. These violations include Cooke's failure to prepare and implement plans intended to ensure adequate inspections and maintenance of the salmon farms. Cooke's mismanagement of its facilities resulted in a maritime disaster during the summer of 2017 when one of the salmon farms collapsed, spilling over 200,000 non-native adult Atlantic salmon, along with massive amounts of debris and other pollution, into Puget Sound.

This CWA enforcement action addresses violations of Cooke's National Pollutant Discharge Elimination System ("NPDES") permits spanning more than six years at eight separate salmon farms. Discovery has been extensive and, along with preparation of expert opinions, is ongoing. The Conservancy expects to establish multiple additional CWA violations once those efforts are complete through further motions and/or at trial.

With this motion, the Conservancy seeks to establish that Cooke has failed to develop Permit Plans consistent with the requirements of its CWA permits. The permits require and rely on these plans to ensure that Cooke is operating its salmon farms in a responsible manner that will prevent the release of non-native farmed salmon and other pollutants into Puget Sound.

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

Cooke's Permit Plans throughout the applicable statute of limitations period are grossly

inadequate and fail to satisfy the permit requirements. There is no dispute as to the substance of

Cooke's Permit Plans or the requirements of the permits and these violations therefore should be

resolved on summary judgment.

## III.   REGULATORY FRAMEWORK.

### A.   The Clean Water Act.

The purpose of the CWA is "to restore and maintain the chemical, physical, and

biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To this end, the CWA prohibits

the discharge of any pollutant into the waters of the United States "unless the discharge is made

according to the terms of an NPDES permit obtained from either the [EPA] or from an

authorized state agency." *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*,

299 F.3d 1007, 1009 (9th Cir. 2002); 33 U.S.C. §§ 1311(a), 1362(7).

NPDES permits are the "primary means" for achieving the CWA's goals and are thus a

"critical" part of the CWA regulatory scheme. *Arkansas v. Oklahoma*, 503 U.S. 91, 101–02

(1992); *Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 822 F.2d 104, 108 (D.C. Cir.

1987). Washington's Department of Ecology ("Ecology") issues NPDES permits in Washington

State. Wash. Rev. Code § 90.48.260; *Ass'n to Protect Hammersley*, 299 F.3d at 1009–10.

Private citizens may bring enforcement actions against any person alleged to be in

violation of pollution control requirements, including the conditions of an NPDES permit,

through the citizen-suit provision of the CWA. 33 U.S.C. § 1365(a), (f); *Ass'n to Protect*

*Hammersley*, 299 F.3d at 1012. This provision allows for enforcement of all NPDES permit

conditions. *See Nw. Envtl. Advocates v. City of Portland*, 56 F.3d 979, 986–90 (9th Cir. 1995).

The CWA imposes strict liability for NPDES permit violations and does not excuse "de

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 6
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

minimis" or rare violations. *E.g.*, *Puget Soundkeeper All. v. Cruise Terminals of Am., LLC*, 216 F. Supp. 3d 1198, 1205 (W.D. Wash. 2015) (citing *Sierra Club v. Union Oil of Cal.*, 813 F.2d 1480, 1490–91 (9th Cir. 1987)); *Gill v. LDI*, 19 F. Supp. 2d 1188, 1195 (W.D. Wash. 1998).

A citizen plaintiff must bring suit for violations that are "ongoing" when the complaint is filed and may not bring suit for violations that are "wholly past." *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 998 (9th Cir. 2000). "A citizen plaintiff may prove ongoing violations either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Id.* (internal quotations omitted); *see also Save Our Bays & Beaches v. City & Cnty. of Honolulu*, 904 F. Supp. 1098, 1116–17 (D. Haw. 1994) (inquiry is whether the risk of defendant's continued violation had been completely eradicated on the date the complaint was filed). "[I]ntermittent or sporadic violations do not cease to be 'ongoing' until the date when there is no real likelihood of repetition." *Sw. Marine*, 236 F.3d at 998.

Relief available under the citizen suit provision includes injunctive relief, civil penalties, and the recovery of litigation expenses. 33 U.S.C. §§ 1319(d), 1365(a), 1365(d); 40 C.F.R. § 19.4. Each distinct violation is subject to a separate daily penalty assessment. *Borden Ranch P'ship v. U.S. Army Corps of Engineers*, 261 F.3d 810, 817–18 (9th Cir. 2001). The applicable five-year statute of limitations is tolled sixty days prior to filing the complaint to accommodate the notice period required by the CWA. 33 U.S.C. § 1365(b)(1)(A); *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1524 (9th Cir. 1987).

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 7
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

**B.** **Cooke's NPDES Permits.**

Washington has adopted a policy for its NPDES program to "maintain the highest possible standards to insure the purity of all waters of the state . . . , and to that end [to] require the use of all known available and reasonable methods by industries and others to prevent and control the pollution of the waters of the state of Washington." Wash. Rev. Code § 90.48.010.

Pursuant to the CWA, commercial Atlantic salmon net pen facilities are point sources of pollution that must operate under NPDES permits if they produce more than 20,000 net pounds of finfish a year, feed more than 5,000 pounds of fish food during any calendar month, or are designated as a significant contributor of pollution by the department in accordance with 40 C.F.R. section 122.24. Wash. Admin. Code § 173-221A-110.

Ecology issued eight NPDES permits on October 26, 2007 for Cooke's Atlantic salmon farms (collectively, the "Permits") with an expiration date of October 26, 2012. Dkt. No. 1 at ¶ 28; Dkt No. 15 at ¶ 28. However, Ecology has administratively extended the Permits pending the issuance of new permits. Dkt. No. 1 at ¶ 28; Dkt. No. 15 at ¶ 28. The Permits impose substantively identical requirements on Cooke's operations at each of the eight salmon farms. *See* Second Decl. of Brian A. Knutsen ("Second Knutsen Decl.") 6–62.

The Permits prohibit the negligent or intentional release of farmed Atlantic salmon. *E.g.*, *id.* at 8. The Permits also impose a variety of requirements intended to minimize, monitor, and report releases of farmed fish and discharges of other pollution associated with net pen operations. *See id.* at 9–13.

Condition S6 of the Permits requires that Cooke prepare a Pollution Prevention Plan and dictates certain minimum requirements that Cooke "must address… in the plan." *Id.* at 11. The Pollution Prevention Plan must provide for at least weekly inspections of exposed surface lines,

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 8
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

shackles, and mooring points and at least annual inspections of the main cage structures and the

anchoring components above and below the water line. *Id.* Any defective components must be

promptly repaired or replaced and all components must be maintained "to prevent failure that

could lead to fish escapements." *Id.* The Permits further require that the Pollution Prevention

Plan provide for documenting any problems and maintaining all components to prevent failures

that could lead to fish escapements. *Id.*

Condition S7 of the Permits requires that Cooke maintain a Release Prevention Plan and

it prescribes certain elements that the plan "must include." *Id.* at 12. The Release Prevention Plan

must incorporate "[p]rocedures for routinely tracking the number of fish within the pens, the

number of fish lost due to predation and mortality, and the number of fish lost due to

escapement." *Id.* Cooke is required to submit Annual Fish Release Reports that summarize, to

the extent possible, all fish released or escaped to state waters. *Id.* The Release Prevention Plan

must provide for "[i]dentification and implementation of technology" and "[r]outine procedures

and best management procedures" to minimize fish escapes. *Id.*

## IV.    STATEMENT OF FACTS

Cooke operates the commercial Atlantic salmon farms in Puget Sound. Dkt. No. 1 at ¶

25; Dkt. No. 15 at ¶ 25. There were eight such net pen complexes prior to one collapsing during

the summer of 2017; there are now seven. *See* Dkt. No. 1 at ¶ 25 and Dkt. No. 15 at ¶¶ 25, 30

(providing details of facilities).

The net pens are floating facilities into which Cooke transfers Atlantic salmon smolts

from its freshwater hatchery to be reared to a marketable size. Dkt. No. 15 at ¶ 26. The pens

include cages consisting of metal walkways, supported by floatation, from which the fish

containment nets are hung. *See, e.g.*, Second Knutsen Decl. 70, 72–73, 87, 89, 99, 137. The

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 9
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

cages are held in place by a mooring system (also referred to as an anchoring system) comprised of mooring chains or ropes attached to anchors. *Id.* at 70–71, 87–88.

The net pen locations are as follows: two net pen facilities (previously three) are in Deepwater Bay of Cypress Island, in Skagit County; one net pen facility is in Skagit Bay north of Hope Island, also within Skagit County; three net pen facilities are located in Rich Passage south of Bainbridge Island, within Kitsap County; and one net pen facility is located near Port Angeles, in Clallam County. Dkt. No. 1 at ¶ 25; Dkt. No. 15 at ¶ 25.

As noted, Ecology has issued separate but substantively identical Permits for each of Cooke's eight Puget Sound salmon farms. *See* Second Knutsen Decl. 6–62. Cooke maintains a single Pollution Prevention Plan and a single Release Prevention Plan for all eight facilities. *See id.* at 106–07.

Cooke has implemented four Pollution Prevention Plans since September 14, 2012, the beginning of the statute of limitations period.[1] *See id.* at 106. A plan dated April 2012 was in effect until January 2015 ("2012 Pollution Prevention Plan"); a plan dated January 2015 was effective until April 2017 ("2015 Pollution Prevention Plan"); a plan dated April 2017 was in effect only a few months until October 2017 ("April 2017 Pollution Prevention Plan"); and a plan dated October 2017 remains in effect ("October 2017 Pollution Prevention Plan"). *Id.*

There have also been four Release Prevention Plans during the limitations period. *See id.* at 107. Three of those plans are addressed in this motion: a plan dated August 2012 that was in effect until June 2014 ("2012 Release Prevention Plan"); a plan dated June 2014 that was in

---

[1] The statute of limitations is five years from the date the Conservancy filed the Complaint plus an extra sixty days to accommodate the mandatory pre-suit notice period. *Sierra Club*, 834 F.2d at 1524.

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 10
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

effect until January 2017 ("2014 Release Prevention Plan"); and a plan dated January 2017 that was effective until October 2018 ("2017 Release Prevention Plan"). *See id.*[2]

The net pen complex in Deepwater Bay of Cypress Island that failed in the summer of 2017 is referred to as Cypress Site 2. Dkt. No. 15 at ¶ 30. Three state agencies—Ecology, the Washington State Department of Fish and Wildlife, and the Washington State Department of Natural Resources—thoroughly investigated this failure and issued a report describing their findings. *See* Second Knutsen Decl. 196. The agencies concluded that between 243,000 and 263,000 farmed Atlantic salmon escaped during the failure and that between 186,000 and 206,000 of the fish were never recovered. *Id.* at 200.[3]

In addition to releasing Atlantic salmon, the collapse of Cypress Site 2 resulted in the discharge of a significant amount of pollution into Puget Sound. *See id.* at 208, 211–12. In fact, the Department of Natural Resources found that a "considerable about of debris" remained on the seafloor even after Cooke represented that it had completed its removal efforts. *Id.* at 214, 220–21; *see also id.* at 225.

The State's multi-agency report found that Cypress Site 2 likely failed because of increased drag on the farm due to insufficient removal of mussels and other marine organisms from the nets, weak mooring points, and the poor condition of steel floats. *Id.* at 198–99. The report suggests that Cooke provided varying descriptions of its underwater inspections of the

---

[2] Cooke recently disclosed an updated Release Prevention Plan dated October 2018. *See* Second Knutsen Decl. 194. The Conservancy does not address the sufficiency of this new plan in this motion, but reserves the ability to do so through further motion practice and/or at trial. While these plans are titled "Fish Escape Prevention Plans," Cooke's discovery responses identify these plans as the "Fish Release Prevention and Monitoring Plans" required by Condition S7 of the Permits Cooke's Permits. *Id.* at 107.

[3] Cooke likely disputes certain findings in this report. The agencies' factual findings are provided under Federal Rule of Evidence 803(8)(A)(iii); however, this information is provided as background information and not as undisputed facts that are material to the resolution of issues raised in this motion.

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 11
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

1  mooring system, claiming to inspect some components either annually or biannually and to

2  inspect components at a depth of more than 100 feet every three years. *Id.* at 203. The agencies

3  found that inadequate inspections and maintenance may have contributed to the collapse. *Id.* at

4  206.

5       The Department of Natural Resources, which leases submerged lands for Cooke's salmon

6  farms, eventually terminated the lease for all three net pen complexes at Cypress Island due to

7  Cooke's failure to maintain its facilities in good repair. *Id.* at 228–29. The agency similarly

8  notified Cooke that it was terminating the lease for the Port Angeles net pen facility due to

9  Cooke's failure to maintain that structure in good repair. *Id.* at 231–32. The Department of

10  Natural Resources provided Cooke with notice of similar lease violations related to inadequate

11  maintenance of the net pens in Rich Passage near Bainbridge Island, but the leases were not

12  terminated. *See id.* at 234–35.

13      The Conservancy provided notice of its intent to sue Cooke as required by the CWA by

14  letters dated August 24, 2017 and September 6, 2017. Dkt. No. 14 at ¶¶ 2–5; 33 U.S.C. §

15  1365(b)(1)(A). The Conservancy filed its Complaint on November 13, 2017. Dkt. No. 1.

16  **V.   ARGUMENT.**

17      The Conservancy seeks partial summary judgment on two categories of Cooke's

18  violations. First, Cooke's Pollution Prevention Plans throughout the limitations periods violated

19  the Permits. Second, Cooke's Release Prevention Plans during this period also did not meet

20  Permit requirements. These violations are all documented in the plans that Cooke has identified

21  as the operative plans it prepared under the Permits. As such, there are no disputed facts with

22  respect to these violations.

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 12
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

### A.    Standard of Review.

Motions for partial summary judgment facilitate litigation by eliminating matters prior to trial for which there is no genuine issue of fact. *See Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1202 n.9 (9th Cir. 2009). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one relevant to the claim—"[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). There is no genuine issue of fact for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.    Cooke's Pollution Prevention Plans Violate Condition S6 of the Permits.

Cooke's Pollution Prevention Plans in place prior to this litigation were grossly deficient. Cooke hastily prepared the October 2017 Pollution Prevention Plan following the Conservancy's notification of intent to sue, but even that plan remains inadequate. The violations of Condition S6 of the Permits described below include only those violations that Cooke carried from its previous plans into the currently operative October 2017 Pollution Prevention Plan update. These violations were therefore "ongoing" when the Conservancy filed its complaint in November and remain ongoing to this day. *See Sw. Marine, Inc.*, 236 F.3d at 998.

#### 1.    The Pollution Prevention Plans violate the Permits by omitting provisions for annual inspections of the main cage structures.

Cooke's Pollution Prevention Plans do not include procedures for an annual inspection of the main cage structure above and below the water. This violates the Permits.

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 13
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

Cooke's net pens are comprised of cages, a framework of metal walkways that are interconnected by hinges and supported by flotation devices. *See, e.g.,* Second Knutsen Decl. 70, 72–73, 77, 79, 87, 89, 95, 99, 102, 137; *see also id.* at 244. Condition S6.F of the Permits requires that Cooke's Pollution Prevention Plan address an "inspection of the main cage structure… above and below the water line" at least once per year. *Id.* at 11.

Cooke's 2012 Pollution Prevention Plan, 2015 Pollution Prevention Plan, and April 2017 Pollution Prevention Plan omitted any inspection requirements for the cage structures altogether. *See id.* at 114, 121, 127. The October 2017 Pollution Prevention Plan provides that cage structures are to be inspected "[a]fter a major storm event or any physical accident involving the farm site." *Id.* at 131. The plan does not define what constitutes a "major storm event" or otherwise ensure that such an inspection occurs at least annually as required by the Permits. The October 2017 Pollution Prevention Plan includes a weekly surface inspection sheet that suggests some of the above water components of the main cage structures will be inspected—*i.e.,* walkway hinges and walkway grating—but it does not address the below water components of the cage as required by the Permits. *See id.* at 133

The multi-agency report on the collapse of Cypress Site 2 suggests that the "poor condition of the net pen steel floats" may have contributed to the structural failure. *Id.* at 199. Similarly, the Department of Natural Resources has found Cooke to be in violation of a lease for failing to adequately maintain flotation structures at one of the net pens. *See id.* at 231–32. Cooke's Pollution Prevention Plans do not address inspections for such in-water components of the net pen cages.

This Court should determine that Cooke's 2012, 2015, April 2017, and October 2017 Pollution Prevention Plans violate Condition S6.F of the Permits for omitting procedures for an

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 14
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

annual inspection of the main cage structure above and below the water and should grant the

Conservancy summary judgment on this issue. *See Nw. Envtl. Advocates*, 56 F.3d at 986–90

(citizen plaintiff may enforce all NPDES permit terms); *Puget Soundkeeper All.*, 216 F. Supp. 3d

at 1205 (CWA imposes strict liability).

> **2.** **The Pollution Prevention Plans violate the Permits by failing to adequately address the storage and disposal of disease control chemicals.**

Cooke's Pollution Plans have failed to fully address practices for the storage and disposal

of disease control chemicals. This violates the Permits.

Condition S6.D of the Permits requires that Cooke's Pollution Prevention Plans address

"[p]ractices for the storage and, if necessary, disposal of disease control chemicals." *Id.* at 11.

Cooke uses hundreds of thousands of pounds of medicated feed for disease control at its salmon

farms every year. *See, e.g.*, *id.* at 248–55, 261. Cooke uses disinfectants like buffered iodophors

for disease control, including for footbaths at the net pens. *See, e.g.*, *id.* at 248–55, 261. Cooke

also uses the anesthetic MS-222 at its salmon farms as part of its disease control procedures. *See,

e.g.*, *id.* at 248–55, 270. Cooke's Pollution Prevention Plans have failed to adequately address the

storage and disposal of these chemicals.

The 2012 Pollution Prevention Plan, 2015 Pollution Prevention Plan, April 2017

Pollution Prevention Plan, and October 2017 Pollution Prevention Plan provide that disinfectants

used for footbaths should be kept to a minimum, but they do not include any provisions for the

proper storage of such chemicals. *Id.* at 113, 121, 126, 130. While the two earliest plans required

that footbath disinfectant chemicals be disposed of at upland facilities, the April 2017 Pollution

Prevention Plan and the October 2017 Pollution Prevention Plan omit any procedures for the

disposal of the chemicals. *See id.* at 113, 121, 126, 130. Similarly, the April 2017 Pollution

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 15
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

Prevention Plan and the October 2017 Pollution Prevention Plan lack procedures for the storage of medicated feed altogether, while the earlier plans included a minimal requirement that such disease control materials be stored in leak proof containers. *See id.* at 113, 121, 126, 130. None of the four plans address the storage or disposal of the anesthetic MS-222. *See id.* at 113, 121, 126, 130.

For these reasons, this Court should determine that Cooke's 2012, 2015, April 2017, and October 2017 Pollution Prevention Plans violate Condition S6.D of the Permits for failing to fully address practices for the storage and disposal of disease control chemicals and should grant the Conservancy summary judgment on this issue. *See Nw. Envtl. Advocates*, 56 F.3d at 986–90 (citizen plaintiff may enforce all NPDES permit terms); *Puget Soundkeeper All.*, 216 F. Supp. 3d at 1205 (CWA imposes strict liability).

### 3.   The Pollution Prevention Plans violate the Permits by failing to address how blood from harvest operations is collected, stored, and disposed.

Cooke's Pollution Prevention Plans violate the Permits by failing to address how blood from harvesting operations is collected, stored, and disposed.

Condition S6.E of the Permits requires that Cooke's Pollution Prevention Plans address "[h]ow solid and biological wastes are collected, stored, and ultimately disposed." *Id.* at 11. Condition S6.E identifies three specific wastes of concern, one of which is "[b]lood from harvesting operations." *Id.* Cooke has indicated that harvested fish are bled at the farm on the harvest vessel. *Id.* at 274. Yet, none of Cooke's four Pollution Prevention Plans implemented during the limitations period includes any discussion of how blood from harvesting operations is collected, stored, or disposed. *See id.* at 113, 121, 126–27, 130–31.

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 16
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

1
2
3
4
5
6
7

This Court should determine that Cooke's 2012, 2015, April 2017, and October 2017 Pollution Prevention Plans violate Condition S6.E of the Permits for failing to address how blood from harvesting operations is collected, stored, and disposed, and should grant the Conservancy summary judgment on this issue. *See Nw. Envtl. Advocates*, 56 F.3d at 986–90 (citizen plaintiff may enforce all NPDES permit terms); *Puget Soundkeeper All.*, 216 F. Supp. 3d at 1205 (CWA imposes strict liability).

8
9
10
11
12
13
14
15
16

### C.   **Cooke's Release Prevention Plans Violate Condition S7 of the Permits.**

Cooke's Release Prevention Plans lack adequate procedures for tracking farmed fish in the net pens and they call for inspections at frequencies that are inconsistent with the Permits. These violations of Condition S7 of the Permits are ongoing because they continued into the 2017 Release Prevention Plan that was in effect when the complaint was filed. *See Sw. Marine, Inc.*, 236 F.3d at 998. This Court should thus enter summary judgment determining that these Release Prevention Plans violate Condition S7 of the Permits.

17
18

### 1.   **The Release Prevention Plans violate the Permits by omitting procedures for the routine tracking of fish lost to predation and escapement.**

19
20
21
22
23
24
25
26
27
28

Cooke's Release Prevention Plans do not include procedures for the routine tracking of the farmed fish lost to predation and escapement. This omission violates the Permits.

Condition S7.6 of the Permits requires that Cooke's Release Prevention Plans include "[p]rocedures for routinely tracking the number of fish within the pens, the number of fish lost due to predation and mortality, and the number of fish lost due to escapement." *Id.* at 12. The 2012 Release Prevention Plan, 2014 Release Prevention Plan, and 2017 Release Prevention Plan lack any procedures for tracking the number of fish lost to predation and escapement. *See id.* at 142, 157–58, 187. The plans note that mortalities are removed from the net pens and accounted

29

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 17
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

for in an inventory system and that the fish in a net pen can be "re-enumerated" or "re-inventoried." *Id.* at 142, 157–58, 187. However, there is no explanation of how or even whether Cooke attempts to determine the number of fish lost to predation or escapement. *See id.* at 142, 157–58, 187. The 2014 Release Prevention Plan and the 2017 Release Prevention Plan do not even mention predation in discussing tracking procedures. *Id.* at 157–58, 187.

Cooke's Permits require it to annually report **all** fish lost to escapement. *Id.* at 12 (requiring Cooke's Annual Fish Release Reports to "include, to the extent possible, all fish released or escaped to state waters, including all Significant Fish Releases"). Cooke's annual reports commonly state only that there was no "Significant Fish Release"[4] and omit any reporting on smaller releases. *E.g.*, *id.* at 277. This is not surprising given that Cooke's Release Prevention Plans entirely fail to include procedures aimed at tracking the number of fish lost to predation and releases other than Significant Fish Releases. The absence of such provisions is not trivial. For example, Cooke's daily logs indicate that there are regularly seals and sea lions in the pens preying on farmed salmon that have presumably entered through holes in the netting. *See, e.g.*, *id.* at 280–86.

For these reasons, Cooke's 2012 Release Prevention Plan, 2014 Release Prevention Plan, and 2017 Release Prevention Plan violate Condition S7.6 of the Permits for omitting procedures for the routine tracking of farmed fish lost to predation and escapement. Summary judgment should be granted to the Conservancy on this issue. *See Nw. Envtl. Advocates*, 56 F.3d at 986–90 (citizen plaintiff may enforce all NPDES permit terms); *Puget Soundkeeper All.*, 216 F. Supp. 3d at 1205 (CWA imposes strict liability).

---

[4] "Significant Fish Releases" are defined by the Permits as fish escapes that exceed certain thresholds. Second Knutsen Decl. 18. A separate "Accidental Fish Release Response Plan" is required to address such releases. *Id.*

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 18
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

2.      **The Release Prevention Plans call for inspections to occur at frequencies that violate the Permits.**

The Release Prevention Plans instruct Cooke to inspect the salmon farms' anchoring components every three to six years. This is inconsistent with the Permits' requirement to inspect all mooring components at least once per year.

Condition S7 of the Permits requires that Cooke's Release Prevention Plan provide for the "[i]dentification and implementation of technology" and "[r]outine procedures and best management procedures" to minimize fish escapes. *Id.* at 12. Cooke's 2012 Release Prevention Plan and 2014 Release Prevention Plan instructed that "[h]igh-current-end moorings will be visually inspected underwater every three years by divers or remotely operated cameras" and that other moorages would be inspected every six years. *Id.* at 138, 153. The 2017 Release Prevention Plan also provided that high-current-end moorings would be inspected every three years, but omitted any inspection requirements for other moorings. *Id.* at 184.

Condition S7 of the Permits does not itself prescribe what frequency of inspections constitutes appropriate technology and procedures to minimize escapements. *See id.* at 12. However, in enumerating the requirements of Cooke's Pollution Prevention Plan, Condition S6 of the Permits defines the minimally acceptable frequencies at which Cooke must inspect its salmon farms. *Id.* at 11. Specifically, the Permits require that Cooke, "[a]t least once per year, conduct an inspection of the… anchoring components above and below the water line." *Id.* Cooke's 2012, 2014, and 2017 Release Prevention Plans call for less frequent inspections of anchoring components and thereby violate the Permits' requirements to include technologies and procedures to minimize fish escapements.[5]

---

[5] Cooke's Pollution Prevention Plans in place before this lawsuit vaguely called for "periodically" inspecting underwater mooring components, while the October 2017 Pollution

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 19
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

This Court should find that the 2012 Release Prevention Plan, 2014 Release Prevention Plan, and 2017 Release Prevention Plan violate the Permits by providing inadequate inspection frequencies. The Court should grant summary judgment to the Conservancy on this issue. *See Nw. Envtl. Advocates*, 56 F.3d at 986–90 (citizen plaintiff may enforce all NPDES permit terms); *Puget Soundkeeper All.*, 216 F. Supp. 3d at 1205 (CWA imposes strict liability).

**D.   The Conservancy has standing to pursue these violations.**

The Conservancy has standing to pursue its claims against Cooke. To satisfy standing, a plaintiff must show: 1) it has suffered an "injury in fact;" 2) the injury is fairly traceable to the challenged action; and 3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The Conservancy has standing to bring this action on behalf of its injured members because the interests at stake are germane to the Conservancy's purpose. *See id.* at 181; Decl. of Kurt Beardslee ("Beardslee Decl.") ¶¶ 2–3. The Conservancy also has standing in its own right because Cooke's failure to develop and implement procedures to track and report escaped fish deprives the Conservancy of information that could otherwise be used in furtherance of the organization's advocacy efforts. *See Am Canoe Ass'n v. City of Louis Water & Sewer Comm'n*, 389 F.3d 536, 544–47 (6th Cir. 2004); Beardslee Decl. ¶ 6.

The "injury in fact" requirement in environmental cases is satisfied if an individual adequately shows an aesthetic or recreational interest in a particular place or animal and shows reasonable concerns that those interests are impaired by the defendant's conduct. *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147, 1151 (9th Cir. 2000); *Laidlaw*, 528

---

Prevention Plan contemplates annual inspections. Second Knutsen Decl. 114, 121, 127, 131. The recent inclusion of an inspection frequency in the Pollution Prevention Plan that is consistent with the Permits does not cure the violation when the Release Prevention Plan continues to instruct Cooke to conduct inspections at frequencies that violate the Permits.

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 20
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

U.S. at 183–84. Members of the Conservancy derive recreational and aesthetic enjoyment from Puget Sound and its wildlife and their use and enjoyment is diminished by Cooke's violations and by the members' reasonable concerns about Cooke's violations. Beardslee Decl. ¶¶ 7–8; First Decl. of William John McMillan ¶¶ 3–23; First Decl. of Peter W. Soverel ¶¶ 2–18.

These injuries stem from Cooke's conduct addressed herein and are therefore "fairly traceable" to the violations. *See Sw. Marine*, 236 F.3d at 994–95; *Ecological Rights Found.*, 230 F.3d at 1152. The injuries complained of are redressable by an order from the Court enjoining Cooke from violating the CWA, requiring Cooke to take specific actions to evaluate and remediate the environmental harm caused by its violations, and imposing sufficient civil penalties to affect a credible deterrent against future violations. *See Covington v. Jefferson Cty.*, 358 F.3d 626, 639 (9th Cir. 2004); *Laidlaw*, 528 U.S. at 185–88.

## VI.    CONCLUSION.

For the foregoing reasons, the Conservancy respectfully requests that this Court grant Plaintiff's First Motion for Partial Summary Judgment.


RESPECTFULLY SUBMITTED this 21st day of February, 2019.

KAMPMEIER & KNUTSEN, PLLC


By:    s/Brian Knutsen
       Brian Knutsen, WSBA No. 38806
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
Tel, Email: (503) 841-6515, brian@kampmeierknutsen.com

Paul A. Kampmeier, WSBA No. 31560
615 Second Ave., Suite 360
Seattle Washington 98104
Tel, Email: (206) 223-4088 x 4, paul@kampmeierknutsen.com

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 21
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

EARTHRISE LAW CENTER

By: ___s/Lia Comerford_____
      Kevin Cassidy (OSB #025296), *admitted pro hac vice*
      Lia Comerford (OSB # 141513), *admitted pro hac vice*
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, Oregon 97219
Tel, Email: (781) 659-1696, cassidy@lclark.edu
            (503) 768-6823, comerford1@lclark.edu

*Attorneys for Plaintiff Wild Fish Conservancy*

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 22
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on February 21, 2019, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF System which will send notification of such filing to the

4

attorneys of record.

5

6

7

     s/ Brian A. Knutsen
Brian A. Knutsen, WSBA No. 38806
Attorney for Plaintiff

8

Kampmeier & Knutsen, PLLC
221 S.E. 11th Avenue, Suite 217

9

Portland, Oregon 97214
Telephone: (503) 841-6515

10

Email: brian@kampmeierknutsen.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

PLAINTIFF'S FIRST MOTION FOR
PARTIAL SUMMARY JUDGMENT - 23
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825