HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILD FISH CONSERVANCY,

Plaintiff,

v.

COOKE AQUACULTURE PACIFIC, LLC,

Defendant.

Case No. 2:17-cv-01708-JCC

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**ORAL ARGUMENT REQUESTED**

NOTE ON MOTION CALENDAR:
April 5, 2019

///
///
///
///
///
///
///
///
///
///

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

# TABLE OF CONTENTS

I.   MOTION ...................................................................................................... 1

II.   INTRODUCTION .......................................................................................... 1

III.   FACTS ......................................................................................................... 3

     A.   Cooke's Atlantic Salmon Farming Operations ............................. 3

     B.   The Regulation of Cooke's Farming Operations .......................... 4

     C.   The Cypress Site 2 Collapse Event ............................................... 6

     D.   WFC's Claims Related to Cypress Site 2. ..................................... 7

IV.   LEGAL STANDARDS ................................................................................. 9

     A.   Summary Judgment Standard Applicable to Plaintiff's Claims. ..... 9

     B.   Standard Applicable to Determination of Mootness. ...................... 9

V.   LEGAL ANALYSIS .................................................................................... 13

     A.   WFC Cannot Meet its Burden of Proving the Existence of Ongoing Violations. ...... 14

     B.   WFC's Claims for an Injunction Against Site 2 are Moot. ........................ 16

     C.   WFC's Claims for Civil Penalties are also Moot. ............................ 17

VI.   CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587 (6th Cir. 2004) ................................ 11, 18

*Alaska Wilderness League v. Jewell*, 637 F. App'x 976 (9th Cir. 2015) ..................................... 12

*Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124 (2d Cir. 1991) .............. 11, 18

*Center For Biological Diversity v. Lohn.* 511 F.3d 960 (9th Cir. 2007) ..................................... 12

*Chem. Producers & Distributors Ass'n v. Helliker*, 463 F.3d 871 (9th Cir. 2006) ..................... 13

*Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170 (4th Cir.1988)... 9, 14

*Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351 (8th Cir. 1998) ............ 11, 18

*Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794 (9th Cir. 2009) ....... passim

*Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519 (5th Cir. 2008) ................ 10, 13, 18, 19

*Friends of the Earth v. Laidlaw*, 528 U.S. 167 (2000) ................................................... 10, 14, 17

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) .............. passim

*Hui Malama I Kohola v. Nat'l Marine Fisheries Serv.*, 439 F. App'x 618 (9th Cir. 2011) ......... 12

*In re Sunset Bay Assocs.*, 944 F.2d 1503 (9th Cir. 1991) .............................................................. 9

*Lamb-Weston, Inc. v. McCain Foods*, Ltd., 941 F.2d 970 (9th Cir. 1991) .................................. 16

*Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985 (9th Cir. 2000) ............................ passim

*Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505 (9th Cir. 1994) ........................................... 12

Oregon Nat. Res. Council, Inc. v. Grossarth, 979 F.2d 1377 (9th Cir. 1992) ................. 11, 12, 19

*Pub. Util. Comm'n v. FERC*, 100 F.3d 1451 (9th Cir.1996) ....................................................... 13

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

*Puget Soundkeeper All. v. Cruise Terminals of Am.*, LLC, 216 F. Supp. 3d 1198 (W.D. Wash. 2015) ................................................................................................................. 9, 14

*Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169 (9th Cir. 2009) ....... 13

*San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002)........ 10, 11, 17, 20

*Sierra Club v. Union Oil Co.*, 853 F.2d 667 (9th Cir.1988) ..................................................... 9, 14

*Smith v. Univ. of Washington, Law Sch.*, 233 F.3d 1188 (9th Cir. 2000).................................... 12

*Sw. Ctr. for Biological Diversity v. Bartel*, 409 F. App'x 143 (9th Cir. 2011) ............................ 12

*United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199 (1968) ............................... 10

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)................................................................ 16

**Statutes**

33 U.S.C. § 1319(g)(6)(A)(ii) .......................................................................................................... 8

33 U.S.C. § 1365(b)(1)(B) ............................................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 56(c) ........................................................................................................................ 9

RCW 79.105.170 ........................................................................................................................... 14

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

## I.     MOTION

In accordance with Federal Rule of Civil Procedure 56, defendant Cooke Aquaculture Pacific, LLC, ("Cooke") moves for summary judgment on all issues related to its former facility, Cypress Site 2.

Cypress Site 2 was completely destroyed in 2017.  The facility does not exist today, did not exist when WFC filed its complaint, and will never again exist because it is legally prohibited from ever-again existing.  WFC can present no evidence that the alleged releases were occurring at the time the complaint was filed, or that they will ever occur again.  Only a governmental agency can pursue enforcement in such a factual scenario.

Thus, all claims related to Cypress Site 2 should be dismissed because WFC cannot present evidence of ongoing violations at the facility, and because they are moot.[1]  In support of this motion, Cooke relies upon the declarations of Cooke's General Manager, James Parsons; its permit coordinator, Kevin Bright; and its counsel, Doug Steding.  Additionally, Cooke incorporates its contemporaneously filed response to WFC's motion for partial summary judgment.

## II.     INTRODUCTION

This motion raises fundamental questions about when a citizen's suit under the Clean Water Act ("CWA") is proper.  The text of the CWA is unambiguous that citizen suits are intended as a secondary enforcement mechanism, and only proper "if the Federal, State, and local agencies fail to exercise their enforcement responsibility."  *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 801 (9th Cir. 2009) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60, (1987)).  As to Cypress Site 2, the State of Washington has taken dramatic enforcement actions, including levying significant fines, requiring enormous cleanup efforts, and forever prohibiting operation of this facility in the future.

---

[1] This motion does not address claims related to the other seven Cooke facilities that are at issue in this lawsuit.

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 1

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1    Even if agency action does not foreclose the possibility of a citizen suit, there are several

2    other additional limitations on citizen suits to ensure they achieve the "overarching public

3    purposes" of the CWA. *Marina Point*, 566 F.3d at 801. Primary among these limitations are the

4    requirements that citizen enforcers give "true notice" to their targets so as to allow out-of-court

5    corrective actions to occur,[2] and also that citizen enforcers target only "ongoing" violations.

6    *Gwaltney*, 484 U.S. at 67; *Marina Point*, 566 F.3d at 800-04. Proving an ongoing violation

7    requires a factual showing that a defendant has a history of repeated violations, and that those

8    violations continue to occur or will likely occur again in the future. *Nat. Res. Def. Council v. Sw.*

9    *Marine, Inc*., 236 F.3d 985, 998 (9th Cir. 2000). This limitation to ongoing releases was enacted

10   to ensure that citizen enforcers deter future violations, and not simply seek to benefit from

11   penalizing wholly past violations.

12   This case is extraordinary as to the level of absolute certainty with which Cooke can

13   demonstrate that no future violations will occur. This certainty is discussed at length later in the

14   brief, but the key undisputable facts are as follows:

> 1.) Cypress Site 2 was destroyed on or about August 19, 2017, during a catastrophic collapse event. Bright ¶ 5; Parsons ¶ 6.

> 2.) Cypress Site 2 has never been rebuilt, and Cooke will never rebuild it. Bright ¶ 10; Parsons ¶ 8.

> 3.) Pursuant to orders issued by the Washington Department of Ecology ("Ecology"), Washington Department of Fish and Wildlife ("DFW"), and Washington Department of Natural Resources ("DNR"), Cooke has spent millions of dollars to recover fish released from the facility and collected thousands of pieces of debris from the seafloor following the collapse. Bright ¶¶ 7-8; Parsons ¶ 7.

> 4.) Cooke is legally prohibited from ever rebuilding Cypress Site 2. Bright ¶¶ 10-11; Parsons ¶ 8.

---

[2] This motion does not address the adequacy of WFC's notice. Cooke's contemporaneously filed opposition to WFC's motion for partial summary judgment addresses this issue as it applies to several undisclosed claims raised in WFC's motion. WFC's letter provided notice as to its numerous claims related to Cypress Site 2. Cooke does not waive any challenge to any non-disclosed claims related to Site 2 that WFC might attempt to bring in the future.

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 2

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

5.) Cooke is legally prohibited from ever building or rebuilding any Atlantic salmon net-pen facilities within the State of Washington. *Id.*

6.) Cooke requested termination of the Cypress Site 2 NPDES permit at issue in this lawsuit, and the permit will be terminated when closure monitoring being overseen by Ecology is concluded. Bright ¶ 12; Parsons ¶ 9.

As to Cypress Site 2, WFC seeks enforcement against a facility that does not exist, did not exist when the complaint was filed, will never again exist, and is legally prohibited from ever-again existing. WFC can present no evidence that the alleged releases were occurring at the time the complaint was filed, or that they will ever occur again. The CWA is clear that only a governmental agency can pursue enforcement in such a factual scenario.

Even if an ongoing violation could be proven to have existed at the time the Complaint was filed, WFC's claims are also now moot. The State of Washington has taken unprecedented enforcement measures against Cooke, measures that have resulted in the involuntary and permanent closure of Cypress Site 2. Because these involuntary actions ensure that no future violations will occur at the facility, all of WFC's claims against Cypress Site 2 have become moot and the Court lacks subject-matter jurisdiction to hear them. A full review of the facts reveals that this case presents the scenario in which Congress intended enforcement agencies to act, and expressly disallowed citizen enforcers from seeking a double-recovery for wholly-past violations.

## III.   FACTS

### A.  Cooke's Atlantic Salmon Farming Operations.

Cooke operates Atlantic salmon net-pen farm facilities in Puget Sound. Parsons ¶ 4. A net-pen farm is a widely used and relatively simple aquaculture facility. *Id.* Each facility has four main components: a floating walkway, a protective "predator net," an entrapping "stock net," and a mooring system. *Id.* ¶ 5. A picture of a net pen is provided to the Court in the supporting declaration of James Parsons. *Id.* ¶ 4. Cooke's farms have a shape similar to an ice cube tray. *Id.* ¶¶ 4-5. The walkway forms a grid of squares like the top of the tray. *Id.* The stock-nets then

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 3

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

descend below the water line to create areas of containment within each square. *Id*. The stock nets are of a small mesh to allow water and dissolved oxygen to flow through the pens. *Id*. The salmon are brought onto the facility from a freshwater hatchery as smolts (juvenile salmon) that are several inches in length. They are placed in the stock nets where they are fed and continuously monitored until they reach a marketable size. Predator nets are connected to the outside of the walkways and descend out and through the water below and under the stock nets. *Id*. The predator nets have much larger mesh and are held in place by pipe frames. *Id*. The predator nets protect against seals and sea lions, and also keep logs, debris, and poorly trained watersport enthusiasts from damaging the stock nets. *Id*. The mooring system consists of a perimeter of anchors that connects to the walkway and hold the entire facility in place. *Id*. The entire system is designed to be able to move and breathe with tidal currents. Thus, the walkway is not a solid, rigid system but a serious of cages (cubes) connected by joints to ensure that the facility can handle high current loads. Net-pens are widely used across the globe, and their maintenance and operation is the subject of global standards utilized by Cooke.[3]

## B. **The Regulation of Cooke's Farming Operations.**

Cooke's net-pens are heavily regulated by numerous agencies. DNR is Cooke's landlord and regulates numerous facets of farm operation, including requiring near constant update reports related to farm maintenance and feed usage. DFW ensures that the fish that go into the nets are healthy, tracks fish health to ensure that disease outbreaks do not occur, and that native fish are not jeopardized. Various federal agencies, including the Environmental Protection Agency ("EPA") and Army Corps of Engineers, also have roles in permitting net pens and ensuring they do not jeopardize the natural environment. The EPA also has an enforcement role and conducted an extensive criminal investigation of the Site 2 collapse before concluding that no criminal

---

[3] How Cooke's net-pens are designed and operate is not central to the issues posed in this motion. To the extent the Court wishes to better understand Cooke's net-pen operations, Cooke incorporates its contemporaneously filed Opposition to WFC's First Motion for Partial Summary Judgement, and the declarations filed in support of that Opposition, which provide a more detailed background on Cooke's operations.

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 4

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1  enforcement was warranted.  Various county governments also regulate Cooke's net-pens through

2  various permitting programs, most notably the shoreline permitting program.

3      Most relevant to this lawsuit is Ecology's pollution regulatory framework.  Ecology is

4  charged with implementing the federal Clean Water Act in the State of Washington.  As to Cooke's

5  net-pens, Ecology accomplishes its regulatory role by issuing individual National Pollution

6  Discharge Elimination System ("NPDES") permits to each individual net-pen facility, by routinely

7  collecting and reviewing documentation related to each site's operation, and by routinely visiting

8  the sites to ensure permit compliance.  The NPDES permit covering Cypress Site 2 is permit

9  number WA-003157-7 (the "Permit").  Steding Ex. 3.  The Permit was issued on October 26, 2007.

10  *Id*.  NPDES permits are to be renewed every five years.  Cooke complied with all renewal

11  requirements and submitted necessary renewal applications. Instead of issuing a new permit,

12  Ecology administratively extended the permit.  *Id*. ¶ 2.

13      Prior to destruction of Cypress Site 2, Ecology last inspected the site on July 17, 2015, and

14  concluded that the facility "has been in complete compliance with their NPDES permit during the

15  past permit cycle."  Bright ¶ 6; Ex. 1.

16      Of particular relevance to this motion is the regulatory role of DNR.  In many ways DNR

17  functions as the legal gatekeeper that determines whether a net-pen can operate because each net

18  pen facility requires an aquatic lease permitting it to operate on aquatic lands owned by the state.

19  Historically, Cooke held an aquatic lease from DNR that allowed it to operate Cypress Site 2 and

20  in return Cooke paid royalties to the State. DNR has terminated Cooke's lease to Cypress Site 2,

21  which makes rebuilding or operating the facility impossible. Bright ¶¶ 7-11; Parsons ¶ 8.

22  Rebuilding Cypress Site 2 would also require a series of permits, including a shoreline permit from

23  Skagit County, and approvals from U.S. Army Corps of Engineers, which are not possible to obtain

24  given DNR's termination of the Site 2 lease. *Id*.  Moreover, in 2018, the Washington Legislature

25  passed HB 2957, which strictly prohibits DNR from ever again issuing, renewing, or extending a

26  lease for Atlantic salmon aquaculture. *Id*.  Thus, in order to legally rebuild Cypress Site 2, Cooke

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 5

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

needs a DNR lease that it does not have and which DNR is legally prohibited from granting. *Id*. Rebuilding Cypress Site 2 is a legal non-starter and is not being pursued.

### C. The Cypress Site 2 Collapse Event.

On July 24, 2017, Site 2 experienced a mooring failure during strong tides that dragged the facility's anchors and caused its location to shift from its usual position. Bright ¶ 4.  Over a period of days, Cooke repositioned the site in its original orientation and secured all of its moorings, including replacing many of the mooring components, resetting anchors, and re-tensioning the mooring lines.  *Id*.  Divers thoroughly inspected each fish stock containment net at the site and confirmed that there were no breaches of the nets and that no fish escaped.  *Id*. Once the site was re-anchored in its usual position, Cooke believed the site to be fully secure and that the facility could continue to grow fish.  *Id*.

Beginning on August 19, 2017, Site 2 again experienced a mooring failure which ultimately led to the facility's complete collapse and permanent destruction.  Bright ¶ 5.  Cooke immediately responded by working tirelessly to stabilize the site, prevent the release of fish, recapture fish that escaped, and remove feed, oil, and other products from the facility in the event that it sank. *Id*. Ultimately, the project became a salvage operation, culminating in weeks of around the clock dive operations to ensure that every man-made object on the seabed surrounding the facility was removed.  *Id*.; Parsons ¶ 7.

Ecology immediately began enforcement actions against Cooke in relation to Site 2. Beginning on August 23, Ecology officials were on-site to investigate the failure and remained on site throughout the recovery, recapture, and eventual salvage efforts as members of a Unified Incident Command that had been set up with DNR and DFW.  Bright ¶¶ 7-8.  Ecology directed Cooke to immediately begin taking water quality monitoring samples, at least twice daily, and provide the sampling results immediately to Ecology's Unified Incident Commander.  *Id*. On September 15, 2017, Ecology issued an Administrative Order Docket Number 15422, asserting violations of Cooke's Site 2 NPDES permit as a result of the Site 2 collapse and requesting

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 6

Case No. 2:17-cv-01708-JCC

information and facility records. *Id.* Pursuant to this Administrative Order, Ecology continued to investigate the circumstances of the Site 2 collapse, conducting numerous interviews of Cooke employees and obtaining thousands of pages of Cooke records. *Id.* Ecology ultimately issued a Notice of Violation and a $332,000 penalty to Cooke for the collapse of Site 2 and alleged violations of the NPDES Permit. *Id.* Cooke appealed Ecology's Notice of Violation and, at present, litigation between Cooke and Ecology remains ongoing.

On February 2, 2018, DNR permanently terminated Cooke's lease to use Site 2. *Id.* ¶ 9. With no intention of ever rebuilding or operating Site 2, on December 21, 2018, Cooke requested that Ecology terminate its NPDES Permit for Site 2. Bright ¶ 12; Ex. 2. That termination will become effective once Cooke finalizes the environmental closure monitoring that is required by the permit. Bright ¶ 12.

In the aftermath of the August 2017 event the issue of Atlantic salmon farming in the State of Washington became a hot-button political and social issue. Bright ¶ 11. On March 2, 2018, the Washington Legislature enacted a phase out of Atlantic salmon farming that forbids DNR from renewing or extending a lease for an Atlantic salmon farm. *See* Steding Ex. 4. Cooke is thus statutorily barred from ever rebuilding the Site 2 facility.

**D. WFC's Claims Related to Cypress Site 2.**

On August 24, 2017, WFC sent Cooke a Notice of Intent to Sue Under the Clean Water Act, which triggered a 60-day period in which Cooke was required to cure identified defaults to avoid a lawsuit on those issues.[4] On September 6, 2017, WFC sent a supplemental notice letter. On November 13, 2017, WFC filed the Complaint beginning this lawsuit. Dkt. 1. The Complaint contains various specific factual allegations, but generally asserts two categories of claims seeking two forms of relief as to Site 2. The two categories of claims are that 1) Cooke violated Section 301(a) of the CWA by discharging various pollutants into Puget Sound as a result of the Site 2

---

[4] Despite identifying numerous issues with specific detail in its Notices, WFC has alleged various claims in its motion for summary judgment that were not included in the Notices. That issue is not relevant to this motion.

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 7

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1  collapse, and 2) that Cooke is violating the Permit. WFC alleges that all violations are ongoing.

2  Dkt. 1 ¶¶ 1, 7, 56.[5] For each claim WFC seeks 1) injunctive relief, and 2) monetary penalties.

3          The specific claims related to the Site 2 collapse are as follows:

4  1.      Discharges of "Atlantic salmon, debris, solid and liquid wastes, nets, feed, machinery, equipment, walkways, moorings, and other structures, fuels greases, oils, and other petroleum products," in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

5  Dkt. 1 ¶ 38.

6  2.      Intentional or negligent release of Atlantic salmon in violation of Permit Condition S1. Dkt. 1 ¶ 39.

7  3.      Failure to "collect and store all fish carcasses in leakproof containers and fail[ure] to store and dispose of fish mortalities and blood in a maner that prevents such materials from entering waters of the state" in violation of Permit Conditions S5.A.7 and S5.A.8.

8  Dkt. 1 ¶ 41.

9  4.      Failure to "dispose of solids and growth in a manner that prevents to the maximum extent practicable the materials from entering or reentering waters of the state and by discharging solids and growth without prior treatment" in violation of Permit Conditions S5.A.9 and S5.A.10. Dkt. 1 ¶ 42.

10

11

12  5.      For "discharging sanitary wastes, floating solids, visible foam other than in trace amounts, or oily wastes which produce sheen on the surface of the receiving water" in violation of Permit Condition S5.A.12. Dkt. 1 ¶ 43.

13

14  6.      By "failing to maintain predator nets above the sea floor; storing nets on the sea floor; failing to immediately tag with floats nets dropped or lost, position the nets using differential GPS, and report the dropped or lost nets to Ecology within 24 hours." Dkt. 1 ¶ 44.

15

16  7.      Failure to "prepare a Pollution Prevention Plan" for each site in accordance with Permit Condition S6, and specifically failing to adhere to the inspection and maintenance requirements of Condition S6.F. Dkt. 1 ¶¶ 45-8.

17

18  8.      Failure to "maintain a Fish Release Prevention and Monitoring Plan that includes the identification and implementation of technology that will minimize fish escapements and procedures for routinely tracking the number of fish within the pens" in accordance with Permit Condition S7.1, 6, and S7.2. This includes a failure to "submit an Annual Fish Release Report to Ecology by January 30th of each year that summarizes release data for the prior year" in violation of Permit Condition S7. Dkt. 1 ¶¶ 49 -52.

19

20

21  9.      Failure to "establish a Sediment Impact Zone" and failure to "submit a Sediment Sampling and Analysis Plan to Ecology for review and approval" in violation of Permit Conditions S2.B.4, S2.A.4, S2.D, and S4. Dkt. 1 ¶¶ 53 -55.

22

23

24  _____

[5] WFC also asserted that neither Ecology nor the EPA was diligently prosecuting the Site 2 events. Diligent enforcement makes this citizen suit improper. 33 U.S.C. § 1365(b)(1)(B); 33 U.S.C. § 1319(g)(6)(A)(ii). Facts reveal that diligent prosecution was occurring, and indeed WFC relies upon Ecology enforcement documents to make its case in its Complaint. Dkt. 1 ¶ 40. Cooke anticipates moving on this issue once the diligent enforcement efforts are concluded. WFC had the opportunity to intervene into the Pollution Control Hearings Board case between Ecology and Cooke but failed to do so. Cooke waives no defenses in making this motion.

25

26

DEFENDANT'S MOTION FOR PARTIAL                    NORTHWEST RESOURCE LAW PLLC
SUMMARY JUDGMENT -- 8                             101 Yesler Way, Suite 205
                                                  Seattle, WA 98104
Case No. 2:17-cv-01708-JCC                        206.971.1564

1    In addition to the above claims related to Site 2, WFC also made various allegations against

2    Cooke's other seven facilities in its complaint.  Those claims are not at issue in this motion.

3                              IV.    **LEGAL STANDARDS**

4         A.  **Summary Judgment Standard Applicable to Plaintiff's Claims.**

5         To succeed on its Site 2 claims at trial, WFC has the burden of proving that: "ongoing

6    violations actually have occurred. A citizen plaintiff may prove ongoing violations either (1) by

7    proving violations that continue on or after the date the complaint is filed, or (2) by adducing

8    evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence

9    in intermittent or sporadic violations." *Sw. Marine*, 236 F.3d 985, 998 (internal punctuation

10   omitted) (quoting *Sierra Club v. Union Oil Co.*, 853 F.2d 667, 671 (9th Cir.1988) (quoting

11   *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171–72 (4th

12   Cir.1988))) *see also Puget Soundkeeper All. v. Cruise Terminals of Am.*, LLC, 216 F. Supp. 3d

13   1198, 1222 (W.D. Wash. 2015).  If there is "no real likelihood of repetition" than a violation is no

14   longer ongoing.  *Soundkeeper*, 216 F. Supp. 3d at 1222.  At trial, WFC must prove that ongoing

15   releases actually have occurred, and to survive summary judgment WFC must produce admissible

16   evidence showing that there is an issue of material fact as to whether "ongoing violations have

17   occurred" after the date the compliant was filed.  *Id.*; *see also* Fed. R. Civ. P. 56(c); *In re Sunset

18   Bay Assocs.*, 944 F.2d 1503, 1514 (9th Cir. 1991) (finding "material presented on summary

19   judgment must be admissible under the rules of evidence").  If WFC cannot produce admissible

20   evidence tending to show that ongoing violations have occurred at Cypress Site 2 on or after

21   November 13, 2017 (date of complaint), then WFC's claims as to that facility must be dismissed.

22        B.  **Standard Applicable to Determination of Mootness.**

23        The United States Supreme Court has long acknowledged that the constitutional doctrine

24   of mootness plays a critical role in ensuring that citizen groups do not engage in CWA litigation

25   where "there is no reasonable expectation that the wrong will be repeated." *Gwaltney,* 484 U.S. at

26   66.  The leading Supreme Court case applying the doctrine of mootness to CWA violation cases

DEFENDANT'S MOTION FOR PARTIAL                    **NORTHWEST RESOURCE LAW PLLC**
SUMMARY JUDGMENT -- 9                                 101 Yesler Way, Suite 205
                                                           Seattle, WA 98104
Case No. 2:17-cv-01708-JCC                                  206.971.1564

is *Friends of the Earth v. Laidlaw*, 528 U.S. 167 (2000). *Laidlaw* makes clear that mootness applies differently to claims for injunctive relief and civil penalties. The Ninth Circuit has interpreted *Laidlaw* to permit a mootness defense to injunctive claims in factual scenarios where violations have ceased and no injunction is required. *See San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1159-60 (9th Cir. 2002). On the other hand, "[o]nly when it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur' will events following the commencement of a suit moot a claim for civil penalties." *Id.* (quoting *Laidlaw* at 189 (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968))).

Although *Laidlaw* and *San Francisco Baykeeper* place admittedly high burdens on defendants, both cases explicitly involve the voluntary cessation doctrine—where a permittee voluntarily ceases its behavior to avoid or nullify litigation under the CWA. Both cases emphasize the voluntary nature of the mooting action, because voluntary actions can be easily undone absent a sufficient civil penalty deterrent. The present case does not involve such a voluntary action. Unlike *Laidlaw* and *San Francisco Baykeeper*, the voluntary cessation doctrine does not apply to this case.

In cases of true involuntary cessation, like this one, the standard for demonstrating mootness is much lower, and the burdens of proof are allocated very differently. While the Ninth Circuit has yet to face the question of whether involuntary cessation moots a citizen suit under the CWA, numerous other Circuits have addressed this precise issue. They have not only found that involuntary cessation moots a citizen's claims, but has also shifted the burden of proof in an involuntary cessation case from the defendant to the plaintiff. Thus, courts have found that where CWA compliance is involuntarily achieved, the case becomes moot unless the plaintiff "proves that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding [the agency action]." *Environ. Conserv. Org. v. City of Dallas*, 529 F.3d 519, 528 (5th Cir. 2008)); *see also Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 355

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 10

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1     (8th Cir. 1998); *Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124, 128 (2d Cir.

2     1991); *Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587, 600 (6th Cir. 2004)).

3           While the Ninth Circuit has yet to so clearly articulate an involuntary cessation standard in

4     the context of the CWA, the reasoning of these cases is consistent with the Ninth Circuit's CWA

5     caselaw.  Specifically, the Ninth Circuit has found that where a "correction had already been

6     undertaken at the behest of a governmental agency," a citizen suit is improper. *Marina Point*, 566

7     F.3d at 801. The Ninth Circuit's leading case on CWA claim mootness is fundamentally based on

8     using penalties as a tool to deter future violations at a currently operating  facility where the

9     defendant has taken a voluntary action to moot the legal claims against it, but has failed to actually

10     ensure ongoing operations will reach compliance. *San Francisco Baykeeper*, 309 F.3d at 1160.

11     The logic of that case—that deterrence is necessary to ensure no ongoing violations do not occur

12     at the same facility—does not apply in scenarios where the defendant lacks any choice in the

13     matter.  Indeed, the Ninth Circuit's repeated position that citizen suits must have a future impact

14     demonstrates that claims brought against operations that have already been shut down by

15     regulators is improper. *Marina Point*, 566 F.3d at 801.

16           The Ninth Circuit has drawn a clear distinction between voluntary and involuntary

17     cessation in other areas of environmental law.  In *Oregon Nat. Res. Council, Inc. v. Grossarth*, the

18     plaintiff challenged a planned timber sale within the boundaries of an Oregon national forest.  979

19     F.2d 1377, 1379 (9th Cir. 1992).  The plaintiffs first filed an administrative challenge to the sale

20     and then followed with a suit in district court.  While the federal case was pending, the regional

21     forester cancelled the sale in light of the administrative challenge and required additional studies

22     be made of the proposed harvest.  The Forest Service moved to dismiss the case as moot given the

23     regional forester's actions.  The plaintiff asserted that the forester's actions were "voluntary" and

24     because the project was not permanently terminated the case was not moot.  The Ninth Circuit

25     disagreed finding that "the Service's cancellation of the Auger Sale and its announcement that it

26     would prepare an EIS in compliance with NEPA for any future sales was not a voluntary cessation

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 11

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

within the meaning of that doctrine, but was instead the result of ONRC's successful administrative appeal." *Id.* at 1379.  As the Ninth Circuit's holding in *Grossarth* clearly demonstrates, the Ninth Circuit recognizes the same distinction between voluntary and involuntary cessation that has been acknowledged by the Second, Fifth, Sixth, and Eighth Circuits in the CWA context.

The Ninth Circuit applied a similar standard in *Center For Biological Diversity v. Lohn*. 511 F.3d 960, 965 (9th Cir. 2007).  In *Lohn*, the plaintiffs sued the National Marine Fisheries Service to have a population of killer whales listed under the Endangered Species Act.  On summary judgment, the Court issued a mixed decision, granting summary judgment on some, but not all, claims and requiring the agency to re-evaluate the listing petition.  Plaintiffs appealed, and the Service moved to have the entire case dismissed as moot.  The Court found "the Service did not voluntarily cease applying the challenged DPS Policy during the final listing determination of the Southern Resident. Rather, the Service issued the final rule listing the Southern Resident as an endangered species after reexamining the listing petition, as ordered by the district court." *Id*.  The Ninth Circuit found the case to be moot because the Service's action was involuntary, the result of the court requiring a reanalysis of the issue, not a voluntary decision.  *Id.*  The Ninth Circuit's voluntary vs. involuntary cessation distinction has been routinely recognized within the confines of environmental law.  *See e.g. Hui Malama I Kohola v. Nat'l Marine Fisheries Serv.*, 439 F. App'x 618, 620 (9th Cir. 2011); *Alaska Wilderness League v. Jewell*, 637 F. App'x 976, 981 at footnote 5 (9th Cir. 2015); *Sw. Ctr. for Biological Diversity v. Bartel*, 409 F. App'x 143, 145 (9th Cir. 2011).

The Ninth Circuit has also long recognized that "when a change of position is wrought by a statutory provision, the change is neither voluntary nor likely to be resiled from at any time in the foreseeable future." *Smith v. Univ. of Washington, Law Sch.*, 233 F.3d 1188, 1194–95 (9th Cir. 2000).  Stated differently, statutory change "is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994).  This presumption of mootness is to be applied in all but the rarest of cases. *Id*.; *see also Chem. Producers & Distributors Ass'n v.*

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 12

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

*Helliker*, 463 F.3d 871, 878 (9th Cir. 2006). Thus, to the extent that Cooke's involuntary cessation is the result of legislative action, the voluntary cessation doctrine does not apply, and the presumption of mootness instead attaches. The same applies where an agency acts to render a citizen's claims moot. *See Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) (Finding that "[i]n general, when an administrative agency has performed the action sought by a plaintiff in litigation, a federal court 'lacks the ability to grant effective relief,' and the claim is moot.") (quoting *Pub. Util. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir.1996)).

As to the involuntary actions that Cooke alleges moot the penalty claims in this case, WFC bears the burden of proving that "there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding" the involuntary actions. *City of Dallas*, 529 F.3d at 528. To survive this motion, WFC must produce admissible evidence demonstrating that there is at least a material issue of fact as to whether there is a realistic prospect of future violations of the Cypress Site 2 permit (i.e. violations after the date of this motion). If WFC cannot produce such evidence, then its claims are mooted by the State of Washington's shutdown of Cooke's Cypress Site 2 operations, and this Court lacks subject matter jurisdiction to hear the claims.

## V.    LEGAL ANALYSIS

Proper analysis of this case requires an investigation of the purpose of citizen enforcers in the CWA statutory scheme. While the role of the citizen enforcer is important, it is limited and was never intended to be the primary enforcement mechanism of the Act. *Gwaltney*, 484 U.S. at 60 (1987); *Marina Point*, 566 F.3d at 801. Citizen suits were always envisioned to be gap-fillers utilized only when enforcing agencies failed to address an ongoing violation that posed risk to the citizen enforcers.[6] Thus, as the Supreme Court has noted "the harm sought to be addressed by

---

[6] Ecology has taken vigorous enforcement actions against Cooke in relation to the Cypress Site 2 Collapse. That litigation is scheduled for a hearing beginning on April 22, 2019. Cooke anticipates filing a motion for summary judgment based on the preclusive effect of that enforcement action once the case is resolved.

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 13

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

such a suit lies in the present or future rather than the past" *Gwaltney*, 484 U.S. at 50; *see also Laidlaw*, 528 U.S. at 188 (reiterating quotation).  The intention of the drafters of the CWA as to citizen suits is clear, they are intended to protect public resources from ongoing threats.  They are not a tool for citizen enforcers to penalize past violations, or to seek double-recovery of civil penalties.

### A. **WFC Cannot Meet its Burden of Proving the Existence of Ongoing Violations.**

To succeed on its claims, WFC must prove that "ongoing violations actually have occurred. A citizen plaintiff may prove ongoing violations either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Sw. Marine*, 236 F.3d at 998 (internal punctuation omitted) (quoting *Sierra Club*, 853 F.2d at 671 (quoting *Gwaltney*, 844 F.2d at 171–72)). If there is "no real likelihood of repetition" than a violation is no long ongoing.  *Soundkeeper*, 216 F. Supp. 3d at 1222.

There can be no debate that WFC cannot meet this burden.  As demonstrated in the supporting declarations of Cooke's general manager, James Parsons, and permit coordinator, Kevin Bright:

1.) Cypress Site 2 was destroyed in August 2017 and does not exist. Bright ¶¶ 5, 10; Parsons ¶¶ 6, 8.

2.) Cypress Site 2 did not exist on the date the Complaint was filed.  Parsons ¶ 6.

3.) Cypress Site 2 has never existed or operated since the Complaint was filed. *Id.*

4.) Cooke has no intention of ever rebuilding Cypress Site 2, and the Site will never again exist.  Bright ¶ 10; Parsons ¶ 8.

5.) DNR has terminated the lease allowing Cooke to occupy and/or operate Cypress Site 2. Bright ¶¶ 9-11; Parsons ¶ 8.

6.) The Washington legislature has passed HB 2957 with the intention of ending Atlantic salmon aquaculture in the State of Washington.  The bill included now-codified language prohibiting the issuance or renewal of Cooke's leases.  RCW 79.105.170. Bright ¶ 11; Parsons ¶ 8.

7.) Cooke has formally requested termination of the Cypress Site 2 NPDES Permit, and has been told that the Permit will be terminated once Ecology approves the results of

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 14

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1     Cooke's closure monitoring. Bright ¶ 12; Parsons ¶ 9.

2         The facts of this case are exceptional.  Not only was the facility at issue destroyed *months*

3     before the complaint was even filed, but the destruction-event resulted in an upwelling of public

4     outcry that resulted in 1) regulatory agencies taking actions to permanently shut down the facility,

5     and 2) the legislature taking actions to permanently prohibit the facility from ever operating again.

6     The result is that WFC is suing to deter future operating violations at a facility that does not exist,

7     legally cannot exist, and never again will exist.

8         The unique facts of this case make its resolution exceptionally simple.  To succeed at trial,

9     WFC must prove ongoing releases have *actually* occurred on or after the filing of the Complaint.

10    *Sw. Marine*, 236 F.3d at 998.  WFC can only satisfy this burden by "(1) by proving violations that

11    continue on or after the date the complaint is filed, or (2) by adducing evidence from which a

12    reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic

13    violations."  *Id.*  A threshold requirement for any ongoing violation is that a facility actually exists.

14    For example, WFC alleges that "Cooke began releasing fish from its Cypress Site 2 facility on or

15    about August 19, 2017. These releases are intentional or negligent and therefore violate Condition

16    S1 of the Permits." Dkt 1 ¶ 39.  It is impossible for an ongoing release of fish to occur if there is

17    not a facility growing fish.  WFC also alleges that Cooke violated its Cypress Site 2 permit by

18    failing "to collect and store all fish carcasses in leakproof containers and failed to store and dispose

19    of fish mortalities and blood in a manner that prevents such materials from entering waters of the

20    state." Dkt 1 ¶ 41.  WFC makes this allegation as to the carcasses of the fish that died in the August

21    2017 collapse event, but if there is no longer a facility growing fish, it is impossible for additional

22    mortalities to be produced, and thus it is impossible for an ongoing violation to occur.  WFC also

23    alleges that Cooke violates its Cypress Site 2 permit by "discharging sanitary wastes, floating

24    solids, visible foam other than in trace amounts, or oily wastes which produce sheen on the surface

25    of the receiving water."  Dkt 1 ¶ 43.  Again, if there is no facility, there is no possibility of

26    discharging sanitary wastes, floating solids, foam, or oily wastes.

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1    Additionally, as WFC's allegations demonstrate, these alleged violations (many of which

2    actually did not occur) were one-time occurrences associated with the collapse event. There was

3    no pattern of "ongoing violations," and WFC has not alleged any discharge violations prior to

4    August 2017 within the applicable statute of limitations. There was no intermittent or sporadic

5    violation, thus the second prong of the *Southwest Marine* test is not even applicable. *Sw. Marine*,

6    236 F.3d at 998. The only way that WFC can succeed at trial, absent showing a trend of pre-

7    August 2017 discharges, is by satisfying prong one of the test which requires "proving violations

8    that continue on or after the date the complaint is filed." *Id.* Proving such a violation is impossible

9    where a facility does not exist, legally cannot exist, and never will exist.

10    **B.  WFC's Claims for an Injunction Against Site 2 are Moot.**

11    Cooke anticipates that WFC will admit that its claims for an injunction in relation to

12    Cypress Site 2 are moot based upon WFC's failure to ever move for a preliminary injunction in

13    this matter. Any permanent injunction must be "tailored to remedy the specific harm alleged."

14    *Lamb-Weston, Inc. v. McCain Foods*, Ltd., 941 F.2d 970, 974 (9th Cir. 1991). Additionally, it

15    must actually resolve a case or controversy, which requires a showing that "there exists some

16    cognizable danger of recurrent violation, something more than the mere possibility which serves

17    to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

18    Today there is no Cypress Site 2 facility, there are no plans at any level to rebuild the

19    facility, and Cooke has been prohibited by law from rebuilding the facility. There is no cognizable

20    danger that needs to be enjoined, and indeed it is unclear how a court would even fashion an

21    injunction. At most, the Court could order Cooke to not rebuild the facility in violation of the law.

22    Cooke has no intention of rebuilding the facility, an effort that would take millions of dollars and

23    be immediately enjoined by a court. To the extent WFC sought to prevent the rebuilding of the

24    facility by filing this lawsuit in the aftermath of the facility's destruction, that goal was fully

25    achieved through other avenues, including but not limited to a massive public lobbying campaign

26    organized and orchestrated by WFC.

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 16

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1    **C.  WFC's Claims for Civil Penalties are also Moot.**

2          While Cooke anticipates that WFC will agree that its claims for injunctive relief are moot,

3    Cooke anticipates that WFC will argue that under *Laidlaw* its claims for double-recovery[7] of civil

4    penalties are not moot.  As the Ninth Circuit has recognized, the conclusion that *Laidlaw* eliminates

5    any mootness defense to CWA civil penalty claims is incorrect.  *See Francisco BayKeeper*, 309

6    F.3d at 1160 (as to voluntary cessation finding that "[o]nly when it is 'absolutely clear that the

7    allegedly wrongful behavior could not reasonably be expected to recur' will events following the

8    commencement of a suit moot a claim for civil penalties.").  Additionally, *Laidlaw*'s holding is a

9    narrowly tailored extension of the voluntary cessation doctrine.  As the case makes clear, "the

10    standard for determining whether a case has been mooted by the *defendant's voluntary conduct* is

11    stringent." 528 U.S. at 170 (*emphasis added*).  The case repeatedly points to the importance of the

12    voluntary nature of the mooting actions.  Indeed, the court notes that the "only conceivable basis

13    for a finding of mootness in this case is Laidlaw's voluntary conduct." *Id*. at 189.  Limiting

14    references to the voluntary nature of the defendant's actions are throughout the *Laidlaw* decision.

15          As the above shows, the heavy burden articulated in *Laidlaw* only applies in the event that

16    the actions resulting in the cessation of violations were voluntary in nature.  If the cessation at

17    issue is the result of involuntary actions, then a different standard applies.  Here the actions that

18    Cooke alleges have mooted the case are 1) the physical destruction of the facility; 2) the permanent

19    termination of the facility's lease; 3) the State of Washington's statutory prohibition on Cooke

20    ever rebuilding the facility; and 4) Cooke's request that the facility's NPDES permit be terminated.

21    The first three actions are unquestionably involuntary.  The fourth can arguably be a voluntary or

22    involuntary action. While voluntary in the sense that Cooke made the request, it is also involuntary

23

24    _____

25    [7] As noted above, Ecology has already levied extensive penalties against Cooke.  Those penalties can be described
      as anomalous in their size.  The legality of those penalties remains in litigation.  Cooke reserves any arguments that
26    may ultimately arise related to the preclusive effect of those penalties, the litigation, and any final penalties paid
      until that litigation resolves.

DEFENDANT'S MOTION FOR PARTIAL                    **NORTHWEST RESOURCE LAW PLLC**
SUMMARY JUDGMENT -- 17                                      101 Yesler Way, Suite 205
                                                                    Seattle, WA 98104
Case No. 2:17-cv-01708-JCC                                        206.971.1564

1  because the action was forced upon Cooke by the three preceding involuntary actions. Thus, if

2  voluntary, it was voluntary under regulatory duress.

3         Where the government takes actions to ensure that violations never again occur, a

4  corresponding citizen suit seeking double-recovery does not achieve the purpose for which that

5  limited enforcement tool was designed. *See Marina Point*, 566 F.3d at 801.  Indeed, when the

6  CWA is functioning properly, citizen suits are not proper because agency enforcement will have

7  effectively curtailed all future violations.  *Id.*  In such cases, citizen suits are impermissible.  *Id.*

8  Indeed, if agency action that brings a party into compliance or forces a facility shutdown did not

9  have the force of mooting a citizen suit, then in every instance of agency enforcement, citizens

10 who oppose the defendant could simply sue so as to recover damages, attorneys fees, and to inflict

11 greater financial hardship onto the defendant despite them posing no future risk of violation.  That

12 is precisely what WFC is doing in this case, and such an action is impermissible under the CWA.

13 The CWA's enforcement mechanism clearly envisions that in cases where agencies have taken

14 action to entirely eliminate the threat of future violations, that enforcement action and the

15 protection it ensures displaces and moots the secondary citizen enforcement tool.

16        Given the CWA's enforcement structure, courts routinely find that when agency action

17 involuntarily brings a defendant into compliance, those actions moot a citizen enforcer's claims

18 for both injunctive relief and civil penalties.  Although the Ninth Circuit has not yet extended its

19 involuntary cessation doctrine to moot a CWA citizen suit, numerous other circuits have.  In

20 *Environ. Conserv. Org. v. City of Dallas*, the Fifth Circuit adopted the approach of the Second and

21 Eighth Circuits in holding that when involuntary actions cause an alleged violating activity to

22 cease, the burden shifts onto the plaintiff to prove "that there is a realistic prospect that the

23 violations alleged in its complaint will continue."  *Envtl. Conservation Org. v. City of Dallas*, 529

24 F.3d 519, 528 (5th Cir. 2008) (citing *Comfort Lake*, 138 F.3d at 355; *Atl. States Legal Found.*, 933

25 F.2d at128).  The Sixth Circuit also recognizes that where involuntary actions achieve compliance,

26 then citizen suits of all nature become moot. *Ailor*, 368 F.3d at 600.

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 18

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

The holdings in these cases flow from the purpose of the citizen suit as a gap filler and an enforcement mechanism if an agency fails to act. *See City of Dallas,* 529 F.3d at 528 (failure to recognize a difference between voluntary and involuntary cessation "would effectively cede primary enforcement authority under the CWA to citizens acting in the role of private attorneys general. Such ceding would discourage defendants in a citizen from entering a consent decree with federal or state enforcement agencies, because defendants would remain exposed to duplicative penalties."). The same purpose applies in the Ninth as discussed throughout *Marina Point* and *San Francisco Baykeeper*, as does a clear distinction between the doctrines of voluntary and involuntary cessation. *E.g.*, *Grossarth*, 979 F.2d at 1379. The Supreme Court has also articulated those principles in *Gwaltney* and *Laidlaw*.

Ecology, DNR, and the Washington State legislature all took immediate enforcement actions following the Site 2 collapse and those actions involuntarily forced a facility shutdown. That shutdown is permanent. It is apparent that WFC never intended to wait to see if the agencies would perform their primary role of enforcement. WFC's notice letter is dated August 24, 2017, while the Site 2 collapse event was ongoing and while Ecology was physically on site enforcing its authority. WFC disavows this enforcement action, yet largely relies upon Ecology enforcement documents to support its case against Cooke. The CWA does not permit enforcement to occur both ways. Instead of deferring to the agency or waiting to see how the process would play out, WFC attempted to supplant the primary enforcement role of the Ecology in order to rush to the courthouse to bring enforcement actions. WFC's actions are not consistent with the purpose of the citizen suit provision of the CWA. Consistent with the logic of the Supreme Court and Ninth Circuit cases, and in accordance with the rule followed by the Second, Fifth, Sixth and Eighth Circuits, this court should find that all claims against Site 2 have been mooted by the involuntary actions taken to close the Site 2 facility.

Although this is plainly not a voluntary cessation case, Cooke also meets the CWA voluntary cessation standard in *San Francisco Baykeeper* and *Laidlaw*. The Ninth Circuit has

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 19

Case No. 2:17-cv-01708-JCC

1    recognized voluntary cessation mootness as a defense to civil penalties only when it is "absolutely

2    clear that the allegedly wrongful behavior could not reasonably be expected to recur."   *San*

3    *Francisco BayKeeper*, 309 F.3d at 1160.   This is a rare case in which the "absolutely clear"

4    standard can be met.   Cypress Site 2 does not exist, and Cypress Site 2 cannot legally exist.   If the

5    facility does not exist and will never exist, then it cannot violate the permit.   In such a case, even

6    the extremely difficult to satisfy voluntary cessation standard is met.

7                              **VI.    CONCLUSION**

8            This motion poses the simple question of whether a citizen enforcer can successfully bring

9    a CWA citizen's suit against a facility that was destroyed months before the Complaint was filed,

10   and which has been prohibited by the State of Washington from ever being rebuilt.   Absent some

11   evidence of future, ongoing violations, the claims must be dismissed because citizen enforces

12   cannot meet their burden of proof. Additionally, the claims must be dismissed for a lack of subject-

13   matter jurisdiction because they are moot.   Cooke respectfully asks for dismissal of all claims

14   related to Cypress Site 2, and that this litigation continue only in relation to Cooke's other seven

15   facilities.

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 20

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1

DATED this 11th day of March, 2019.

2

3                                    NORTHWEST RESOURCE LAW PLLC

4

5                                    */s/ Douglas J. Steding*

6                                    Douglas J. Steding, WSBA #37020
                                     dsteding@nwresourcelaw.com
7                                    206.971.1567
                                     Diane M. Meyers, WSBA #40729
8                                    dmeyers@nwresourcelaw.com
                                     206.971.1568
9                                    Madeline Engel, WSBA #43884
                                     mengel@nwresourcelaw.com
10                                   206.971.1569
                                     David O. Bechtold, OSB #133019 (*pro hac vice*)
11                                   dbechtold@nwresourcelaw.com
                                     503.664.3582
12

13                                   *Attorneys for Defendant Cooke Aquaculture*
                                     *Pacific, LLC*
14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION FOR PARTIAL            **NORTHWEST RESOURCE LAW PLLC**
SUMMARY JUDGMENT -- 21                         101 Yesler Way, Suite 205
                                                  Seattle, WA 98104
Case No. 2:17-cv-01708-JCC                        206.971.1564

# CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2019, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Western District of Washington using the CM/ECF system. Participants who are registered with CM/ECF will be served by the CM/ECF system.

| Attorneys for Plaintiff Wild Fish Conservancy | |
|---|---|
| Brian A. Knutsen<br>Kampmeier & Knutsen, PLLC<br>*Postal Delivery Address:*<br>P.O. Box 15099<br>Portland, OR 97293<br>*FedEx, UPS, Couriers Delivery Address:*<br>221 SE 11th Avenue, Suite 217<br>Portland, OR 97214<br>503.719.5641 | brian@kampmeierknutsen.com |
| Paul A. Kampmeier<br>Emma Bruden<br>Kampmeier & Knutsen, PLLC<br>615 Second Avenue, Suite 360<br>Seattle, WA 98104<br>206.223.4088 | paul@kampmeierknutsen.com<br>emma@kampmeierknutsen.com |
| Lia Comerford<br>Kevin M. Cassidy<br>Earthrise Law Center<br>Lewis & Clark Law School<br>10015 SW Terwilliger Blvd., MSC 51<br>Portland, OR 97219<br>503.768.6736 | comerfordl@lclark.edu<br>cassidy@lclark.edu<br>earthrise-docket@lclark.edu |

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge.

DATED 11th day of March, 2019, in Seattle, Washington.

*/s Eliza Hinkes*
Eliza Hinkes, Paralegal

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT -- 22

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564