HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

9          IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF WASHINGTON
10                      AT SEATTLE

11

WILD FISH CONSERVANCY,                    Case No. 2:17-cv-01708-JCC
12
                                          PLAINTIFF'S MOTIONS TO COMPEL
13          Plaintiff,                     DEPOSITION, FOR SANCTIONS, AND TO
                                          MODIFY CASE SCHEDULE
14   v.

15   COOKE AQUACULTURE PACIFIC, LLC,        NOTE ON MOTION CALENDAR:
                                          March 29, 2019
16          Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

29

MOTIONS TO COMPEL, FOR SANCTIONS,      KAMPMEIER & KNUTSEN PLLC    EARTHRISE LAW CENTER
AND TO MODIFY SCHEDULE - 1             221 S.E. 11th Ave., Suite 217   10015 SW Terwilliger Blvd.
Case No. 2:17-cv-01708-JCC             Portland, Oregon 97214       Portland, Oregon 97219
                                       (503) 841-6515               (503) 768-6825

## I.    MOTIONS.

Plaintiff Wild Fish Conservancy ("Conservancy") hereby moves this Court for three separate orders. First, the Conservancy respectfully requests an order under Rule 37(a)(3) compelling Defendant Cooke Aquaculture Pacific, LLC ("Cooke") to produce a witness under Rule 30(b)(6) in a reconvened deposition who will testify on issues identified in the deposition notice. Second, the Conservancy respectfully moves under Rules 37(a)(5) and 37(d)(3) for an order directing Cooke to pay the Conservancy's reasonable expenses, including attorneys' fees, incurred in bringing this motion and in taking the reconvened deposition necessitated by Cooke's production of a witness who was unprepared to testify on noticed issues. Third, the Conservancy respectfully moves this Court under Rule 16(b)(5) for an order extending the case schedule.

The Conservancy conferred with Cooke in an effort to resolve the discovery dispute without Court intervention. Third Decl. of Brian A. Knutsen ("Third Knutsen Decl.") ¶ 10.

## II.    INTRODUCTION.

In this Clean Water Act ("CWA") enforcement case, the Conservancy has alleged, *inter alia*, that Cooke is failing to adequately inspect and maintain its Atlantic salmon farms in Puget Sound in violation of its CWA permits. The Conservancy has attempted for nearly one year to learn through requests for production, interrogatories, requests for admission, and deposition testimony details regarding Cooke's inspections and maintenance of the anchoring components of its net pens. Cooke has delayed and/or failed to adequately respond to nearly every request.

The most recent example of this conduct centers around the Rule 30(b)(6) deposition of Cooke on February 28 and March 1, 2019. The deposition notice was provided to Cooke two and a half months before the deposition and it described in detail the topics upon which information was sought. Yet, Cooke produced a witness that refused to answer most of the questions poised

MOTIONS TO COMPEL, FOR SANCTIONS,
AND TO MODIFY SCHEDULE - 2
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

for several key issues. The witness instead repeatedly asserted that the information sought by the Conservancy could be derived from "the record," an apparent reference to tens of thousands of pages of documents that Cooke has produced in response to requests for production. Much of that record was produced to the Conservancy less than one week prior to the deposition, despite being requested in March 2018, and none of the documents cited provide the details requested on Cooke's efforts to inspect the anchoring components at the salmon farms.

Rule 30(b)(6) requires that Cooke produce a witness prepared to testify as to the information known or reasonably available to Cooke on the issues identified in the deposition notice. Cooke violated this rule by producing a witness that refused or was unprepared to testify on issues 8 (inspections of anchoring components) and 10 (maintenance of the net pens).[1] The Conservancy therefore respectfully requests an order requiring Cooke to produce a new Rule 30(b)(6) witness and pay the Conservancy's expenses, including attorneys' fees, incurred in bringing this motion and in taking the reconvened deposition.

Cooke's refusal to provided requested discovery has prejudiced the Conservancy's ability to prepare its case, including expert disclosures. Cooke's CWA permits require an annual inspection of the underwater anchoring components at the salmon farms. The Conservancy has sought for nearly one year for Cooke to identify the relevant individuals, dates, methods, anchoring components, and records of these inspections. Cooke has yet to provide this information. Instead, Cooke dumped tens of thousands of pages on the Conservancy a few days before the deposition, nearly all of which appear to have nothing to do with inspections of anchoring components, and then testified at the deposition that the information sought could be

---

[1] These two noticed topics are addressed herein because Cooke's failure to provide the requested testimony on these important issues was the egregious deficiency in its deposition testimony. The Conservancy does not concede that the deponent was adequately prepared to testify on other issues.

MOTIONS TO COMPEL, FOR SANCTIONS, AND TO MODIFY SCHEDULE - 3
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

derived from the "record" instead of actually answering questions. The Conservancy therefore respectfully requests that the Court extend the case schedule under Rule 16(b)(5).

## III.    BACKGROUND.

Cooke owns and operates commercial Atlantic salmon farms in Puget Sound. *See* Dkt. 1, ¶ 15; Dkt. 15, ¶ 15. These facilities rear the non-native fish in floating permeable containers referred to as net pens. Dkt. 1, ¶ 25; Dkt. 15, ¶ 25. The Conservancy alleges in this citizen suit that Cooke is in violation of its National Pollutant Discharge Elimination System permits ("Permits") issued under the CWA. Dkt. 1, ¶¶ 27–29, 39–55.

The Permits impose substantially identical conditions that seek to ensure that Cooke minimizes discharges of pollutants, including of non-native Atlantic salmon, and reduce risks of facility failures. *See, e.g.,* Dkt. 29-2 at 6–62. The Permits require Cooke to prepare and implement a Pollution Prevention Plan and a Fish Release Prevention and Monitoring Plan ("Release Prevention Plan") and the Permits specify minimum requirements for the plans. *Id.* at 11–12. The Pollution Prevention Plan must provide for annual inspections of "anchoring components above and below the water line" and require that Cooke "[d]ocument any problems and maintain all components to prevent failure that could lead to fish escapements." *Id.* at 11. Similarly, the Release Prevention Plan must address the "[i]dentification and implementation of technology that will minimize fish escapements." *Id.* at 12.

Cooke's Release Prevention Plans in place from August 2012 to October 2018 explained that "[h]igh-current-end moorings will be visually inspected underwater every three years by divers or remotely operated cameras." *Id.* at 138, 153, 184. The Release Prevention Plans in effect from August 2012 to January 2017 provided that other moorages are visually inspected every six years. *Id.* at 138, 153. Cooke's plans have thus called for significantly less frequent

MOTIONS TO COMPEL, FOR SANCTIONS,
AND TO MODIFY SCHEDULE - 4
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

1

inspections of the underwater anchoring components than required by the Permits.

2

The Conservancy served its first set of discovery requests on Cooke on March 28, 2018.

3

Dkt. 25-1 at 35. The Conservancy requested that Cooke "describe" inspections at the net pens

4

since 2010. *Id.* at 33. The term "describe" was defined to require that Cooke identify, as

5

applicable, the "relevant dates, numbers, locations, frequencies, individuals involved, materials

6

involved and their amounts and constituents, documents, and equipment involved[.]" *Id.* at 32.

7

The Conservancy also requested all documents related to such inspections. *Id.* at 34. Cooke

8

objected, stating that "answers can be better obtained through review of documents" it would

9

10

produce, and provided cursory and vague responses without the details requested. *Id.* at 39–40.

11

The Conservancy issued requests for admission on August 3, 2018 requesting that Cooke

12

admit, for each year from 2012 through 2017 and for each net pen, that it did not inspect all

13

anchoring components below 100 feet. *See, e.g., id.* at 93–95. Cooke objected that the requests

14

were too burdensome and suggested the Conservancy should instead determine whether

15

inspections occurred by "waiting to see" documents to be provided. *Id.* at 80–81. Cooke also

16

17

asserted that other discovery tools should be used, such as interrogatories and depositions. *Id.* at

18

89. Cooke eventually provided responses on October 31, 2018, which fell into three categories:

19

Cooke (1) denied that some inspections did not occur; (2) asserted that it lacks sufficient

20

information to admit or deny whether other inspections occurred; and (3) denied in part that

21

22

some inspections did not occur, explaining that, "[b]ased on a review of business records," some

23

anchoring components were inspected and that others "may have also been inspected." *Id.* at 93–

24

95, 97–101, 103–13. Following conferral, the Conservancy filed a motion on the inadequacy of

25

26

these responses. Dkt. 25. This prompted Cooke to issue amended responses in which it denied all

27

requests, thereby claiming that all anchoring components below 100 feet were inspected every

28

29

MOTIONS TO COMPEL, FOR SANCTIONS,
AND TO MODIFY SCHEDULE - 5
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

year from 2012 through 2017. Dkt. 27 at 12–30.

The Conservancy issued a Rule 30(b)(6) notice on December 13, 2018 seeking to depose Cooke on January 18, 2019 on various issues, including inspections and maintenance. Third Knutsen Decl. at 5–19. Cooke responded more than three weeks later, claiming that it needed "several months to prepare," and suggesting again that the Conservancy should rely on other discovery tools like interrogatories and document requests. Dkt. 25-1 at 137–39. Following conferral, the Conservancy issued an amended notice setting the deposition for February 28 and March 1, 2019. Third Knutsen Decl. at 186–99. The notice identified with specificity issues upon which testimony was sought. *Id.* at 189–96. Issue number 8 sought details on Cooke's inspections of underwater anchoring components and issue number 10 sought details on maintenance. *Id.* at 192–93. The deposition notice included a request under Rule 34 for Cooke to produce at the deposition all documents related to the mooring inspections. *Id.* at 197.

Cooke objected to the Rule 34 request to produce documents at the deposition and indicated instead that documents would be provided through Cooke's ongoing discovery productions. *Id.* at 209–13. Five days prior to the deposition, Cooke began producing significant amounts of materials. On February 23, Cooke produced 31,960 pages of records, the vast majority of which Cooke identified as being responsive to deposition topic 8. *See id.* at ¶ 9 and p. 222. On February 26—two days before the deposition—Cooke produced an additional 407 pages of records. *See id.* at ¶ 9. On February 27—the day before the deposition—Cooke provided a supplemental response to the interrogatory regarding inspections. *Id.* at 329–59.

Cooke produced its new General Manager Jim Parsons as its Rule 30(b)(6) witness for all topics. Mr. Parsons has worked for Cooke for about six months. *Id.* at 29 (Tr. at 9:4–5). Mr. Parsons brought a chart purporting to identify documents he reviewed and individuals he spoke

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

with to prepare for the deposition. *Id.* at 27–28, 200–04 (Tr. at 7:21–8:24, Deposition Ex. 2). Mr. Parsons did not bring documents requested under Rule 34. *See id.* at 87–88 (Tr. at 67:23–68:2).

## IV.    APPLICABLE RULES.

Rule 30(b)(6) allows for the deposition of a corporation. Fed. R. Civ. P. 30(b)(6). The deposition notice "must describe with reasonable particularity the matters for examination" and the corporation "must then designate one or more... persons who consent to testify on its behalf..." *Id.* "The persons designated must testify about information known or reasonably available to the organization." *Id.*

Rule 37 provides that a party may move to compel discovery where a deponent has failed to answer questions asked during a deposition. Fed. R. Civ. P. 37(a)(3)(B)(i). An "evasive or incomplete" answer is treated as a failure to answer under this rule. Fed. R. Civ. P. 37(a)(4). If a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, ... to pay the movant's reasonable expenses incurred in bringing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Such sanctions are not warranted if:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's non-disclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

*Id.* If a party fails to attend a properly noticed deposition, the sanctions imposed by the Court may include an award of the expenses caused by the failure. Fed. R. Civ. P. 37(d)(3).

Rule 16(b)(5) provides that a scheduling order entered by the Court "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(5).

MOTIONS TO COMPEL, FOR SANCTIONS,
AND TO MODIFY SCHEDULE - 7
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

V.     **ARGUMENT.**

A.     <u>**The Court Should Compel Cooke to Produce a Witness that is Prepared to Testify on Issues 8 and 10 at a Reconvened Rule 30(b)(6) Deposition.**</u>

Cooke violated Rule 30(b)(6) by producing a witness at the deposition who was unable and/or unwilling to testify on issues 8 and 10 identified in the deposition notice. The Court should compel Cooke to produce a new witness at a reconvened deposition that is sufficiently prepared to testify as required by the Federal Rules.

Rule 30(b)(6) requires that the corporation "provide a witness who is knowledgeable in order to provide 'binding answers on behalf of the corporation.'" *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 538 (D. Nev. 2008) (citation omitted). The deponent must be prepared to testify fully and non-evasively on issues identified in the deposition notice. *Id.* at 539. The party served with a Rule 30(b)(6) deposition notice may not elect to supply answers in a written response to an interrogatory, nor may it "take the position that its documents state the company's position." *Id.*; *see also Matson v. United Parcel Serv.*, No. C10-1528 RAJ, 2012 U.S. Dist. LEXIS 199336, at *4–5 (W.D. Wash. Mar. 28, 2012) (the requirement to produce a witness that is prepared to testify on identified issues is not obviated by "defendant's belief that sufficient documentary evidence has been provided").

The Conservancy identified in the deposition notice the precise details it sought to elicit testimony upon pertaining to Cooke's compliance with the requirements to annually inspect anchoring components and to maintain those components. Third Knutsen Decl. at 192–193. The Conservancy had already sought these details through other discovery tools, but to no avail. Cooke's Rule 30(b)(6) witness was unable and/or unwilling to testify as to these issues.

Mr. Parsons testified that Cooke conducted all of the required annual inspections of each anchor at each of the eight salmon farms. *See generally, id.* at 64–184 (Tr. at 44–164). Mr.

MOTIONS TO COMPEL, FOR SANCTIONS, AND TO MODIFY SCHEDULE - 8
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

Parsons was unable to identify a single individual that conducted an inspection or a single date upon which an inspection occurred. *See e.g.*, *id.* at 73–74, 81–82, 178–79 (Tr. at 53:23–54:22; 61:6–62:15; 158:11–159:21); *see also generally, id.* at 64–184 (Tr. at 44–164). Indeed, in the single instance where Mr. Parsons thought he could identify, by name, the particular individual that conducted an inspection, he refused to do so. *See generally*, *id.* at 180–83 (Tr. at 160–163). Mr. Parsons similarly could not testify as to whether inspections by Cooke revealed a need for maintenance or repair of anchoring components. *See e.g.*, *id.* at 133–35, 144–45 (Tr. at 113:4–115:10; 124:16–125:10); *see also generally, id.* at 64–184 (Tr. at 44–164).

Instead, Mr. Parsons repeatedly asserted that such information could be derived from "the records" or "the pile," an apparent reference to materials Cooke has produced in this litigation but did not bring to the deposition as requested under Rule 34. *See e.g.*, *id.* at 74–75, 100–01, 116–17 (Tr. at 54:14–55:6; 80:20–81:25; 96:4–97:11); *see also generally, id.* at 64–184 (Tr. at 44–164). In response to questions on anchor inspections, Cooke's attorney objected: "Show him the document counsel. He's not Cooke. He's prepared to testify on company records. And there are company records that will give you the date you want." *Id.* at 70–71 (Tr. at 50:22–51:3).

The "record" or "pile" that Mr. Parsons referred to does not include any inspection reports or checklists for inspections of anchoring components that supposedly occurred prior to 2018. Instead, it includes: 18,837 pages of net pen "Daily Logs"; 14,894 pages of "Dive Logs" generally created when removing dead fish and inspecting the nets; 2,630 pages of "Vessel Logs"; 8,999 pages of "Monthly Compliance Checklists"; an unknown number of pages of "Weekly Production Reports"[2]; and 280 pages of "Manager Meeting Notes." *See id.* at 222.

---

[2] Cooke did not identify a bates-range for the weekly production reports. However, for eight years for eight facilities plus one year for seven facilities, there would more than 3,500 reports.

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

Cooke produced 32,368 pages of this "record" during the four days leading up to the deposition. *See id.* at ¶ 9. Nearly all of these documents appear to have nothing to do with inspections of anchoring components, and those that may certainly do not provide with any clarity the information that the Conservancy has sought on inspections and maintenance of anchoring components—i.e., they do not identify the dates that inspections occurred, the anchor lines and components inspected, the individuals that conducted the inspections, and whether it was determined repairs were needed. *See e.g., id.* at 228–88 (Hope Island June 2015 Daily Log), 290–313 (Hope Island June 2015 Dive Log) (suggesting that some anchor work was done, but not specifying what anchors or what anchor components may have been inspected), 315–27 (June 2015 Vessel Log).[3]

The Conservancy has located a few inspection reports that Cooke produced in discovery and that purport to identify when anchor lines were last inspected, the initials of those conducting the inspections, and the condition of the anchoring components. *See id.* at 205–07 (Deposition Exs. 12, 14, 16). These reports show that each anchoring line was not inspected every year as Cooke claims and as required by the permits. *See id.* Cooke did not identify these reports as materials Mr. Parsons reviewed in preparing for the deposition. *See id.* at 222. When asked about them in the deposition, Mr. Parsons claimed to have never seen them before the deposition. *Id.* at 159, 161, 163, 169–70 (Tr. at 139:16–21, 141:17–20; 143:7–11; 149:22–150:6).

Mr. Parsons conceded during the deposition that, prior to 2018, Cooke did not actually inspect anchoring components deeper than 100 feet each year. *See e.g.*, *id.* at 54, 86–89, 100, 113–14, 120–24 (Tr. at 34:3–16; 66:6–67:14; 68:3–69:17; 80:14–19; 93:20–94:2; 100:8–14;

---

[3] These particular materials are provided as examples because Cooke claims to have inspected some anchors at Hope Island in June of 2015. Dkt. 25-1 at 100.

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

101:16–102:10; 103:11–104:3). Instead, Mr. Parsons testified that Cooke inspected components at shallower depths and, based upon those inspections, made assumptions as to the condition of the components located at greater depths. *Id.* at 363–64 (Tr. 404:18–405:20). This contradicts Cooke's answers to the requests for admission in which Cooke claimed, without explanation, to have inspected all components below 100 feet. *See, e.g.,* Dkt. 27 at 10–12.

The parties have held extensive discovery conferrals throughout this litigation in an effort to avoid bringing discovery disputes to the Court. In those conferrals, Cooke has repeatedly told the Conservancy that it should be seeking information through various other discovery tools. The Conservancy has now exhausted every tool available to it, and Cooke has yet to provide the requested information. The Court should compel Cooke to "produce Rule 30(b)(6) deponents who are fully prepared to discuss the topics enumerated in the deposition notice" and to bring to the deposition the documents identified under Rule 34. *See Lains v. Am Family Mut. Ins. Co.*, No. C14-1982-JCC, 2016 U.S. Dist. LEXIS 120242, at *11 (W.D. Wash. Mar. 2, 2016).

### B. The Court Should Order Cooke to Pay the Conservancy's Expenses Incurred in Bringing this Motion and in Taking a Reconvened Deposition.

Cooke's failure to produce a witness that was prepared to testify under Rule 30(b)(6) was not substantially justified. Rather, this was a continuation of its efforts to obstruct discovery regarding inspections of the anchoring components at the salmon farms as required by the Permits. The Court should impose sanctions under Rule 37 for Cooke's discovery violations.

Cooke did not file a protective order to limit the deposition or otherwise indicate that it would resist producing discovery on the topics identified; "[i]nstead, it blithely produced [an] unprepared deponent[], wasting both parties' time and resources." *Lains*, 2016 U.S. Dist. LEXIS 120242, at *8. Sanctions are warranted in these circumstances. *See id.* at *8–9. The Court should award the Conservancy its expenses, including attorney's fees, incurred in bringing this motion,

MOTIONS TO COMPEL, FOR SANCTIONS,
AND TO MODIFY SCHEDULE - 11
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

including attorney time spent on any reply brief. *See* Fed. R. Civ. P. 37(a)(5)(A); *see also Great Am. Ins. Co. of N.Y.*, 251 F.R.D. at 543–44 (awarding fees on motion and reply).

The Court should also award the Conservancy its expenses necessitated by Cooke's production of an unprepared witness. Producing a witness under Rule 30(b)(6) that is not prepared to testify on the issues identified in the deposition notice is treated as a failure to appear at the deposition that is subject to sanctions under Rule 37(d). *Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 303–04 (3rd Cir. 2000) (collecting cases); *Lains*, 2016 U.S. Dist. LEXIS 120242, at *8; *Matson*, 2012 U.S. Dist. LEXIS 199336, at *4–5. This Court should require Cooke to pay the Conservancy's expenses, including attorney's fees, associated with taking the reconvened deposition necessitated by Cooke producing an unprepared witness. *See Great Am. Ins. Co. of N.Y.*, 251 F.R.D. at 543–44; *Lains*, 2016 U.S. Dist. LEXIS 120242, at *12 (ordering defendant to pay the attorney fees incurred on the repeat Rule 30(b)(6) depositions).

## C. This Court Should Extend the Deadlines by Approximately 45 Days.

Pursuant to Rule 16(b)(5), the Conservancy respectfully moves the Court to extend the pre-trial and trial dates by 45 days. Such relief is requested irrespective of the Court's rulings on the other motions presented herein, as there is good cause for such an extension.

As discussed above, Cooke has significantly delayed producing information sought by the Conservancy during the last year. The Conservancy's ability to effectively prosecute its case has been prejudiced by Cooke's failure to timely provide sufficient responses to discovery requests. Notably, expert disclosures are due on April 10, 2019.[4] Yet the Conservancy has not been able to provide its expert with key information, including details regarding inspections and

---

[4] The deadline for expert disclosures under the Scheduling Order is March 27, 2019. Dkt. 20 at 1. The parties stipulated to a two week extension of that deadline. Third Knutsen Decl. ¶ 10.

MOTIONS TO COMPEL, FOR SANCTIONS,
AND TO MODIFY SCHEDULE - 12
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

maintenance of the anchoring components at Cooke's salmon farms.

The Conservancy served its initial discovery requests on Cooke almost one year ago seeking, *inter alia*, documents related to inspections at the salmon farms. *See* Dkt. 25-1 at 33–35. Cooke waited until very recently—and less than a week before the Rule 30(b)(6) deposition—to dump more than 30,000 pages of responsive records on the Conservancy. Third Knutsen Decl. at ¶ 9. The Conservancy issued the Rule 30(b)(6) deposition notice on December 13, 2018 seeking to depose Cooke on January 18, 2019. *Id.* at 5, 17. Cooke responded three weeks later, claiming that it needed "several months to prepare." Dkt. 25-1 at 137–39. The parties eventually agreed to hold the deposition on February 28 and March 1, 2019, but Cooke produced a witness that was not prepared to provide information on key topics.

In sum, the Conservancy has sought discovery for nearly one year, but still does not have information needed to effectively prosecute this case. Therefore, the Conservancy respectfully requests an approximately 45-day extension of the deadlines in this case.

## VI.    CONCLUSION.

For the foregoing reasons, the Conservancy respectfully requests the Court enter an order directing Cooke to produce a witness in a reconvened deposition that will testify under Rule 30(b)(6) on issues 8 and 10 and requiring that Cooke pay the Conservancy's reasonable expenses, including attorneys' fees, incurred in bringing this motion and in taking the reconvened deposition. Further, the Conservancy respectfully requests that the Court extend the case schedule in this matter by approximately 45 days.

RESPECTFULLY SUBMITTED this 14th day of March, 2019.

MOTIONS TO COMPEL, FOR SANCTIONS,
AND TO MODIFY SCHEDULE - 13
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

KAMPMEIER & KNUTSEN, PLLC

By: s/ Brian A. Knutsen
      Brian Knutsen, WSBA No. 38806
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
Tel, Email: (503) 841-6515, brian@kampmeierknutsen.com

Paul A. Kampmeier, WSBA No. 31560
615 Second Ave., Suite 360
Seattle Washington 98104
Tel, Email: (206) 223-4088 x 4, paul@kampmeierknutsen.com

EARTHRISE LAW CENTER

Kevin Cassidy (OSB #025296), *admitted pro hac vice*
Lia Comerford (OSB # 141513), *admitted pro hac vice*
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, Oregon 97219
Tel, Email: (781) 659-1696, cassidy@lclark.edu
            (503) 768-6823, comerford1@lclark.edu

*Attorneys for Plaintiff Wild Fish Conservancy*

MOTIONS TO COMPEL, FOR SANCTIONS,
AND TO MODIFY SCHEDULE - 14
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825