HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILD FISH CONSERVANCY,

     Plaintiff,

v.

COOKE AQUACULTURE PACIFIC, LLC,

     Defendant.

Case No. 2:17-cv-01708-JCC

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………...1

II.     REGULATORY FRAMEWORK………………………………………………...1

        A.      Clean Water Act………………………………………………………...1

        B.      Cooke's Permits………………………………………………………...3

III.    STATEMENT OF FACTS………………………………………………………4

IV.     STANDARD OF REVIEW……………………………………………………8

V.      ARGUMENT……………………………………………………………………...9

        A.      Cooke's Violations Were "Ongoing" when the
                Conservancy Filed Suit……………………………………………………9

                1.      Cooke did not show that sporadic violations
                        will not recur……………………………………………………9

                2.      Violations of Conditions S2, S6, and S7 of the
                        Permit and of section 301(a) of the CWA were
                        continuing when the complaint was filed………………………13

                        a.      Cooke's violations of Permit Conditions
                                S2, S6, and S7 were continuing when the
                                complaint was filed…………….....................................13

                        b.      Cooke's violation of section 301(a) of the
                                CWA was continuing when the complaint
                                was filed……………………………………………14

        B.      The Claims are not Moot because the Court can Provide
                Effective Relief…………………………………………………...16

                1.      Mootness Standards……………………………………………...16

                2.      Cooke bears the burden of proving mootness……………………18

                3.      The Conservancy's request for civil penalties is not moot………………21

                4.      The Conservancy's requests for injunctive and
                        declaratory relief are likewise not moot……………………………23

VI.     CONCLUSION…………………………………………………………………24

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

Plaintiff Wild Fish Conservancy ("Conservancy") respectfully submits this response to Defendant's Motion for Partial Summary Judgment, Dkt. 41 ("Cooke's Motion").

## I.    INTRODUCTION.

Defendant Cooke Aquaculture Pacific, LLC ("Cooke") requests summary judgment on claims pertaining to its violations of the Clean Water Act ("CWA") at Cypress Site 2. Cooke argues that the CWA citizen suit does not provide jurisdiction for these violations because they were not ongoing when the complaint was filed and that the claims are moot. Cooke has failed to demonstrate that its requested summary judgment should be granted.

The Court has jurisdiction over the violations at Cypress Site 2 because Cooke had not completely eradicated the risk of future violations when the Conservancy filed its complaint. These claims are not moot because the Court can still enter effective relief against Cooke for its violations at Cypress 2; namely civil penalties are warranted to deter Cooke from continuing to violate its National Pollutant Discharge Elimination System ("NPDES") permits. Cooke's arguments to the contrary omit important facts. For example, Cooke relies heavily on the fact that its lease for Cypress Site 2 has been terminated. Cooke does not disclose that it is challenging that lease termination and asserting its right to rebuild and restock Cypress Site 2. Cooke also points to recent legislation that it claims prevents it from operating at Cypress Site 2. However, that legislation only prohibits new leases for projects rearing nonnative finfish. Cooke omits the fact that it is seeking authorization to rear native finfish at its salmon farms.

As described below, the Court should deny Cooke's Motion because Cooke has failed to meet its burdens of proof and because the Conservancy has presented evidence to establish that there are genuine disputes of material facts that preclude Cooke's requested summary judgment.

## II.    REGULATORY FRAMEWORK.

### A.    Clean Water Act.

"The [CWA] explicitly allows private citizens to bring enforcement actions against any person alleged to be in violation of federal pollution control requirements." *Ass'n to Protect Hammersley, Eld, and Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1012 (9th Cir. 2002).

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

"The citizen plaintiffs in a [CWA] suit are suing as private attorneys general, and they seek

enforcement of federal law . . . . Any benefit from the lawsuit, whether injunctive or monetary,

inures to the public or to the United States." *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517,

1522 (9th Cir. 1987) (citation omitted). Such "citizen suits should be handled liberally, because

they perform an important public function: '. . . citizens should be unconstrained to bring these

actions, and . . . the courts should not hesitate to consider them.'" *Id.* at 1525 (quoting legislative

history).

Relief available includes injunctive relief, civil penalties up to $53,484 per violation per

day, and the recovery of litigation expenses. 33 U.S.C. §§ 1319(d), 1365(a), (d); 40 C.F.R. §

19.4. The Court has broad discretion in fashioning injunctive relief, if any. *See Weinberger v.

Romero-Barcelo*, 456 U.S. 305, 320 (1982); *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d

985, 999–1001 (9th Cir. 2000). Each distinct violation is subject to a separate daily penalty

assessment. *Borden Ranch P'ship v. U.S. Army Corps of Eng'rs*, 261 F.3d 810, 817–18 (9th Cir.

2001). The Court has significant discretion in setting a penalty amount. *Sw. Marine*, 236 F.3d at

1001–02; 33 U.S.C. § 1319(d). The penalties "are payable not to the citizen plaintiff but to the

U.S. Treasury." *S.F. Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002).

The CWA provides that a citizen suit may be "commence[d]" against a defendant

"alleged to be in violation," which limits subject matter jurisdiction to violations that were

"ongoing" on the date the complaint was filed. *See* 33 U.S.C. § 1365(a); *see also Sierra Club v.

Union Oil, Co.*, 853 F.2d 667, 669–71 (9th Cir. 1988). "The CWA 'does not permit citizen suits

for wholly past violations'; rather, the statute 'confers jurisdiction over citizen suits when the

citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation.'" *Sw.

Marine*, 236 F.3d at 998 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,

484 U.S. 49, 64 (1987)). To prevail at trial, a citizen plaintiff must prove "ongoing" violations

"'either (1) by proving violations that continue on or after the date the complaint is filed, or (2)

by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of

a recurrence in intermittent or sporadic violations.'" *Id.* (quoting *Sierra Club v. Union Oil, Co.*,

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

853 F.2d at 671)). "'Intermittent or sporadic violations do not cease to be ongoing until the date when there is *no real likelihood of repetition*.'" *Sierra Club v. Union Oil*, 853 F.2d at 671 (emphasis in original) (quoting *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 172 (4th Cir. 1988)). The relevant inquiry is "whether the risk of defendant's continued violation had been completely eradicated when the citizen-plaintiffs filed suit." *Id.* (emphasis omitted) (quoting *Gwaltney*, 844 F.2d at 172).

Citizen plaintiffs may not pursue CWA enforcement if, prior to commencement of the citizen suit, EPA or a state agency has already commenced an enforcement action for the same violations in either federal or state court; administrative proceedings, however, do not preclude citizen enforcement. *See* 33 U.S.C. § 1365(b)(1)(B); *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 728 F.3d 868, 873–74 (9th Cir. 2013). Similarly, penalties may not be assessed in a citizen suit where administrative penalties have been assessed for the same violation by EPA under section 309(g) of the CWA, or by a state agency under a comparable state law, prior to commencement of the citizen suit. *See* 33 U.S.C. § 1319(g)(6); *Knee Deep Cattle Co. v. Bindana Inv. Co.*, 94 F.3d 515, 516 (9th Cir. 1996); *Sierra Club v. Hyundai Am., Inc.*, 23 F. Supp. 2d 1177, 1181–82 (D. Or. 1997). For a state law to be "comparable" to CWA section 309(g), it must provide for, *inter alia*, public notice and opportunity for comment prior to assessment of the administrative penalty. *See Citizens for a Better Env't v. Union Oil Co.*, 83 F.3d 1111, 1118 (9th Cir. 1996); *see also Atl. States Legal Found., Inc. v. Universal Tool & Stamping Co.*, 735 F. Supp. 1404, 1415 (N.D. Ind. 1990) (quoting 133 Cong. Rec. S737 (daily ed., Jan. 14, 1978)).

B.      **Cooke's Permits.**

Ecology has issued separate NPDES permits that impose identical conditions for each of Cooke's eight net pen facilities ("Permits"). *See* Dkt. 29-2 at 7–62. The Permits authorize Cooke "to discharge waste materials associated with marine salmon net pen operations" subject to compliance with the Permits' conditions. *id.* at 8; *see also* Fourth Decl. of Brian A. Knutsen ("Fourth Knutsen Decl.") 8 (the Permits contemplate discharges of uneaten fish feed, fish feces, disease control medications, and marine fouling organisms). The Permits expressly prohibit the

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

negligent release of farmed Atlantic salmon. Dkt. 29-2 at 8.

The Permits impose other requirements intended to minimize, monitor, and report discharges of farmed fish and other pollution from the salmon farms. *See id.* at 9–13. For example, Condition S5 of the Permits requires the collection and disposal of fish carcasses so that they are not disposed of in surface waters, and it prohibits the discharge of floating solids of visible foam. *Id.* at 9–10. Condition S6 of the Permits requires a Pollution Prevention Plan that addresses "operations, spill prevention, spill response, solid waste, and stormwater discharge practices which will prevent or minimize the release of pollutants from the facilit[ies] to waters of the state." *Id.* at 11–12. Condition S7 of the Permits requires a Fish Release Prevention and Monitoring Plan ("Release Prevention Plan"). *Id.* at 12.

## III.    STATEMENT OF FACTS.

Cooke operates the Atlantic salmon farms in Puget Sound, of which there were eight prior to the collapse of Cypress Site 2. *See* Dkt. 43 ¶¶ 4, 6. The net pens are located on submerged lands leased to Cooke by the State of Washington through its Department of Natural Resources ("DNR"). *See, e.g.*, Fourth Knutsen Decl. 16, 34–69; *see also* Dkt. 41 at 8. A fifteen-year lease was executed in 2008—set to expire December 31, 2023—that allows for operations of all three of the net pen facilities located in Deepwater Bay of Cypress Island, referred to as Cypress Sites 1, 2, and 3. *See* Fourth Knutsen Decl. 39, 59–60.

Cooke describes its net pens as "relatively simple aquaculture facilit[ies]" comprised of "four main components: a floating walkway system, a protective 'predator net,' fish-containing 'stock nets,' and a mooring system." Dkt. 43 ¶¶ 4–5. Net pens were first installed in Deepwater Bay of Cypress Island, including at Cypress Site 2, in 1984. Fourth Knutsen Decl. 12, 16. These structures require "[p]eriodic replacement." *Id.* at 76. Cooke indicated in February 2017 its intent to replace the structures at Cypress Site 2, explaining that the sixteen-year old facility was "nearing the end of its serviceable life" and "is due for complete replacement." *Id.* at 75. Cooke planned to replace the structure following the harvest at Cypress Site 2 that was to occur in September 2017. *Id.* at 12.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

The Cypress Site 2 net pen structure suffered mooring failures on July 24, 2017. Dkt. 42 ¶ 4. Cooke responded by replacing some mooring components and "add[ing] structure" to the net pen. *Id.* at 95, 135 (Tr. 197:1–7, 249:7–25); *see also id.* at 142–43 (Cooke added chains and "box steel" in an effort reinforce the walkways). Cooke did not retain or consult with an engineer to evaluate the soundness of Cypress Site 2 following the July 2017 incident. *Id.* at 105-06, 136 (Tr. 207:20–208:19, 257:1–21). Cooke decided to continue growing the fish at the facility instead of harvesting a couple months early following the July mooring failure. *Id.* at 134–35 (Tr. 248:17–249:6). Moorings at the facility began failing again on August 19, 2017 and progressed over the next several days until the structure was entirely destroyed. Dkt. 42 ¶ 5; Dkt. 43 ¶ 6.

Washington State estimates that between 243,000 to 263,000 Atlantic salmon were released into Puget Sound as a result of the Cypress Site 2 failure, and that between 186,000 and 206,000 were not recovered. Dkt. 29-2 at 200.[1] A significant amount of debris and other pollutants were also released into Puget Sound. *See* Dkt. 29-2 at 211–12.

The Conservancy issued 60-day notices of intent to sue as required under the citizen suit provision of the CWA on August 24 and September 6, 2017. Dkt. 14 ¶¶ 2, 4.

DNR notified Cooke that it was in violation of the lease governing the three Cypress Island facilities on August 25, 2017. Fourth Knutsen Decl. 145–46. DNR's notice provided that the mooring failures and resultant collapse of Cypress Site 2 violated the requirement to maintain all improvements in good order and repair. *Id.* DNR demanded removal of all damaged materials from the leasehold no later than September 24, 2017 and indicated that the lease may be terminated if Cooke does not cure the default by that date. *Id.*

Cooke responded to DNR's notice of default on September 1, 2017. *Id.* at 148–50. Cooke indicated its intent to remove damaged structures "as expeditiously as possible, while maintaining the safety of its employees . . . ." *Id.* at 148. Cooke emphasized that it was not agreeing "to set aside any of the terms of the Lease" and that the lease "obligates" Cooke "in the

---

[1] Cooke estimates that 160,167 fish escaped. Dkt. 15 ¶ 33.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 5 Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC 221 S.E. 11th Ave., Suite 217 Portland, Oregon 97214 (503) 841-6515

EARTHRISE LAW CENTER 10015 SW Terwilliger Blvd. Portland, Oregon 97219 (503) 768-6825

event of damage or destruction of its 'improvements' to 'promptly reconstruct, repair, or replace' such improvements, not remove them." *Id.* at 149.

Cooke and Ecology entered into an agreed administrative order on September 15, 2017 that required Cooke to submit information to Ecology on the net pen failure. *Id.* at 152–58.

The Conservancy filed its complaint on November 13, 2017 alleging several categories of violations. Dkt. 1. The complaint alleges that Cooke is violating CWA section 301(a) by discharging debris and other pollutants at Cypress Site 2 that are not authorized by any of the Permits. *Id.* ¶¶ 38, 66. The Conservancy alleges that Cooke is violating its Permit by negligently releasing Atlantic salmon from Cypress Site 2. *Id.* ¶ 39. The complaint alleges that Cooke is violating operational requirements of Condition S5 of the Permit at Cypress Site 2, including those that prohibit the disposal of fish carcasses in surface waters, and the Permits' requirements for site closure. *Id.* ¶¶ 41–44, 53–55. Finally, the Conservancy alleges that Cooke is violating the Pollution Prevention Plan and the Release Prevention Plan requirements of Conditions S6 and S7, respectively, at all of its Puget Sound salmon farms. *Id.* ¶¶ 45–52. The Conservancy alleges that all of these violations are ongoing and/or reasonably likely to recur. *Id.* ¶¶ 56–59.

DNR notified Cooke on November 17, 2017 that a "considerable about of debris" from the Cypress Site 2 failure remained on the seafloor and that Cooke therefore remained in default of its lease. Dkt. 29-2 at 214–18; *see also* Dkt. 25-1 at 113. Cooke had previously represented to DNR that all materials had been removed. Dkt. 29-2 at 220–21.

Ecology issued an administrative penalty for the Cypress Site 2 collapse on January 30, 2018. Fourth Knutsen Decl. 160–66. Ecology can issue penalties of up to $10,000 per day per violation. Wash. Rev. Code § 90.48.144. Ecology does not provide public notice or opportunities for public comment on its penalties. *See* Wash. Rev. Code 43.21B.300. Ecology found that Cooke violated the Permit's prohibition on negligent releases of farmed fish. Fourth Knutsen Decl. 163. Ecology also found that Cooke violated the Permit at Cypress Site 2 by not inspecting anchoring components deeper than 100 feet and by not adequately cleaning nets. *Id.* at 163–64. Ecology issued the penalty for $332,000. *Id.* at 162. Cooke is pursuing an administrative appeal

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

of that penalty. *See id.* at 168–75; *see also* Wash. Rev. Code §§ 43.21B.010, 43.21B.110. Cooke contends, *inter alia*, that the fish release constitutes only a single violation, which would limit Ecology's penalty authority to $10,000. *See* Fourth Knutsen Decl. ¶71.

DNR terminated Cooke's lease for the three net pen facilities at Cypress Island on February 2, 2018. Dkt. 29-2 at 228–29. DNR indicated that the termination was due to Cooke's failure to adequately maintain both Cypress Sites 1 and 2. *Id.*

Cooke filed a complaint challenging DNR's termination of the lease for the Cypress Island farms on March 1, 2018. Fourth Knutsen Decl. ¶¶11–69. The complaint alleges, *inter alia*, that "Cooke is entitled to rebuild Site 2 and is entitled to continue to operate Site 1, Site 2, and Site 3 for the full term of the Lease"—until December 31, 2023—and that DNR's termination "is invalid, null, and void." *Id.* at 26–28, 39. To the best of the Conservancy's knowledge, those proceedings are ongoing.

Governor Inslee of Washington signed legislation on March 22, 2018 that prohibits DNR from entering into new or renewed lease of aquatic lands for nonnative finfish aquaculture projects. *See* Wash. Rev. Code § 79.105.170; *see* H.B. 2957, 65th Leg., Reg. Sess. (Wash. 2018) (Certification of Enrollment)[2]. The legislation does not affect existing leases for nonnative finfish—i.e., Atlantic salmon—farms, nor does it prohibit leases for projects rearing native species. *See* Wash. Rev. Code § 79.105.170.

Cooke submitted two updated plans of operation dated January 18, 2019 to the Washington Department of Fish and Wildlife seeking new finfish aquaculture permits. *See* Fourth Knutsen Decl. ¶¶177–85. One plan addresses the continued rearing of Atlantic salmon and the other addresses Cooke's proposal to transition to a native finfish species—rainbow trout/steelhead, *Oncorhynchus mykiss. Id.* at 179–85. Both plans address future operations at, *inter alia*, Cypress Sites 1 and 3. *Id.* at 180, 185.

---

[2] The Certification of Enrollment is available at http://lawfilesext.leg.wa.gov/biennium/2017-18/Pdf/Bills/Session%20Laws/House/2957.SL.pdf#page=1 (last visited Apr. 1, 2019).

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

To date, Cooke claims not to know why the net pens at Cypress Site 2 collapsed. *E.g.*, *id.* at 88–96 (Tr. 190:23–198:21). Cooke has not conducted nor attempted to conduct any casual analysis of the failure, despite initial assurances to regulators that it was committed to determining the "root cause" of the collapse. *Id.* at 88–96, 125 (Tr. 190:23-198:21, Ex. 21 at 3). Instead, Cooke claims that it is attempting to reduce the risk of similar failures by ensuring that certain international aquaculture standards are implemented at its other facilities. *Id.* at 96–97 (Tr. 198:22-199:3).Those efforts, however, have not suggested the need for any changes. *Id.* at 98–99 (Tr. 200:24-201:7). Cooke's Puget Sound net pens have suffered sporadic "catastrophic [escape] events" in the past, including escapes of 107,000 fish in 1996, 369,000 fish in 1997, 115,000 fish in 1999, and 24,550 fish in 2005. *Id.* at 9. Issues persist at Cooke's remaining net pen facilities that increase the risks of future failures similar to the collapse of Cypress Site 2. First Decl. of Tobias Dewhurst, Ph.D. ("Dewhurst Decl.") ¶¶ 7–18.

## IV.   STANDARD OF REVIEW.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A moving party without the ultimate burden of persuasion at trial— usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

"In order to carry its burden of production, the moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

If the moving party meets its initial burden of production, the nonmoving party must produce "enough evidence to create a genuine issue of material fact" to defeat the motion for

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

summary judgment. *Id.* at 1103. The Court may consider material submitted by the nonmoving party that, may itself not be admissible at trial, so long as the contents of the material would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). Factual issues of controversy are to be resolved in favor of the nonmoving party: "if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the [Court] must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

"In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire & Marine*, 210 F.3d at 1102. A genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring the judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

V.    **ARGUMENT.**

A.    **Cooke's Violations Were "Ongoing" when the Conservancy Filed Suit.**

Summary judgment should be denied because Cooke failed to demonstrate that its violations at Cypress Site 2 were not ongoing when the complaint was filed. Those violations were ongoing because Cooke had not completely eradicated the risk of future sporadic violations. Further, several of the violations were continuing when the complaint was filed.

1.    **Cooke did not show that sporadic violations will not recur.**

Cooke has failed to demonstrate that its violations were not "ongoing" because Cooke's Motion does not even address whether the risk of future sporadic violations had been eradicated when the complaint was filed; Cooke instead focused only on whether violations were continuing when the complaint was filed. The Court should deny Cooke's request to find that the violations were not ongoing on this basis alone.

CWA citizen suits may be "commence[d]" against a defendant "alleged to be in

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

violation." 33 U.S.C. § 1365(a). This limits subject matter jurisdiction to violations for which the plaintiff makes a good-faith allegation that the violations are "ongoing" when the complaint is filed; i.e., that the violations are either continuing **or** that intermittent or sporadic violations may recur. *Sierra Club v. Union Oil Co.*, 853 F.2d at 669. The defendant may "challenge the truthfulness of the allegations of ongoing violations" through a summary judgment motion, in which it "must demonstrate that 'the allegations were sham and raised no genuine issue of fact.'" *Id.* (quoting *Gwaltney*, 484 U.S. at 66).

The Conservancy alleged, in good faith, that there was a continuing risk of future sporadic violations when the complaint was filed. *E.g.*, Dkt. 1 ¶ 56 ("Upon information and belief, the violations of the CWA and the NPDES Permits addressed herein are ongoing and/or reasonably likely to recur."). The Conservancy alleged that "Cooke's commercial salmon farms have suffered sporadic and significant fish releases in the past . . . and similar events are reasonably likely to reoccur." *Id.* ¶ 57. The Complaint asserted that "Cooke is likely to negligently release Atlantic salmon from any of its eight net pen facilities in Puget Sound in the future" and that "[t]he Conservancy is unaware of any change in Cooke's Puget Sound net pen operations that will eliminate future negligent releases of Atlantic salmon." *Id.* ¶ 58; *see also id.* ¶ 59 ("Cooke has and will continue to operate and maintain each of its Puget Sound net pen facilities in the same manner as it did with its Cypress Site 2 facility.").

Cooke bears the initial burden of production on its request for summary judgment. *Nissan Fire & Marine*, 210 F.3d at 1102–03. To meet that burden with respect to the Conservancy's allegations of ongoing violations, Cooke was required to produce evidence showing that, when the complaint was filed, its violations were not continuing **and** that the risk of future sporadic violations had been "completely eradicated." *See Sierra Club v. Union Oil*, 853 F.2d at 671; *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 953 (9th Cir. 2002) (violations were ongoing where, "as of the date of the filing of the complaint, . . . there was a . . . reasonable likelihood of recurrent violations"). Cooke made no effort to meet its burden with respect to intermittent and sporadic violations. Instead, Cooke argued without any

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

evidentiary support that "[t]here was no intermittent or sporadic violation, thus the second prong [for ongoing violations] is not even applicable." Dkt. 41 at 19. Because Cooke did not produce any evidence refuting the Conservancy's good-faith allegations in the complaint of intermittent or sporadic violations, the Conservancy is not required to produce any evidence supporting those allegations to defeat summary judgment. *See Nissan Fire & Marine*, 210 F.3d 1102–03.

Cooke identified seven items that it claims support its contention that the violations were not ongoing when the complaint was filed on November 13, 2017. Dkt. 41 at pp. 17–18. Several of those occurred after that date. DNR terminated the lease for the three net pen facilities at Cypress Island on February 2, 2018. Dkt. 29-2 at 228–29. Washington enacted legislation prohibiting new leases for non-native finfish aquaculture projects on March 22, 2018. *See* Wash. Rev. Code § 79.105.170; *see* H.B. 2957, 65th Leg., Reg. Sess. (Wash. 2018) (Certification of Enrollment). Cooke requested termination of the Permit for Cypress Site 2 on December 21, 2018. Dkt. 42 at 13. These events are therefore irrelevant to whether the risk of future violations by Cooke had been "completely eradicated" when the complaint was filed. *See Sierra Club v. Union Oil Co.*, 853 F.2d at 671.

Cooke also points to declarations from two of its employees that declare that Cooke has no intention of rebuilding at Cypress Site 2. Dkt. 41 at 17 (citing Dkts. 42 ¶ 10, 43 ¶ 8). Noticeably absent from those self-serving declarations is the date on which Cooke supposedly made that decision. It was presumably made after Cooke filed its March 1, 2018 complaint challenging DNR's lease termination in which Cooke asserted its right to rebuild and operate Cypress Site 2. Fourth Knutsen Decl. 26–27. The decision not to rebuild thus post-dates the complaint here and is not relevant to whether the violations were "ongoing."[3]

---

[3] Moreover, Cooke's contention that it has decided not to rebuild Cypress Site 2 is suspect. Cooke claims that the decision was made, in part, because DNR terminated the lease for the three Cypress Island farms and because of legislation prohibiting new leases for non-native finfish projects. *See* Dkt. 42 ¶¶ 10–11; Dkt. 43 ¶ 8. However, Cooke is seeking to continue operating at Cypress Sites 1 and 3, despite the lease termination and new legislation, producing both Atlantic salmon and native rainbow trout/steelhead. *See* Fourth Knutsen Decl. 177–85.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 11
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

The three remaining items that Cooke points to in support of its contention that the violations were not "ongoing" are: 1) Cypress Site 2 was destroyed in August 2017; 2) Cypress Site 2 did not exist when the complaint was filed; and 3) Cypress Site 2 has not operated since the complaint was filed. Dkt. 41 at 17. While these statements are generally true,[4] they do not address whether the likelihood of intermittent or sporadic violations had been completely eradicated when the complaint was filed.

While Cooke failed to make any showing on this issue, the evidence available demonstrates that Cooke had not eradicated the likelihood of future sporadic violations. Cooke's net pens are "relatively simple" structures. Dkt. 43 ¶¶ 4–5. The structure at Cypress Site 2 was in poor condition and scheduled to be replaced before it failed. Fourth Knutsen Decl. 75. Cooke asserted its right under the lease to replace the net pens at Cypress Site 2 following the collapse. *Id.* at 149. That lease remained in effect when the Conservancy filed suit on November 13, 2017; DNR terminated the lease on February 2, 2018. Dkt. 29-2 at 228–29. Thus, when the complaint was filed, Cooke fully intended to continue operating at Cypress Site 2. *See* Fourth Knutsen Decl. 26–27 (Cooke continues even now to assert its right to replace the structures at Cypress Site 2). Cooke's salmon farms have suffered from sporadic "catastrophic [escape] events" before 2017 and Cooke has not determined what caused the Cypress Site 2 collapse. *Id.* at 9; *Id.* at 88–96 (Tr. 190:23–198:21). Cooke therefore did not "completely eradicate" the likelihood of intermittent or sporadic violations at Cypress Site 2 before the Conservancy initiated this citizen suit. There are, at a minimum, disputed material facts with respect to this issue that preclude summary judgment. *See Anderson*, 477 U.S. at 249–50.

Additionally, Cooke operates seven other net pen facilities in Puget Sound that rear Atlantic salmon under identical Permit terms. *See* Dkt. 29-2 at 7–62. Several of those salmon farms suffer deficiencies similar to those that may have contributed to the failure of Cypress Site

---

[4] As described in more detail below, the Cypress Site 2 structure was destroyed before the complaint was filed, but significant debris from the facility remained on the sea floor after the complaint filing date.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 12
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

2. Dewhurst Decl. ¶¶ 7–18. The complaint thus alleges that Cooke is likely to negligently release Atlantic salmon from all eight of its net pens and to operate all of those net pens in a manner similar to what led to the failure of Cypress Site 2. *See* Dkt. 1 ¶¶ 58–59. The Conservancy is not aware of any decision applying the "ongoing violation" analysis to similar facts; i.e., a single defendant, several different facilities conducting identical operations, and separate NPDES permits imposing identical conditions. However, because of the marked similarities between Cooke's Puget Sound net pens and how it operates the pens, the Court should look to the continuing likelihood of Cooke's violation of the Permits at all of its Puget Sound salmon farms.

Cooke has not demonstrated that there are no genuine issues of material fact in dispute with respect to whether the violations at Cypress Site 2 were ongoing when the complaint was filed. To the contrary, all of the available evidence demonstrates that the violations were "ongoing" because the risk of Cooke's continued violation had not been completely eradicated when the Conservancy filed suit. *See Sierra Club v. Union Oil Co.*, 853 F.2d at 671.

**2.**  **Violations of Conditions S2, S6, and S7 of the Permit and of section 301(a) of the CWA were continuing when the complaint was filed.**

This Court has jurisdiction where violations continue on or after the date the complaint was filed **or** where there was a continuing likelihood of a recurrence in intermittent or sporadic violations. *See, e.g.*, *Sw. Marine*, 236 F.3d at 998. As discussed above, Cooke's Motion should be denied because it failed to show that there was no continuing likelihood of sporadic violations when the complaint was filed. Cooke's request for summary judgment should also be denied because its violations at Cypress Site 2 of Conditions S2, S6 and S7 of the Permits and its violations of section 301(a) of the CWA continued after the complaint was filed.

**a.**  **Cooke's violations of Permit Conditions S2, S6, and S7 were continuing when the complaint was filed.**

The Conservancy's complaint alleges that Cooke is violating Conditions S6 and S7 of the Permits by failing to prepare adequate Pollution Prevention Plans and Release Prevention Plans at all eight of the Puget Sound salmon farms. Dkt. 1 ¶¶ 45–52. The Conservancy's first motion for partial summary judgment establishes that Cooke's plans in effect when the complaint was

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 13
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

filed for all of its commercial salmon farms, including Cypress Site 2, violate the Permits. *See generally* Dkt. 29. The complaint also alleges that Cooke is violating site closure requirements of Condition S2, including the requirement to submit a sediment sampling and analysis plan before moving or closing a net pen facility. Dkt. 1 ¶¶ 53–55. Cooke has not provided any evidence supporting its request for summary judgment that suggests those violations were not continuing when the complaint was filed. *See Nissan Fire & Marine*, 210 F.3d at 1102–03.

The Permit for Cypress Site 2 was in effect when the complaint was filed and remains in effect today. *See* Dkt. 42 at 14. The Permits do not exempt Cooke from compliance in the event of a catastrophic failure, nor do they cease to have legal effect. *See, e.g.*, Fourth Knutsen Decl. 145 (directing Cooke to implement Release Prevention Plan following Cypress Site 2 failure); *see also* Dkt. 1 ¶¶ 53–55 (describing the Permit's closure requirements). Accordingly, Cooke's violations of Conditions S2, S6, and S7 of the Permit for Cypress Site 2 are "ongoing" because they were continuing when the complaint was filed. *See, e.g.*, *Sw. Marine*, 236 F.3d at 999 (failure to implement plans after the complaint was filed was an ongoing violation).

Cooke has failed to establish that its violations of Conditions S2, S6, and S7 of the Permits were not continuing when the complaint was filed. Cooke's request for summary judgment on these violations should therefore be denied.

### b. Cooke's violation of section 301(a) of the CWA was continuing when the complaint was filed.

The complaint also alleges Cooke is violating section 301(a) of the CWA by discharging debris such as walkways, equipment, and nets at Cypress Site 2 that is not authorized by any of its Permits. Dkt. 1 ¶ 38. A defendant with an NPDES permit is generally shielded from liability under the CWA's prohibition on unpermitted discharges for pollutants that are expressly authorized by the permit and those "pollutants that were disclosed to and within the reasonable contemplation of the permitting authority during the permitting process." *See Alaska Cmty. Action on Toxics v. Aurora Energy Servs., LLC*, 765 F.3d 1169, 1173 (9th Cir. 2014). Cooke's Permits do not authorize or contemplate the complete collapse of a salmon farm and the

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 14
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

scattering of massive amounts of debris along the seafloor. *See* Dkt. 29-2 at 8; *see also* Fourth Knutsen Decl. 8, 189–92 (Ecology interprets the discharges authorized by Cooke's Permits narrowly; the Permits do not authorize discharges pressure washing water).

Cooke's Motion does not contest that the discharge of debris associated with the collapse of Cypress Site 2 violates section 301(a) of the CWA. *See, e.g.*, 33 U.S.C. § 1362(6) ("pollutant" includes "wrecked or discarded equipment"); *see also United States v. W. Indies Transp.*, 127 F.3d 299, 309 (3rd Cir. 1997) (amputation of rebar from a concrete barge, causing it to be deposited in waters of the United States, qualified as a discharge of a pollutant from a point source for purposes of the CWA). Instead, Cooke's Motion vaguely contends that all violations at Cypress Site 2 were not ongoing when the complaint was filed. *See* Dkt. 41 at 17–19.

However, Cooke admits that debris from the Cypress Site 2 failure remained scatted in Puget Sound when the complaint was filed on November 13, 2017. Dkt. 25-1 at 113. In fact, DNR notified Cooke on November 17, 2017 that a "considerable amount of debris" from the Cypress Site 2 failure remained on the seafloor despite Cooke's prior representations to the contrary. Dkt. 29-2 at 214, 220–21. Cooke's contractors commenced debris removal efforts in December 2017—efforts that identified an enormous amount of wrecked material. *See id.* at 211–12. Cooke's violations of section 301(a) of the CWA for unpermitted discharges were therefore ongoing when the complaint was filed. *See June v. Town of Westfield, N.Y.*, 370 F.3d 255, 258 n.4 (2nd Cir. 2004) ("Most courts that have addressed the question have concluded on the facts before them that the continuing presence of a pollutant constitutes a continuing discharge of the pollutant into adjacent water under the CWA."); *see also Atl. States Legal Found., Inc. v. Hamelin*, 182 F. Supp. 2d 235, 248 n.20 (N.D.N.Y. 2001) (listing cases).[5]

Cooke has failed to establish that its violation of section 301(a) of the CWA was not

---

[5] These cases address unpermitted discharges of fill materials, which are permitted under CWA section 404. However, those discharges are subject to the same provision of the CWA at issue here—the prohibition on unpermitted discharges contained in CWA section 301(a). Thus, the analyses in these cases applies equally here; namely, that where a violator can remove the unlawfully discharged material, that violation remains ongoing until it does so.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 15
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

continuing when the complaint was filed. Cooke's request for summary judgment on that violation should therefore be denied.

**B.**    **The Claims are not Moot because the Court can Provide Effective Relief.**

Cooke cannot meet its heavy burden in demonstrating that claims related to its violations at Cypress Site 2 are moot. Claims become moot only where the Court can no longer grant any effective relief. The Court retains the ability to provide effective relief. Notably, civil penalties for Cooke's violations at Cypress Site 2 provide an effective deterrent against future violations.

**1.**    **Mootness Standards.**

A case becomes moot where the Court can longer provide any effective relief for the claims. *See Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) ("[A] case is not moot where *any* effective relief may be granted."); *see also Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000) ("An action becomes moot if the controversy is no longer live because an event occurs that precludes the court from ordering effective relief . . . .").

The Supreme Court addressed mootness in a CWA citizen suit in *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.* 528 U.S. 167, 179–80 (2000). The district court assessed penalties but found that injunctive relief was not warranted because, following initiation of the litigation, the defendant achieved substantial permit compliance. *Id.* at 178. The defendant argued that the case became moot after the facility "was permanently closed, dismantled, and put up for sale, and all discharges from the facility permanently ceased." *Id.* at 179.

The Court noted that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practices." *Id.* at 189 (quotations and citation omitted). Rather, a defendant faces a "stringent" standard when asserting that its voluntary conduct has rendered a case moot; it must demonstrate that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citation omitted). "The 'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness."

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 16
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

*Id.* (citation omitted).

The Court explained that civil penalties can continue to provide effective relief where injunctive relief has become moot and is thus unwarranted. *See id.* at 192–93. This is because civil penalties not only provide redressability by promoting immediate compliance by the defendant, but they also deter against possible future violations. *See id.* at 185–88, 192–93; *see also Tull v. United States*, 481 U.S. 412, 422 (1987) ("The legislative history of the [CWA] reveals that Congress wanted the district court to consider the need for retribution and deterrence, in addition to restitution, when it imposed civil penalties."). The Court remanded to the district court to determine whether it was absolutely clear that the violations could not reasonably be expected to recur such that penalties would not provide effective relief through deterrence. *Laidlaw*, 528 U.S. at 193–94.

Following *Laidlaw*, the Ninth Circuit has reiterated the extent to which civil penalties continue to provide effective relief such that CWA citizen suits do not become moot. In *Ecological Rights Foundation*, the defendant argued that the case became moot when the NPDES permit it had violated was replaced by a new permit. 230 F.3d at 1153. The court noted that "liability for civil penalties under the [CWA] attaches at the time the violations occur" and that the defendant remained subject to section 301(a) of the CWA, which prohibits discharges except as in compliance with an NPDES permit. *Id.* The court thus found, citing *Laidlaw*, that penalties will continue to serve their purpose of deterring future violations despite the fact that the permit the defendant had violated was no longer in effect. *Id.*

In another case, the defendant argued a citizen suit was moot because it had sold and was no longer operating the facility. *S.F. Baykeeper*, 309 F.3d at 1156–57. Relying on *Laidlaw*, the court described the importance of civil penalties in deterring CWA violations. *Id.* at 1159–60. The court held that penalties will continue to provide relief because they will demonstrate to the new owner and any other future owners that violations will be costly. *Id.* at 1160. "Allowing polluters to escape liability for civil penalties for their past violations by selling their polluting assets would undermine the enforcement mechanisms established by the [CWA]." *Id.*

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 17
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

These cases demonstrate that courts do not take a myopic view with respect to the deterrent effect provided by CWA penalties. Rather, courts look broadly to determine whether the imposition of civil penalties will provide some form of effective relief through deterrence.

### 2. Cooke bears the burden of proving mootness.

The Court should reject Cooke's effort to shift the burden on mootness to the Conservancy based on Cooke's contention that the cessation of violations was involuntary. The burden of establishing mootness rests with Cooke, regardless of whether the supposed cessation of violations was voluntary or involuntary. Further, even if the Court were to adopt the legal standard urged by Cooke, the burden rests with Cooke because its conduct was voluntary.

Cooke urges the Court to adopt out-of-circuit precedent distinguishing between voluntary and involuntary cessation of illegal conduct and holding that, for the latter, the burden to avoid mootness is on the plaintiff to "prove[] that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding [the agency action]." Dkt. 41 at 13–14 (second alteration in original) (quoting Fifth Circuit case and citing cases from the Eighth, Second, and Sixth Circuits). Cooke argues that its violations have ceased because of legislative and regulatory actions, and not voluntary conduct, and that the defendant's mootness burden articulated in *Laidlaw* therefore does not apply. *See id.* at 13. However, the Ninth Circuit case law cited by Cooke does not support its effort to shift the mootness burden to the Conservancy .

In *Center for Biological Diversity v. Lohn*, cited by Cooke, the court found that the defendant's compliance was not voluntary, but rather was in response to a court order. 511 F.3d 960, 965 (9th Cir. 2007). However, the Ninth Circuit explicitly stated that the defendant "carries the burden of establishing mootness." *Id.* at 963. Courts in the Ninth Circuit thus do not shift the mootness burden to a plaintiff where a defendant claims the cessation of the violations was involuntary. *See, e.g.*, *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 430 F. Supp. 2d 996, 1003 (N.D. Cal. 2006) ("[E]ven in cases where an agency's regulatory action may have mooted a suit, the Ninth Circuit applies the standard that the party asserting mootness bears the heavy burden of persuading the court that the case is moot.").

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 18
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

Even if the Court were to adopt the out-of-circuit standard urged by Cooke, that standard would not apply here because Cooke's supposed cessation of illegal conduct is voluntary. Cooke points to four actions that it asserts moot the claims: (1) the physical destruction of the facility; (2) the permanent termination of the facility's lease; (3) the State of Washington's statutory prohibition on Cooke rebuilding the facility; and (4) Cooke's request that Ecology terminate the facility's NPDES Permit. Dkt. 41 at 20. According to Cooke, these actions amount to the involuntary cessation of the CWA violations at Cypress Site 2. Cooke's contention is misplaced.

With regard to the first action that Cooke asserts moots the claims pursuing violations at Cypress Site 2, it is not disputed that the Cypress Site 2 net pens do not exist today. But Cooke fails to articulate why the "physical destruction of the facility" is relevant to Cooke's decision to not replace Cypress Site 2 after the collapse. Cooke was planning to completely replace the structure prior to the collapse anyway. Fourth Knutsen Decl. 12–13, 75.

With respect to the second and third actions that Cooke contends moot the Cypress Site 2 claims, it is misleading for Cooke to claim that its lease has been permanently terminated and that it is legally prohibited from ever rebuilding the Cypress Site 2 facility. Cooke's contentions are based largely on legislation that became effective in June 2018. *See* Dkt. 41 at 17. As noted, that legislation prohibits new and renewed leases for nonnative finfish aquaculture projects. *See* Wash. Rev. Cod. § 79.105.170. DNR can authorize new aquaculture leases for *native* finfish aquaculture projects. It is thus disingenuous to suggest that the legislation prohibits the State from ever leasing this land to Cooke again for finfish aquaculture and "statutorily bar[s]" it "from ever rebuilding the Site 2 facility." Dkt. 41 at 7.[6] Because Cooke is not legally prohibited from operating at Cypress Site 2, its supposed decision to not replace the facility is voluntary.

Notably, Cooke recently submitted applications to the Washington Department of Fish

---

[6] The Conservancy's claims are not dependent on whether Cooke is raising native or nonnative finfish in its net pens. *See* Dkt. 1. If Cooke began raising native finfish at Cypress Site 2, the Conservancy's claims would not be moot. *See* Voluntary Cessation By Private Defendants, 13C Fed. Prac. & Proc. Juris. § 3533.5 & n.4 (3d ed.) (explaining that mootness is readily denied if the defendant has simply continued the challenged activity "in a new form," and collecting cases).

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 19
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

and Wildlife to raise Atlantic salmon and native fish in its remaining net pens, including Cypress

Sites 1 and 3, despite the lease termination and new legislation. *See* Fourth Knutsen Decl. 177–

85. Cooke explains therein that it "will continue to grow the current cohort of Atlantic salmon at

some of the marine sites, while beginning to transition to the production of native finfish at the

marine net pens over the next several years." *Id.* at 182. Cooke also claims that it has been

approached about growing Chinook salmon, although it claims to have no current plans to do so.

*Id.* at 86–87 (Tr. 151:21–152:4).

Furthermore, Cooke fails to mention that it is challenging DNR's termination of the lease

for the Cypress Island sites. *See id.* at 11–69. Cooke is specifically seeking "a declaratory

judgment that the Lease remains in full force and effect, . . . that DNR is not entitled to withhold

its consent to Cooke's reconstruction of Site 2, . . . and that Cooke is entitled to restock Site 2 as

soon as it has been rebuilt." *Id.* at 28. Cooke thus seeks to continue operating Atlantic salmon

farms under that lease, which does not expire until the end of 2023. *See id.* at 39.

The fourth and final action that Cooke points to in support of its involuntary cessation

argument is the fact that it recently requested that Ecology terminate its Permit for Cypress Site

2. Dkt. 41 at 6. Cooke argues that this otherwise voluntary action was, in fact, involuntary

because it was "forced upon Cooke by the three preceding involuntary actions." Dkt. 41 at 21.

However, as discussed above, the three preceding actions were not involuntary. Therefore, this

action likewise was not involuntary.[7]

In sum, Cooke bears the burden of proving mootness even if the supposed cessation of

illegal conduct was involuntary. *See Lohn*, 511 F.3d at 963–65; *Envtl. Prot. Info. Ctr.*, 430 F.

Supp. 2d at 1003. Even if the Court were to adopt the involuntary cessation of illegal conduct

standard from other circuits, that standard would not apply here because Cooke's actions were

---

[7] The 2018 legislation prohibits the issuance of NPDES permits for nonnative finfish aquaculture projects
that did not have active leases at the time the legislation was passed. *See* Wash. Rev. Code § 90.48.225.
Unless Cooke succeeds in its challenge to the lease termination, Cooke cannot receive an NPDES permit
for nonnative marine finfish aquaculture at the Cypress Island sites—because that lease was terminated
prior to the date the legislation passed—but Ecology may issue permits for native finfish aquaculture.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 20
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

voluntary.[8] At the very least, Cooke has not met its summary judgment burden in demonstrating that there are no disputed material facts with respect to whether the supposed decision to not replace Cypress Site 2 was involuntary. *See Nissan Fire & Marine*, 210 F.3d at 1102–03.

### 3. The Conservancy's request for civil penalties is not moot.

The Conservancy's request for civil penalties for Cooke's violations at Cypress Site 2 is not moot. Such penalties are needed to deter Cooke from negligently operating aquaculture projects at Cypress Island and throughout Puget Sound. That constitutes effective relief regardless of which party bears the burden on mootness. Cooke's summary judgment motion should therefore be denied.

As described above, the Ninth Circuit looks broadly to determine whether the imposition of civil penalties will provide some form of effective relief through deterrence, even finding that penalizing a former owner of a noncompliant facility provides effective relief by deterring potential violations by the new owner. *S.F. Baykeeper*, 309 F.3d at 1159–60 ("Allowing polluters to escape liability for civil penalties for their past violations by selling their polluting assets would undermine the enforcement mechanisms established by the [CWA]."). Similarly, the issuance of civil penalties against Cooke for its violations at Cypress Site 2 plainly provides the Conservancy with effective relief by deterring Cooke from committing similar violations at its seven other Atlantic salmons farms in Puget Sound. Notably:

1) the commercial Atlantic salmon farms are all owned by the same company: Cooke;

2) the commercial salmon farms are all located in the same geographical location, Puget Sound;

3) Cooke conducts the same operations at each of the facilities: farming Atlantic salmon;

4) The commercial salmon farms are all subject to Permits that impose identical

---

[8] Despite laying out the four actions that Cooke believes moot the Conservancy's claim for civil penalties, *see* Dkt. 41 at 20, Cooke later refers to a fifth action, an enforcement action by Ecology, that supposedly contributed to "involuntarily forc[ing] a facility shutdown." Dkt. 41 at 22. However, Ecology's administrative penalty, which Cooke is challenging, did not shut the facility down.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 21
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

requirements Dkt. 29-2 at 7–62;

5) The same Cooke employee is responsible for compliance with the Permits at all of the commercial salmon farms, s*ee* Dkt. 42 ¶¶ 1–2, and other employees work at more than one of the facilities or have managerial roles that involve oversight over all of the facilities. *See, e.g.*, Fourth Knutsen Decl. 85, 130–31 (Tr. 76:11–18; 240:11–241:8); and

6) Cooke uses the same plans for compliance with the Permits at all of its facilities, *see* Dkt. 29-2 at 106–07.

Cooke did not provide any evidence or explanation suggesting that civil penalties for its violations at Cypress Site 2 would not provide effective relief by deterring similar violations at Cooke's seven other facilities. Cooke therefore did not meet its summary judgment burden, regardless of who bears the ultimate burden on mootness at trial. *See Nissan Fire & Marine*, 210 F.3d at 1102–03.

Moreover, the evidence available demonstrates that civil penalties for Cooke's disastrous violations at Cypress Site 2 are needed to deter similar violations by Cooke at its other salmon farms. Issues that were present at Cypress Site 2 and may have contributed to the collapse are also present at the net pens still in operation. Dewhurst Decl. ¶¶ 7–18; *see also* Fourth Knutsen Decl. 131–33 (Tr. 241:25–243:5) (Cooke acknowledges it is possible for a collapse to occur again). Cooke concedes that it has no idea what caused the collapse, and has not performed a causal analysis or investigation to determine what went wrong. *See* Fourth Knutsen Decl. 88–96 (Tr. 190:23–198:21). Cooke also admits that it has made few changes to its operations in response to the collapse, beyond improved record-keeping. *Id.* at 99 (Tr. 201:8–23). Taken together, this evidence demonstrates an alarming abdication of responsibility and lack of concern about preventing another collapse. *See* Dewhurst Decl. at ¶¶ 16–18. Thus, issuance of civil penalties against Cooke for its violations at Cypress Site 2 would provide effective relief by deterring Cooke from committing similar violations at its seven other Puget Sound salmon farms.

Civil penalties also provide effective relief by deterring future violations at Cypress Site 2 itself, as Cooke has not demonstrated that it is "absolutely clear" that violations at that site

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 22
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

"could not reasonably be expected to recur." *See Laidlaw*, 528 U.S. at 189. Cooke emphasizes that DNR terminated the lease for Cypress Site 2 and that Washington has prohibited new leases for nonnative finfish aquaculture projects. Dkt. 41 at 10. Cooke neglects to inform the Court that DNR terminated the lease for all three of the sites at Cypress Island, that Cooke is challenging that termination and asserting its right to rebuild Cypress Site 2, and that Cooke is currently seeking authorization to operate both Atlantic salmon and native finfish aquaculture projects at Cypress Sites 1 and 3 despite the lease termination and legislation. Fourth Knutsen Decl. 11–69, 177–85. Cooke's violations at Cypress Site 2 thus could recur, despite the representations in Cooke's self-serving employee declarations. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (concluding that case was not moot because legal prohibition on allegedly illegal activity was not permanent); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) ("a statement, standing alone, cannot suffice to satisfy the heavy burden of persuasion" on mootness). At a minimum, there are disputed facts with respect to whether violations at Cypress Site 2 could recur such that summary judgment should be denied.

Further, the Permit for Cypress Site 2 remains effective and the Conservancy alleges violations of the site closure requirements. *See* Dkt. 42 at 14; Dkt. 1 ¶¶ 53–55. Cooke fails to explain how such violations could possibly be moot. *See Laidlaw*, 528 U.S. at 193–94 (suggesting that continued effectiveness of NPDES permit weighed against mootness).

As both the Supreme Court and the Ninth Circuit have emphasized, civil penalties play an important role in deterring future CWA violations and thereby can continue to provide effective relief where other forms of relief may have become moot. *Id.* at 192–93; *S.F. Baykeeper*, 309 F.3d at 1160. Issuance of civil penalties against Cooke for its egregious violations at Cypress Site 2 will provide effective relief by deterring Cooke from committing similar violations at its aquaculture facilities throughout Puget Sound, include at Cypress Island.

**4.      The Conservancy's requests for injunctive and declaratory relief are likewise not moot.**

The Conservancy's claims for injunctive and declaratory relief are likewise not moot. As

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 23
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

discussed above, it is not "absolutely clear" that the Cypress Site 2 violations cannot reasonably

be expected to recur, either at a re-built Cypress Site 2 facility or at Cooke's remaining facilities.

Cooke has therefore failed to meet its burden on summary judgment in demonstrating that the

Cypress Site 2 violations will not recur.

Effective injunctive relief remains available. For example, the Conservancy alleges that

Cooke has not complied with the site closure requirements and Cooke contends that those

requirements are why Ecology has yet to terminate the Permit for Cypress Site 2. *See* Dkt. 42 ¶

12. An injunction could ensure compliance with those Permit requirements. Also, the

Conservancy's pending motion for partial summary judgment demonstrated that Cooke's

Pollution Prevention Plan and Release Prevention Plan for all of its facilities, including Cypress

Site 2, are legally inadequate. An injunction requiring Cooke to bring those plans into

compliance with the Permits—including its currently active Permit for Cypress Site 2—would

provide effective relief to the Conservancy.

Similarly, "if a declaratory judgment would . . . provide effective relief the action is not

moot." *Forest Guardians*, 450 F.3d at 462. Declaratory relief on the violations at Cypress Site 2

would provide effective relief by helping to ensure that similar violations to not occur at Cooke's

existing and future Puget Sound aquaculture projects, including those at Cypress Island. *See id.*

## VI.   CONCLUSION.

Contrary to Cooke's representations, the Conservancy did not bring this case to "recover

damages, attorneys fees, and to inflict greater financial hardship onto [Cooke] despite [Cooke]

posing no future risk of violation." Dkt. 41 at 21. Cooke's violations have caused significant

environmental harm and Cooke continues to operate facilities throughout Puget Sound in a

negligent manner that poses significant risks of future harm. The Conservancy seeks relief that

will reduce those risks. Any "benefit from the lawsuit, whether injunctive or monetary, inures to

the public or to the United States," not to the Conservancy. *Sierra Club v. Chevron U.S.A. Inc.*,

834 F.2d at 1522 (citation omitted); *S.F. Baykeeper*, 309 F.3d at 1156 (penalties are paid to "U.S.

Treasury"). The Conservancy respectfully requests that the Court deny Cooke's Motion.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 24
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825

RESPECTFULLY SUBMITTED this 1st day of April, 2019.

KAMPMEIER & KNUTSEN, PLLC


By:  s/ Brian A. Knutsen
    Brian Knutsen, WSBA No. 38806
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
Tel, Email: (503) 841-6515, brian@kampmeierknutsen.com

Paul A. Kampmeier, WSBA No. 31560
615 Second Ave., Suite 360
Seattle Washington 98104
Tel, Email: (206) 223-4088 x 4, paul@kampmeierknutsen.com

EARTHRISE LAW CENTER

By:  s/ Lia Comerford
    Kevin Cassidy (OSB #025296), *admitted pro hac vice*
    Lia Comerford (OSB # 141513), *admitted pro hac vice*
Lewis & Clark Law School
10015 S.W. Terwilliger Blvd.
Portland, Oregon 97219
Tel, Email: (781) 659-1696, cassidy@lclark.edu
        (503) 768-6823, comerford1@lclark.edu

*Attorneys for Plaintiff Wild Fish Conservancy*

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 25
Case No. 2:17-cv-01708-JCC

KAMPMEIER & KNUTSEN PLLC
221 S.E. 11th Ave., Suite 217
Portland, Oregon 97214
(503) 841-6515

EARTHRISE LAW CENTER
10015 SW Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6825