HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILD FISH CONSERVANCY,

        Plaintiff,

      v.

COOKE AQUACULTURE PACIFIC, LLC,

        Defendant.

Case No. 2:17-cv-01708-JCC

COOKE'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
April 5, 2019

///

///

///

///

///

///

///

///

///

///

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1    Defendant Cooke Aquaculture Pacific ("Cooke") submits this reply in support of its

2    Motion for Partial Summary Judgment on WFC's claims related to Cypress Site 2. Site 2 does not

3    exist, cannot legally be re-constructed, and will never again exist. Thus, all of the alleged violations

4    of the Clean Water Act ("CWA") are wholly past, and WFC cannot meet its burden of proving

5    that ongoing violations related to Site 2 *actually* have occurred. Similarly, WFC's claims related

6    to Site 2 are moot. Thus, summary judgment in Cooke's favor is proper.

7        WFC's response contains numerous legal and factual mistakes that start with its application

8    of the wrong standard. WFC's argument related to the issue of ongoing releases rests on the

9    CWA's *motion to dismiss for lack of jurisdiction* standard and not the *motion for summary*

10   *judgment* standard. The motion to dismiss standard is a threshold standard that allows a plaintiff

11   to allege in good faith that sporadic violations are ongoing so as to survive an initial motion to

12   dismiss on the issue of whether ongoing releases are occurring, but that threshold pleading standard

13   does not alter or eliminate a plaintiff's burden to prove *actual* post-complaint violations on

14   summary judgment. *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 998 (9th Cir. 2000).

15   To survive summary judgment, WFC must produce evidence showing that "ongoing violations

16   *actually* have occurred." *Id.* (emphasis added). WFC wholly fails to address the distinction

17   between the two standards and responds instead as if Cooke filed a motion to dismiss under Rule

18   12(b). It did not. Cooke moved for summary judgment under Rule 56 and submitted evidence

19   showing that violations have not and will not occur because 1) the facility does not exist, 2) the

20   facility cannot legally be re-constructed, and 3) the facility will never again exist. In opposition,

21   WFC presented no evidence of post-complaint violations. Thus, there is no genuine issue of

22   material fact that all violations are wholly past and summary judgment in Cooke's favor is proper.

23       For the same reason that WFC cannot meet its burden of proof that ongoing releases are

24   actually occurring—because there is no Site 2 and will never again be a Site 2—WFC's claims

25   related to Site 2 are also moot. Thus, the Court lacks jurisdiction over them. WFC argues that the

26   relevant mooting actions—the destruction of Site 2 and Cooke's inability to ever rebuild or operate

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 1

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1  it—were voluntarily taken by Cooke so as to fall within the voluntary cessation exception to

2  mootness. The absurdity of this factual argument demonstrates the weakness of WFC's claims.

3  Cooke did not voluntarily destroy its facility. Cooke did not voluntarily terminate its lease. Cooke

4  did not voluntarily enact a legislative ban on its operations. Cooke spent significant resources to

5  fight for its survival as an Atlantic salmon farming company. Those efforts failed; the resulting

6  political and administrative punishments now render WFC's claims moot.

7  <center>**REPLY ARGUMENTS**</center>

8  Cooke moved for summary judgment on two separate grounds related to Site 2. First, that

9  ongoing violations were not occurring when the complaint was filed, and that no violations have

10  occurred or will occur after the complaint was filed. Second, that WFC's claims are moot.

11  **I.   WFC Must Prove Actual Ongoing Violations at Trial, WFC Presented no Evidence
       that Such Violations have Occurred, and Cooke Presented Substantial Evidence that**
12  **Violations have not Occurred.**

13  **A.   WFC asks this Court to Apply the Wrong Clean Water Act Standard and the Wrong
             Summary Judgment Standard.**
14

15  WFC incorrectly applies the standard applicable to a motion to dismiss for lack of

16  jurisdiction in response to Cooke's motion for summary judgment. Cooke asserts that WFC will

17  not be able to prove actual ongoing violations at trial. There are two questions related to ongoing

18  violations applicable to CWA citizen suits. The first is whether the Court has jurisdiction to hear

19  a citizen's claim. *Sw. Marine,* 236 F.3d at 998. For jurisdiction to attach, the complaint must only

20  make a good faith allegation that the plaintiff believes ongoing violations will occur. *Id.* WFC

21  vigorously defends its good faith allegations. Opp. at 11-13. This misses the point. Cooke's motion

22  does not assert that WFC's lacked a good-faith allegation. Instead, Cooke brought its motion based

23  on the second question related to ongoing releases—the standard that will apply at trial and which

24  WFC must address to avoid summary judgment. 236 F.3d at 998. Under this more exacting

25  standard, to "prevail at trial, a citizen-plaintiff must prove that ongoing violations actually have

26  occurred." *Id*. The only question relevant to the issue of ongoing violations in this motion is

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 2

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

whether WFC presented any evidence from which a reasonable juror could conclude that ongoing releases have actually occurred on or after the filing of the complaint. WFC has not produced any such evidence. Cooke submitted evidence to support the following uncontested facts:

1.) Site 2 was destroyed in August 2017 and has never been rebuilt. Bright ¶¶ 5, 10; Parsons ¶¶ 6, 8.

2.) The Washington Department of Natural Resources ("DNR") terminated the relevant lease on February 2, 2018. That lease has never been reinstated. Bright ¶¶ 9-11; Parsons ¶ 8.

3.) The Washington Legislature prohibited DNR from ever again issuing or reissuing any leases for Atlantic salmon farms. *See* HB 2957 (Steding Ex. 4).

4.) It is legally impossible for Site 2 to be re-permitted, re-built, or ever again operated. Bright ¶¶ 10-12; Parsons ¶¶ 8-9.

5.) Cooke has requested termination of the Site 2 NPDES permit, and that permit will be terminated when Ecology approves Cooke's sediment monitoring closure reports. Bright ¶ 12; Parsons ¶ 9.

WFC has produced no evidence showing:

1.) Any operations, releases, or violations have occurred on or after the Complaint was filed (November 13, 2017).

2.) Any legal possibility that Site 2 could ever be re-permitted, re-built, or ever again operated.

WFC argues that Cooke may actually intend to operate Site 2 again. WFC is simply wrong. Cooke's general manager and its permit coordinator submitted testimony that Cooke has no intention of ever rebuilding or operating Site 2. Parsons ¶ 8; Bright ¶¶ 10-12. WFC rests its argument on erroneous assertions about Cooke's claims against DNR in a lease termination lawsuit. Not only was the lease termination suit brought before the legislative ban on Cooke's business, WFC fails to accurately describe Cooke's position or the Court's conclusions in that case.[1] Cooke acknowledges in that litigation, as it has here, that it does not intend to rebuild Site 2: "[N]obody's asking to replace site two. Site two was catastrophically destroyed on August 19th. Again, we're not here asking about site two. That's not the request before the court or to DNR."

---

[1] The relevant lease covers all three Cypress sites, not just Site 2. Second Steding ¶ 2.

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 3

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1    Second Steding Ex. 5. Furthermore, that court concluded that Cooke has a monetary remedy (not
2    lease reinstatement) if DNR wrongfully terminated the lease. *Id.*

3          WFC can only satisfy its evidentiary burden of proving "ongoing violations" if it either (1)
4    proves "violations that continue on or after the date the complaint is filed," or (2) "by adducing
5    evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence
6    in intermittent or sporadic violations." *Sw. Marine*, 236 F.3d at 998 (quotations omitted).  Not only
7    does WFC improperly merge the jurisdiction standard into the trial standard, but it compounds this
8    mistake by selectively quoting *Nissan Fire* to create an incorrect procedural summary judgment
9    standard. WFC cites *Nissan Fire* for the proposition that Cooke must produce evidence to succeed
10   on summary judgment; *Nissan Fire* actually holds otherwise: "the moving party must either
11   produce evidence negating an essential element of the nonmoving party's claim or defense <u>or show
12   that the nonmoving party does not have enough evidence of an essential element to carry its
13   ultimate burden of persuasion at trial</u>." *Nissan Fire*, 210 F.3d 1102 (emphasis added). WFC
14   inexplicably omits the underlined portion of the *Nissan Fire* holding, and from this incomplete
15   quotation, incorrectly asserts that "the Conservancy is not required to produce any evidence
16   supporting" its allegations. *See* Opp. at 12-13. Despite WFC's claim that *Nissan Fire* absolves it
17   of having to produce evidence, the case actually holds otherwise.

18         Cooke presented evidence that 1) no violations have occurred since the complaint was
19   filed, and 2) there is no continuing likelihood of a recurrence of intermittent or sporadic violations.
20   Site 2 has not existed since the complaint was filed, and <u>all</u> WFC's claimed violations have been
21   made impossible by the destruction of Site 2. It is impossible to improperly dispose of a fish at
22   Site 2 when there is no Site 2 or Site 2 fish. Site 2 cannot operate in violation of a permit because
23   there is no Site 2 and no Site 2 operations. WFC presents <u>no</u> evidence to the contrary, indeed WFC
24   has publicly admitted this fact. Second Steding Ex. 6 (WFC press release stating that the passage
25   of HB2957 "will effectively ban the practice of open-water Atlantic salmon aquaculture"). The
26   evidence presented is clear. Site 2 is forever dead. Site 2 has not existed or operated since months

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 4

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

before the complaint was filed. It will never exist or operate again. WFC's claims as to Site 2 should be dismissed.

      B.  <u>WFC's Continuing Violation Claims are Without Merit</u>.

While WFC has apparently now abandoned most of its Site 2 claims,[2] it does assert several creative, but ultimately incorrect, arguments related to "ongoing releases" in an effort to avoid summary judgment on all Site 2 claims. First, WFC argues that because the Site 2 NPDES permit is only pending termination, violations of conditions S2, S6, and S7 continue to occur. Second, WFC argues (without evidence) that Site 2 debris remains on the seabed floor, resulting in ongoing violations of the CWA.

Condition S2 relates to sediment closure monitoring. WFC initially claimed that Cooke failed to work with Ecology on sediment closure monitoring as required by the permit. WFC now concedes (as it must) that Cooke is working with Ecology. Thus, it is unclear what WFC's S2 claim now entails. Regardless, Cooke is working on sediment closure monitoring under Ecology's guidance, and WFC fails to articulate how this ongoing work somehow violates the Permit.

Conditions S6 and S7 require pollution prevention and fish escape monitoring plans be implemented. Cooke provided WFC with tens of thousands of pages of documents demonstrating complete compliance with these provisions.[3] To the extent that WFC argues that Cooke was required to strictly comply with Conditions S6 and S7 despite the destruction of Site 2, WFC ignores bedrock NPDES interpretive law. NPDES permits are to be construed "like any other contract." *Nat. Res. Def. Council, Inc. v. Cty. of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). The destruction of Site 2 makes compliance with the permit's operating conditions impossible, and there is clear frustration of the permit (contract). *See Wash. State Hop Producers, Inc., Liquidation Tr. v. Goschie Farms, Inc.*, 112 Wash. 2d 694, 699, 773 P.2d 70, 73 (1989) (holding

---

[2] A list of the claims asserted against Site 2 is included in the Motion on page 8, WFC seems to abandon most of these claims as wholly past in its response. All abandoned claims should be dismissed.

[3] Conditions S6 and S7 are relevant to WFC's motion for partial summary judgment, and Cooke's compliance is demonstrated in Cooke's Response (Dkt. 36).

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 5

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1  that a contract is frustrated when a principle purpose of the contract no longer exists or is

2  impractical or non-sensical). It would be impossible (and non-sensical) for Cooke to continue

3  implementing the permit as if Site 2 still existed. For instance, an inspection of a facility that does

4  not exist cannot occur.

5        WFC's "debris cleanup" theory ignores the facts of the case and also attempts to

6  significantly expand the liability framework of the CWA. WFC presented no evidence that there

7  is any Site 2 related debris on the seabed. Cooke spent millions of dollars to remove any remnant

8  of Site 2 from the seafloor, including paying contractors to perform weeks of 24-hour-a-day

9  salvage efforts to ensure that the seafloor was clean. Parsons ¶ 7. Furthermore, not only is WFC's

10 argument not supported by any facts, but it also misinterprets the CWA. The CWA is not a cleanup

11 statute like Superfund (CERCLA) or RCRA, but instead Section 301 of the CWA only regulates

12 the act of discharging pollutants into navigable waters. 33 U.S.C. §1311(a). "Discharge" means

13 "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

14 A "point source" is "any discernible, confined and discrete conveyance...from which pollutants

15 are or may be discharged." 33 U.S.C. § 1362(14). The Supreme Court has found violations only

16 where pollutants are added to a waterbody, and no case Cooke aware of has ever found a Section

17 301 ongoing violation for a failure to remove a contaminate from a waterbody. *S. Fla. Water Mgmt.*

18 *Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 110 (2004). Thus, a party only violates the act

19 if it actively discharges a pollutant into a navigable water body. *Id* at 105. Failures to cleanup are

20 addressed by other statutory regimes—many of which also include citizen suit provisions.

21       WFC identifies no ongoing discharges upon which a violation can be found. Instead, WFC

22 speculates that some of Site 2 may not have been recovered by Cooke, and then argues that so long

23 as any piece of Site 2 theoretically remains on the seafloor, then the CWA is being violated by a

24 failure to cleanup that object. This is not what the CWA envisions. Under WFC's theory, any party

25 responsible for a discharge would remain in perpetual violation of the CWA until it recovered the

26 released pollutant. This would require hundreds of industrial facilities to engage in impossible

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 6

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

pollutant recovery efforts or face substantial ongoing liabilities. WFC's "in violation until complete cleanup is proven" theory is not supported by the CWA and represents an unbridled expansion of CWA liability.

The two out-of-circuit district court opinions cited by WFC do not support WFC's position. Neither addresses the relevant issue but instead contain footnotes suggesting that ongoing violations may exist when a defendant improperly fills a navigable waterway in violation of Section 404 of the CWA. This is not a CWA Section 404 dredge and fill case, this is a Section 301 discharge case. WFC has not cited a single case actually applying its Section 301 cleanup theory. If cleanup was required by the CWA, every Section 301 case would include a cleanup analysis, yet not one of the dozens of cases reviewed by Cooke even suggests that cleanup is a CWA requirement. Full cleanup of the collapse has proceeded under other legal authority.

## II.   The Claims Related to Site 2 are Clearly Moot because Site 2 does not Exist and Will Never Again Operate.

The CWA's citizen suit provisions are purposive. They were enacted solely to address future violations, and Congress expressly banned citizen groups from pursuing claims for wholly past violations. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59-60 (1987) ("the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past"). Where a citizen group fails to align their actions with the future-looking public purposes of the CWA's citizen suit provisions, those claims must be dismissed. *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800-3 (9th Cir. 2009). Only state-agencies can enforce penalties for wholly past, no longer ongoing violations. *Gwaltney*, 484 U.S. at 58-9.

In this case, WFC brought claims against Cooke related to Site 2 even though Site 2 did not exist on the date of the filing. WFC knew Site 2 did not exist when it filed suit, and in fact, was simultaneously engaged in a massive lobbying campaign to ban Atlantic salmon farming in Washington to ensure that Site 2 was never rebuilt. That lobbying effort was successful, and widely trumpeted by WFC in the press as an "effective[] ban" on Cooke's business. Second Steding Ex.

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 7

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

6. Knowing that Site 2 does not exist, that it will never again exist, and that any potential future releases will not and cannot occur, WFC continues to seek millions of dollars in penalties from Cooke for wholly past violations. WFC is doing this while at the same time the Washington Departments of Ecology, Natural Resources, and Fish and Wildlife have all enforced (and continue to enforce) against Cooke to the tune of millions of dollars in penalties and required remedial actions. Indeed, Ecology has assessed CWA penalties for the same wholly past violations for which WFC seeks recovery. Despite all of this, WFC argues the case is not moot and that it is critical that this Court take another pound of flesh from Cooke.

A. WFC Fails to Articulate Any Standard Applicable to the Question of Whether Involuntary Actions Moot a CWA Citizen Suit.

The Supreme Court has held that the "[m]ootness doctrine thus protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" *Gwaltney*, 484 U.S. at 66–67 (quoting *United States v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952)). The Supreme Court was clear that a citizen suit becomes moot when there is no "present or future wrongdoing." The Supreme Court revisited the issue in *Laidlaw*, a case in which a company purposefully shuttered a facility and placed it on the market for sale, but only after the court of appeals ruled against the company. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000). The Court found that the case might be moot, but that the lower court needed to make a finding of fact on the effect of the facility's closure on future violations of the CWA, including the impact of post-opinion voluntary actions taken by the defendant. *Id*. The *Laidlaw* decision is abundantly clear that the Court was considering all of the defendant's actions to be entirely voluntary in nature. *Id* at 189 (the "only conceivable basis for a finding of mootness in this case is Laidlaw's voluntary conduct"). What was analyzed in *Laidlaw* was whether voluntary "protestations of repentance and reform" effectively mooted the case.

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 8

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1    Cooke does not assert that it has reformed its Site 2 operations so that violations will not

2    occur in the future. It has asserted that future Site 2 operations are impossible because of the

3    punishments it has received. Cooke cannot conceivably reoffend because Site 2 was destroyed by

4    natural forces, followed by a multitude of regulatory actions that have now prohibited Cooke from

5    ever rebuilding or operating Site 2. This case is not moot based on voluntary reform, it is moot

6    based on involuntary punishment.

7    WFC fails to articulate any mootness standard that should apply to involuntary situations

8    such as that presented by this case. Cooke has identified four Court of Appeals decisions that have

9    evaluated this situation, all of which conclude that there is a meaningful difference between

10   voluntary and involuntary mootness in the CWA context. *See Environ. Conserv. Org. v. City of*

11   *Dallas*, 529 F.3d 519, 528 (5th Cir. 2008); *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*,

12   138 F.3d 351, 355 (8th Cir. 1998); *Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d

13   124, 128 (2d Cir. 1991); *Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587, 600 (6th Cir.

14   2004). WFC has not identified a single opinion, appellate or trial, that takes a different position.

15   Instead, WFC appears to request that the Court apply the *Laidlaw* voluntary cessation standard.

16   But both *Laidlaw* and *Gwaltney* recognize a difference been voluntary protestations of repentance

17   and involuntary enforcement actions. *Gwaltney*, 484 U.S. at 66–7; *Laidlaw*, 528 U.S. at 189, 193.

18   Furthermore, the Ninth Circuit draws a distinction between voluntary and involuntary

19   cessation in the context of mootness. *Oregon Nat. Res. Council, Inc. v. Grossarth*, 979 F.2d 1377,

20   1379 (9th Cir. 1992); *see* Mot. at 12 (listing Ninth Circuit cases). The Ninth Circuit has also long

21   recognized that "when a change of position is wrought by a statutory provision, the change is

22   neither voluntary nor likely to be resiled from at any time in the foreseeable future." *Smith v. Univ.*

23   *of Washington, Law Sch.*, 233 F.3d 1188, 1194–95 (9th Cir. 2000). The result of such an

24   involuntary action is a strong "presumption of mootness." *Native Vill. of Noatak v. Blatchford*, 38

25   F.3d 1505, 1510 (9th Cir. 1994); *see also Producers & Distributors Ass'n v. Helliker*, 463 F.3d

26   871, 878 (9th Cir. 2006). WFC entirely ignores the long line of Ninth Circuit case law that draws

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 9

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1   a distinction between voluntary and involuntary cessation, and which applies a presumption of

2   mootness when the legislature acts to ban an activity. While WFC speculates that the Ninth Circuit

3   would not follow cases from the Second, Fifth, Sixth, and Eight Circuits, WFC cites nothing to

4   support its position, and ignores the Ninth Circuit cases related to involuntary cessation and

5   legislative actions, cases which strongly suggest that the Ninth Circuit would extend these

6   doctrines in the same fashion as other circuits uniformly have.

7   Regardless of whether this Court shifts the burden of proving that the case is not moot onto

8   WFC as done by the Second, Fifth, Sixth and Eighth Circuits, or applies the presumption of

9   mootness (essentially a burden shift) as done by the Ninth Circuit in legislative change cases, or

10  lowers the bar as done in all Ninth Circuit involuntary cessation cases, the result is the same. The

11  claims against Site 2 are moot. Site 2 does not exist; it legally cannot exist. The State of

12  Washington has taken both administrative and legislative action to ensure the facility never

13  operates again. This is a clear example of a moot case, and precisely the type of case that *Gwaltney*

14  envisioned would be dismissed as moot for having no future impacts. 484 U.S. at 66–7.

15  B.  WFC's Arguments that the Actions Resulting in Cessation Were Voluntary have No Merit.

16  Having failed to identify any standard for evaluating instances of involuntary cessation,

17  WFC urges the Court to apply the *Laidlaw* voluntary cessation standard because Cooke

18  "voluntarily" changed its behavior to moot the case. Cooke did not desire or decide to destroy Site

19  2. Cooke did not desire or decide to have the Site 2 lease terminated. Cooke did not desire or decide

20  to have the Washington legislature ban its business from the State of Washington. Cooke did not

21  desire to request termination of its NPDES permit but was instead forced to make that decision

22  after being barred from operating. Cooke vigorously lobbied the legislature to save its operations

23  and sought to retain its lease; both failed. Second Steding ¶ 4. This is not what the Supreme Court

24  has termed a "protestation[] of repentance and reform." *Gwaltney*, 484 U.S. at 66–67. This is an

25  involuntary, forced withdrawal from a business.

26

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 10

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1        C.   Even if the Court Applies the *Laidlaw* Standard, the Case is Still Moot.

2        The Ninth Circuit has articulated the *Laidlaw* voluntary cessation doctrine as: "[o]nly when it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur' will events following the commencement of a suit moot a claim for civil penalties." *See San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1159-60 (9th Cir. 2002) (quoting *Laidlaw* at 189). Applying this standard, along with the Ninth Circuit's presumption that legislative actions will not be "resiled from at any time in the foreseeable future," Cooke has met the "absolutely clear" threshold. *Smith*, 233 F.3d at 1194. It is absolutely clear that violations will not continue at Site 2 because it does not exist and legally has been prohibited from existing. It does not get any more absolutely clear.

11        D.   WFC's deterrence arguments are misplaced.

12        Reduced to its core, WFC's argument against a finding of mootness is that Cooke is a bad actor, and Cooke needs to be punished to ensure that a collapse does not occur again. First, as recognized by the Supreme Court and the Ninth Circuit, citizen groups are not punishers; they serve a limited public purpose of stopping future violations. *Gwaltney*, 484 U.S. at 59; *Marina Point*, 566 F.3d at 801. In its argument related to why deterrence is necessary, WFC all but admits that there is no future threat of violations from Site 2, and then argues that what needs to be deterred are Cooke's actions elsewhere. WFC provides no legal authority suggesting a citizen group can resurrect moot, wholly-past claims at a permanently closed facility to punish and deter actions at other facilities. If this was the case, no CWA citizen suit would ever go moot because there is always some deterrent effect in ensuring the CWA is not violated. The Court should decline WFC's invitation to brush aside the Constitutional doctrine of mootness to penalize a closed facility in order to effect actions at entirely different facilities.

24        WFC's deterrence argument also completely ignores the posturing of this case. WFC brought suit against all eight of Cooke's facilities. No motion filed to date will completely resolve WFC's claims as to those other seven facilities. WFC continues to assert that those seven facilities

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 11

Case No. 2:17-cv-01708-JCC

**NORTHWEST RESOURCE LAW PLLC**
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564

1    are in violation of their NPDES permits and have been in constant violation of them for years.

2    Cooke strongly disagrees. Regardless, if those violations are found, this Court will have ample

3    opportunity to penalize those facilities in accordance with the CWA. If those violations are not

4    found, then keeping the Site 2 claims alive simply allows WFC to penalize facilities at which no

5    actual violations have occurred. Thus, far from deterring bad behavior, this Court will be punishing

6    "good actor" facilities based on a catastrophic event at another facility. The theory simply does

7    not hold up to scrutiny. If WFC wishes to deter bad behavior at the other facilities, it should file a

8    motion for summary judgment related to those facilities' actual operations.

9        E.   WFC's Argument Against Finding the Injunction Claims Moot is Without Merit.

10           WFC argues that its claims for injunctive relief remain viable for two reasons. First, WFC

11   argues this Court could force Cooke to implement new Pollution Prevention Plans and Fish

12   Monitoring Plans at Site 2. Site 2 does not exist, and Cooke has requested that the permit be

13   terminated. There will never again be Site 2 operations. Requiring the Court to oversee the

14   implementation of operations plans related to operations that will never occur (and cannot legally

15   occur) would be a waste of time and judicial resources. That claim is clearly moot.

16           WFC also argues that the Court could issue an injunction requiring Cooke to comply with

17   the Site 2 closure requirements. WFC did not allege in its notice letter or its complaint that Cooke

18   failed to substantively comply with the closure requirements. Instead, WFC simply asserted that

19   Cooke failed to give notice to Ecology of "moving" the facility (when it was destroyed) and then

20   failed to do the closure monitoring. Dkt. 1 at ¶ 55. Despite arguing in its notice letter and complaint

21   that this process did not occur, WFC now admits it did occur but that WFC now needs to monitor

22   it. Cooke anticipates that the closure monitoring will be complete soon but only after approval by

23   Ecology. If after approval by Ecology, WFC believes the closure monitoring was done improperly,

24   it can bring an action against Ecology to force the process to be reopened, but that is not a CWA

25   claim.

26

1    DATED this 5th day of April, 2019.

2

3                                            NORTHWEST RESOURCE LAW PLLC

4

5                                            */s/ Douglas J. Steding*

6                                            Douglas J. Steding, WSBA #37020
                                             dsteding@nwresourcelaw.com
7                                            206.971.1567
                                             Diane M. Meyers, WSBA #40729
8                                            dmeyers@nwresourcelaw.com
                                             206.971.1568
9                                            Madeline Engel, WSBA #43884
                                             mengel@nwresourcelaw.com
10                                           206.971.1569
                                             David O. Bechtold, OSB #133019 (*pro hac vice*)
11                                           dbechtold@nwresourcelaw.com
                                             503.664.3582
12

13                                           *Attorneys for Defendant Cooke Aquaculture*
                                             *Pacific, LLC*
14

15

16

17

18

19

20

21

22

23

24

25

26

COOKE'S REPLY IN SUPPORT OF ITS MOTION              **NORTHWEST RESOURCE LAW PLLC**
FOR PARTIAL SUMMARY JUDGMENT - 13                      101 Yesler Way, Suite 205
                                                          Seattle, WA 98104
Case No. 2:17-cv-01708-JCC                                206.971.1564

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2019, I electronically filed the foregoing document with

the Clerk of the Court for the United States District Court for the Western District of Washington

using the CM/ECF system. Participants who are registered with CM/ECF will be served by the

CM/ECF system.

| *Attorneys for Plaintiff Wild Fish Conservancy* | |
|---|---|
| Brian A. Knutsen<br>Kampmeier & Knutsen, PLLC<br>*Postal Delivery Address:*<br>P.O. Box 15099<br>Portland, OR 97293<br>*FedEx, UPS, Couriers Delivery Address:*<br>221 SE 11th Avenue, Suite 217<br>Portland, OR 97214<br>503.719.5641 | brian@kampmeierknutsen.com |
| Paul A. Kampmeier<br>Emma Bruden<br>Kampmeier & Knutsen, PLLC<br>615 Second Avenue, Suite 360<br>Seattle, WA 98104<br>206.223.4088 | paul@kampmeierknutsen.com<br>emma@kampmeierknutsen.com |
| Lia Comerford<br>Kevin M. Cassidy<br>Earthrise Law Center<br>Lewis & Clark Law School<br>10015 SW Terwilliger Blvd., MSC 51<br>Portland, OR 97219<br>503.768.6736 | comerfordl@lclark.edu<br>cassidy@lclark.edu<br>earthrise-docket@lclark.edu |

I declare under penalty of perjury under the laws of the United States of America, that the

foregoing is true and correct to the best of my knowledge.

DATED 5th day of April, 2019, in Seattle, Washington.

/s Eliza Hinkes
Eliza Hinkes, Paralegal

COOKE'S REPLY IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT - 14

Case No. 2:17-cv-01708-JCC

NORTHWEST RESOURCE LAW PLLC
101 Yesler Way, Suite 205
Seattle, WA 98104
206.971.1564